UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

---

JOHN DOE #1, JOHN DOE #2, JOHN DOE #3, JOHN DOE #4, and JOHN DOE #5,

    Plaintiffs,

v.

SYRACUSE UNIVERSITY, KENT SYVERUD, individually and as Chancellor of Syracuse University, PAMELA PETER, individually and as Assistant Dean of Student Rights and Affairs and the Director of the Office of Student Rights and Responsibilities, ROBERT HRADSKY, individually and as Syracuse University Dean of Students and Associate Vice President of the Student Experience, TERESA ABI-NADER DAHLBERG, individually and as the Dean of the College of Engineering and Computer Science,

    Defendants.

**MEMORANDUM OF LAW**

Civ. Action No.:
5:18-cv-496 (FJS/DEP)

---

    Plaintiffs, JOHN DOE #1, JOHN DOE #2, JOHN DOE #3, JOHN DOE #4, and JOHN DOE #5, by and through their attorneys Smith Sovik Kendrick & Sugnet, P.C., submit this Memorandum of Law in support of their Order to Show Cause seeking a Protective Order to proceed under pseudonyms, requesting a Temporary Restraining Order restoring Plaintiffs to good academic standing until a hearing can be held on the propriety of a Preliminary Injunction, and requesting a hearing as to a Preliminary Injunction.

    Plaintiffs' privacy interests far outweigh any interest in access to court records. Further, as discussed below, Plaintiffs should be granted a Temporary Restraining Order and, subsequently, a Preliminary Injunction because Defendants' improper suspension of Plaintiffs is causing

irreparable harm that compounds with each lecture, test, or other academic activity Plaintiffs miss at this crucial time of the semester.

## I.     Plaintiffs Should be Allowed to Proceed Under Pseudonyms

Plaintiffs are undergraduate students at Syracuse University. This case involves a dispute over Syracuse University's failure to apply their own disciplinary procedures as stated in the Complaint. Plaintiffs should be granted a protective order to proceed under pseudonyms to protect their privacy rights and to avoid potential retribution against them from the community if Plaintiffs are identified as a part of this lawsuit.

*Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185 (2d Cir. 2008), is the leading Second Circuit case. There, the Second Circuit established the authoritative test, which requires balancing ten factors:

> (1) whether the litigation involves matters that are highly sensitive and of a personal nature;
> (2) whether identification poses a risk of retaliatory physical or mental harm to the party seeking to proceed anonymously or even more critically, to innocent non-parties;
> (3) whether identification presents other harms and the likely severity of those harms, including whether the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity;
> (4) whether the plaintiff is particularly vulnerable to the possible harms of disclosure, particularly in light of his age;
> (5) whether the suit is challenging the actions of the government or that of private parties;
> (6) whether the defendant is prejudiced by allowing the plaintiff to press his claims anonymously, whether the nature of that prejudice (if any) differs at any particular stage of the litigation, and whether any prejudice can be mitigated by the district court;
> (7) whether the plaintiff's identity has thus far been kept confidential;
> (8) whether the public's interest in the litigation is furthered by requiring the plaintiff to disclose his identity;
> (9) whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigants' identities; and
> (10) whether there are any alternative mechanisms for protecting the confidentiality of the plaintiff.

537 F.3d at 189–90.

*A v. C. College*, 863 F. Supp. 156 (S.D.N.Y. 1994), though predating the *Sealed Plaintiff* decision, is illustrative. There, the "case involved . . . whether or not the file in the case should be sealed so that the identities of the individuals and entities involved will not become public." 863 F. Supp. at 157. The Southern District of New York held that since "parties to [the] case . . . might be unnecessarily injured if charges untested and unproven contained in the file become public knowledge," including the "potentially harmful revelation of the names" of the parties, the file should be sealed. *Id.*

Here, nine of the ten factors militate in favor of allowing the case to proceed anonymously, which requires sealing the case. As a preliminary matter, Defendants cannot claim prejudice by allowing Plaintiffs to proceed anonymously or to allow the case to proceed under seal because Defendants have agreed to keep all affected students' names private.

Turning to the factors, factor (1) militates in favor of sealing this case because Plaintiffs' college disciplinary records are highly sensitive, as recognized by the Federal Education Records and Privacy Act ("FERPA"), codified at 20 U.S.C. § 1232g. Factor (2) militates in favor of sealing this case because disclosing Plaintiffs' identities will expose Plaintiffs and their colleagues to potential physical and mental harm, as evidenced by threatening social media posts. Factor (3) also favors sealing this case because disclosing Plaintiffs' identity only furthers the injuries allegedly caused by Defendants—public recognition as participants in the misunderstood videos at issue in this case. Factors (5), (8), and (9) favor sealing because this is a suit between private parties. Favor (7) cuts in favor of sealing this case; Syracuse University Dean of Students, Robert Hradsky, has publically acknowledged that FERPA prohibits Syracuse University from disclosing the John Does' names. Chris Carlson, *Names of Students in Syracuse Frat Videos Never to be*

*Released by SU*, Syracuse.com (April 23, 2018).[1] Finally, since there are no meaningful alternative methods to protect Plaintiffs' confidentiality, factor (10) supports sealing this case.

As a result, Plaintiffs should be granted a Protective Order allowing them to proceed under pseudonyms.

## II. Plaintiffs Are Entitled to a Temporary Restraining Order Restoring Plaintiffs to Good Academic Standing Pending a Preliminary Injunction Hearing and, Additionally, Are Entitled to a Preliminary Injunction

"A party seeking a preliminary injunction must demonstrate: (1) 'either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor,' and (2) 'irreparable harm in the absence of the injunction.'" *Faiveley Transp. Malmo A.B. v. Wabtec Corp.*, 559 F.3d 110, 116 (2d Cir. 2009) (quoting *Cty. of Nassau v. Leavitt*, 524 F.3d 408, 414 (2d Cir. 2008)); *see also Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund, Ltd.*, 598 F.3d 30, 36–38 (2d Cir. 2010) (noting that serious question approach is still viable in light of Supreme Court precedent).[2]

### A. Provisional Injunctive Relief is Required to Preserve the Status Quo And Ensure a Meaningful Decision on the Merits

"The purpose of a temporary restraining order is to preserve an existing situation *in statuo quo* until the court has an opportunity to pass upon the merits of the demand for a preliminary injunction." *Garcia v. Yonkers School Dist.*, 561 F.3d 97, 107 (2d Cir. 2009) (quoting *Pan Am.*

---

[1] Accessible at: http://www.syracuse.com/sunews/index.ssf/2018/04/names_unlikely_ever_to_be_known_in_syracuse_frat_video_incident.html.

[2] Since Plaintiffs are seeking a temporary restraining order on notice the standards governing the request are equivalent to a motion for a preliminary injunction. *Genworth Fin. Wealth Mgmt., Inc. v. McMullan*, 721 F. Supp. 2d 122, 125 (D. Conn. 2010).

*World Airways, Inc. v. Flight Eng'rs' Int'l Ass'n, PAA Chapter*, 306 F.2d 840, 842 (2d Cir.1962)). Likewise, "[t]he purpose of a preliminary injunction is . . . to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). The "status quo to be preserved by [preliminary injunctive relief] is the last actual, peaceable, uncontested status which preceded the pending controversy." *Larouche v. Kezer*, 20 F.3d 68, 74 n.7 (2d Cir. 1994).

Here, the only way to preserve the status quo is to dissolve the suspensions and reinstate Plaintiffs in good academic standing at the University through a Temporary Restraining Order until a hearing can be held as to whether Plaintiffs should remain reinstated by a Preliminary Injunction because the last calendar day of classes is only five days away, finals begin only nine days from now, and finals will be completed only fifteen days from now. Unless Plaintiffs are reinstated soon allowing them the chance to catch up on the lost live classroom interactions and academic lessons as well as complete their final assignments, Plaintiffs' meaningful disposition on the merits will be significantly reduced as they will have lost a semester's worth of work for no credit.

### B. Plaintiffs' Affidavits Establish Sufficiently Serious Questions Going to the Merits to Make the Questions Fair Ground for Litigation and the Balance of the Hardships Tips in Plaintiffs' Favor

Plaintiffs have established fair grounds for litigating their claims by showing Defendants' breaches of contract through failures to follow University rules, pretextual allegations, and improper suspensions. Defendants improperly suspended Plaintiffs at a crucial moment in the semester—the last weeks leading into finals—shifting the balance of the hardships decidedly in Plaintiffs favor. If injunctive relief is denied, Plaintiffs will be deprived of a semester's worth of work and credit if their suspension precludes them from attending class and performing reasonably

on their final examinations and assignments. But if injunctive relief is granted, Defendant will suffer no hardship since, at most, Defendants will only have to reasonably accommodate Plaintiffs by providing them separate testing areas, a common practice at Syracuse University that creates little (if any) hardship.

Plaintiffs' claims flow from Defendants' patent, pervasive failure to follow its own disciplinary procedures, which form the basis for a breach of contract claim. "Numerous courts in New York have recognized that once a student is admitted to a university, an implied contract . . . arise[s] between the student and the university." *Nieswand v. Cornell Univ.*, 692 F. Supp. 1464, 1470–71 (N.D.N.Y. 1988) (collecting cases). Thus, "[t]he rights and obligations of the parties, as contained in the university's bulletins, become a part of the parties' contract." *Id.* (quoting *Prusack v. State*, 498 N.Y.S.2d 455, 456 (2d Dep't 1986).

"[W]hen a university has adopted a rule or guideline establishing the procedure to be followed in relation to suspension or expulsion that procedure must be substantially observed" if the suspension or expulsion is "for causes unrelated to academic achievement." *Tedeschi v. Wagner College*, 404 N.E.2d 1302, 1304 (N.Y. 1980). Interpreting *Tedeschi*, the Southern District of New York noted that "[w]here judicial intervention is sought in this context, equitable relief should be requested before irreparable injury occurs which might otherwise lead to damage claims." *A. v. C. College*, 863 F. Supp. 156, 158 (S.D.N.Y. 1994). Indeed, since "[e]quitable relief provides greater realistic protection to those potentially subject to discipline," it should be preferred in cases like the one presented here. *Id.*

Here, under *Nieswand*, Plaintiff has established a contractual relationship, which Plaintiff has convincingly showed Defendants have repeatedly breached. Plaintiffs have blatantly disregarded procedures for discipline, which leads to a cause of action under *Tedeschi*. Together

with Defendants' due process violations, Plaintiffs have established a fair ground on which these claims will be litigated, satisfying the first prong required for injunctive relief. Indeed, Plaintiffs have also established a likelihood of success on the merits given Defendants' easily identifiable breaches of contract. Further, the balances tip in Plaintiffs' favor because Plaintiffs will lose a semester's worth of work but Defendants will lose nothing by reinstating Plaintiffs.

In conclusion, Plaintiffs have raised serious questions as to Defendants actions, establishing fair ground for litigation of their claims.

### C. Plaintiffs' Suspension, Which Threatens to Undo a Semester's Work, Constitutes Irreparable Harm

Plaintiffs' affidavits establish irreparable harm, the second prong for injunctive relief. Plaintiffs have been prohibited from attending classes in a crucial period of the semester—the weeks leading up to finals—and each day that Plaintiffs are prohibited from attending classes, Plaintiffs' semester-long efforts are irreparably injured. Courts have repeatedly held that suspension from a college constitutes an irreparable injury sufficient to invoke injunctive relief. "A showing of irreparable harm is 'the single most important prerequisite for the issuance of a preliminary injunction.'" *Faiveley Transp. Malmo A.B. v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009) (quoting *Rodriguez v. DeBuono*, 175 F.3d 227, 234 (2d Cir. 1999)).

"To satisfy the irreparable harm requirement, Plaintiffs must demonstrate that absent a preliminary injunction they will suffer 'an injury that is neither remote nor speculative, but actual and imminent,' and one that cannot be remedied 'if a court waits until the end of trial to resolve the harm.'" *Freedom Holdings, Inc. v. Spitzer*, 408 F.3d 112, 114 (2d Cir. 2005) (quoting *Rodriguez*, 175 F.3d at 233). Where a college threatens to expel a student, courts have routinely held that the irreparable harm prong for preliminary injunctive relief is satisfied. *E.g., Tully v. Orr*, 608 F. Supp. 1222, 1225–26 (E.D.N.Y. 1985).

For example, in *Tully v. Orr*, 608 F. Supp. 1222 (E.D.N.Y. 1985), the Eastern District of New York noted that a denied motion for a preliminary injunction followed by a vindication on the merits at trial would force a student to either "make-up exams or to repeat some of his courses," an irreparable injury in itself because "[w]hichever occurs, plaintiff will be delayed in both his graduation and commissioning as an officer." 608 F. Supp. at 1225. The Court noted that "[t]he loss of status involved, including the indelible stigma of having once been disenrolled, cannot help but have a deleterious effect on plaintiff's future," another basis for finding an irreparable injury. *Id.* at 1226.

*Bhandari v. Trustees of Columbia University*, 2000 WL 310344 (S.D.N.Y. March 27, 2000), is also instructive on the irreparable injury. There, a suspended plaintiff claimed that being "prevented from attending class" and "completing his course work" constituted an irreparable injury. 2000 WL 310344, at *5. The Southern District of New York agreed, noting that "[w]hile nothing would prevent plaintiff from repeating the courses he is currently taking . . . , requiring him to do so would forever deny him the benefit of the work he has already performed this semester and would necessarily delay his ultimate fulfillment of the requirements for a degree." *Id.* Thus, the Court concluded that the plaintiff had alleged irreparable injury. *Id.*; *see also Yusuf v. Vassar College*, 1992 WL 230143 (S.D.N.Y. Sept. 1, 1992) ("[T]he interruption of plaintiff's course work that the suspension will occasion probably constitutes irreparable harm.").

*Coleman v. Newburgh Enlarged City School District*, 319 F. Supp. 2d 446 (S.D.N.Y. 2004), is relevant as well. There, a high school student was suspended with approximately twenty days left in the school year. 319 F. Supp. 2d at 451. The Southern District of New York noted that Plaintiff had established irreparable harm by showing that his completion of the school year was in jeopardy. *Id.* at 452–53.

Here, as in *Tully* and *Bhandari*, Plaintiffs are suffering irreparable harm by having their semester placed in jeopardy due to an improper suspension. If Plaintiffs are not reinstated, Plaintiffs will lose more than just money; Plaintiffs will lose a semester's worth of work. The fact that Plaintiff's improper suspension comes at the end-of-semester, with less than a week left of classes and just over two weeks left before finals are completed, only compounds the irreparable harm every day. As a result, in order to receive meaningful relief, Plaintiffs must be reinstated by a Temporary Restraining Order pending a Preliminary Injunction Hearing.

In sum, because Plaintiffs have established irreparable harm flowing from Defendants' breach of contract in suspending Plaintiffs at a crucial time during the semester, Plaintiffs have established their entitlement to injunctive relief.

## CONCLUSION

For the foregoing reasons, Plaintiffs, JOHN DOE #1, JOHN DOE #2, JOHN DOE #3, and JOHN DOE #4, respectfully request an Order from this Court:

1. Restoring Plaintiffs to good academic standing during the pendency of this Action;

2. Staying any pending disciplinary proceedings taken by Defendants against Plaintiffs during the pendency of this Action;

3. Prohibiting Defendants from pursuing any disciplinary actions already taken against Plaintiffs during the pendency of this Action;

4. Prohibiting Defendants from commencing any additional disciplinary actions against Plaintiffs during the pendency of this Action; and

5.  Any such further relief as this Court finds fair, just, and equitable.

Dated: April 25, 2018

SMITH, SOVIK, KENDRICK & SUGNET, P.C.

By: _____
Kevin E. Hulslander, Esq.
Bar Roll No.: 103027
Karen Guyder Felter, Esq.
Bar Roll No.: 508182
David M. Katz, Esq.
Bar Roll No.: 700065
*Attorneys for Plaintiffs*
250 South Clinton Street, Suite 600
Syracuse, New York 13202
Telephone:   (315) 474–2911
Facsimile:   (315) 474–6015
Email:       khulslander@smithsovik.com