## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

**JOHN DOE #1**, **JOHN DOE #2**, **JOHN DOE #3**, **JOHN DOE #4**, and **JOHN DOE #5**,

       Plaintiffs,

vs.

**SYRACUSE UNIVERSITY, KENT SYVERUD**, individually and as Chancellor of Syracuse University, **PAMELA PETER**, individually and as Assistant Dean of Student Rights and Affairs and the Director of the Office of Student Rights and Responsibilities, **ROBERT HRADSKY**, individually and as Syracuse University Dean of Students and Associate Vice President of the Student Experience, and **TERESA ABI-NADER DAHLBERG**, individually and as the Dean of the College of Engineering and Computer Science,

       Defendants.

Civil Action No. 5:18-CV-00496 (FJS-DEP)

## DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

JENNER & BLOCK LLP
David W. DeBruin, Esq. (*pro hac vice* imminent)
Ishan K. Bhabha, Esq. (*pro hac vice* imminent)
1099 New York Avenue, N.W.,
Suite 900
Washington, DC 20001-4412
(202) 639-6015
ddebruin@jenner.com

HANCOCK ESTABROOK, LLP
John G. Powers, Esq. (Bar Roll #: 508934)
Paul J. Tuck, Esq. (Bar Roll #: 520814)
AXA Tower I, Suite 1500
100 Madison Street
Syracuse, NY 13202
(315) 565-4500
jpowers@hancocklaw.com

*Attorneys for Defendants*

{H3356022.1}

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ..................................................................................................... ii

INTRODUCTION ................................................................................................................1

BACKGROUND ..................................................................................................................3

       A.    The Theta Tau Videos............................................................................3

       B.    University Investigation and Institution of Student Disciplinary Proceedings. ...........................................................................................3

       C.    The University's Voluntary Dismissal of the Title IX Charges. ............5

       D.    University Policy of Placing "Holds" on Student Records During Disciplinary Proceedings. ....................................................................6

ARGUMENT ........................................................................................................................8

I.     Standard of Review.........................................................................................8

II.    The Court Should Deny the Motion for a Preliminary Injunction. ....................9

III.   Plaintiffs' request to amend their Complaint should be denied as long as they continue to refuse to identify themselves...........................................13

CONCLUSION...................................................................................................................14

# TABLE OF AUTHORITIES

**CASES**

*Bell & Howell: Mamiya Co. v. Masel Supply Co. Corp.*, 719 F.2d 42 (2d Cir. 1983) ...............................................................................................................12

*Hanson Trust PLC v. SCM Corp.*, 774 F.2d 47 (2d Cir. 1985) ......................................8

*Moore v. Consolidated Edison Co. of New York, Inc.*, 409 F.3d 506 (2d Cir. 2005) ......................8

*N.A.A.C.P., Inc. v. Town of East Haven*, 70 F.3d 219 (2d Cir. 1995) ...........................................12

*North America Soccer League, LLC v. United States Soccer Federation, Inc.*, 883 F.3d 32 (2d Cir. 2018)..........................................................................................9, 10

*Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185 (2d Cir. 2008).........................................13, 14

*Tom Doherty Associates, Inc. v. Saban Entertainment, Inc.*, 60 F.3d 27 (2d Cir. 1995) .........................................................................................................................9

## INTRODUCTION

Plaintiffs assert only a single, narrow basis for a preliminary injunction, and it rests upon an entirely false predicate.  The motion for an injunction should be denied.

As described further below, this case involves still-ongoing student disciplinary proceedings involving Plaintiffs, who are students at Syracuse University ("University").  Plaintiffs challenge those disciplinary proceedings on multiple grounds in their Complaint, ECF No. 1, and a proposed Amended Complaint, ECF No. 14-12.  However, Plaintiffs do *not* seek injunctive relief based on the bulk of the claims they have asserted or seek to assert, and they have made no attempt to show a likelihood of success on those claims.  *See* Declaration of John Doe #3, ECF No. 14-15, ¶ 5 n.1 ("*While not within the scope of this motion*, . . . the University's modified hearing procedures . . . were rife with procedural errors. . . ." (emphasis added)); Plaintiffs' Memorandum of Law ("Pls. Mem. Law"), ECF No. 14-17, at 4-6 (making no effort to establish likelihood of success on the bulk of Plaintiffs' claims).

Rather, Plaintiffs seek injunctive relief on a narrow ground:  they contend that the *only* student conduct charge for which a transcript "hold" is placed upon a student's transcript before disciplinary proceedings are complete is a Title IX charge; that the University brought, but then dismissed, such a charge against Plaintiffs; and yet the University continues to encumber Plaintiffs' transcripts even though the disciplinary proceedings are not yet complete, preventing them from attempting to immediately transfer to another school, presumably before the completion of the disciplinary process.  *See* Doe #3 Decl., ECF 14-15, ¶ 3 ("Title IX claims are unique under the University policies insofar as they establish exceptions to a number of University rules. . . ."); *id.*, ¶ 4 ("*Outside of Title IX procedures, there is no provision for the University to place a hold on the transcripts.*" (emphasis added)); *id.*, ¶ 8 ("the University maintained the hold on our student

accounts after the [Title IX] charge was withdrawn"); *id.*, ¶ 8 (describing Declaration of Kevin E. Hulslander, ECF No. 14-1, as "repeatedly noting that Title IX claims follow a special procedure, which includes the hold provisions, *and failing to give the University any power to impose a hold outside the Title IX specific provisions*) (emphasis added) (citing Hulslander Decl., pp. 9, 11, 12, 13)); *see also* Pls. Mem. Law, at 4 ("Defendants improperly used Title IX charges as a weapon against Plaintiffs. . . .  Now, even after withdrawing the Title IX charges Defendants continue to violate their policies and prejudice Plaintiffs by improperly placing holds on their accounts. . . .").

Defendants will soon show that *all* of Plaintiffs' claims in this litigation are baseless.  But for purposes of Plaintiffs' present motion for a preliminary injunction, it is enough to show that the factual predicate for the motion is simply wrong:  as explained in the Declaration of Eric Nestor (and described further below), in *any* student conduct case involving charges that may result in suspension, it is routine practice for the University to place a hold on the student's academic file. Declaration of Eric Nestor, ¶ 3.  Indeed, this practice is openly declared on the University's website:  "Staff from [the Office of Students Rights and Responsibilities] can place a hold preventing a student from attempting to register until *any* outstanding judicial actions are settled." *Id.* (emphasis added); *see also id.* (noting separate website declaration that "Transcripts are not released for students or alumni with outstanding financial *or student conduct obligations*." (emphasis added)).  Although the University dismissed Title IX charges against Plaintiffs for reasons explained below, it is undisputed that *other* student conduct charges remain pending against Plaintiffs (and, in fact, Plaintiffs have been found responsible for and suspended because of those other charges, with Plaintiffs' conduct appeals still pending).  As Mr. Nestor explains, transcript holds in such a situation "are meant to prevent students accused of serious disciplinary

violations from merely withdrawing from the University without being held accountable for their conduct."  *Id.*, ¶ 5.

Plaintiffs make no attempt to establish a likelihood of success on their claims that the University violated their legal rights by imposing discipline on them as a result of their conduct. Plaintiffs' motion for a preliminary injunction should be denied.

## BACKGROUND

**A.      The *Theta Tau* Videos.**

Between April 18 and 21, 2018, the University's independent student newspaper, *The Daily Orange*, posted online two video recordings of certain members of the University's chapter of the *Theta Tau* fraternity.  The recordings captured a fraternity event that occurred on March 30, 2018. *See* Declaration of Gabriel M. Nugent, ¶ 3.  In the videos, which continue to be available online, the fraternity members are heard to say "fuck black people!" "fuck spics!," and "I solemnly swear to always have hatred in my heart for niggers, spics, and most importantly the fuckin' kikes."  *Id.*, ¶ 4  The individuals in the videos can likewise be seen simulating sex acts on a student playing the role of a developmentally-disabled wheelchair-bound individual who they describe as a "wheelchair retarded Yankee," "brain-dead from being chronically whipped," who is "totally unaware of this light rape that's occurring."  Other members of the fraternity can be seen in the videos watching, laughing, and cheering the above-described conduct.  *Id.*

**B.      University Investigation and Institution of Student Disciplinary Proceedings.**

Shortly after the videos were released, the University began an investigation into whether the students associated with, and depicted in, the videos were in violation of the University's Code of Student Conduct.  *Id.*, ¶ 5.  On April 21, 2018, following completion of the investigation, the University notified eighteen students associated with the *Theta Tau* videos that they were being

charged with violations of five sections of the Code of Student Conduct. *Id*., ¶ 11. These five charges did *not* include any violations of a separate University policy associated with Title IX. *Id*., ¶¶ 11, 16. On that same date (and prior to the inclusion of other charges associated with Title IX), and consistent with routine University practice, holds were placed on the transcripts of each of the 18 *Theta Tau* students. Nestor Decl., ¶¶ 8-10.

The students were given formal and express notice of the charges against them. Nugent Decl., ¶ 12. Consistent with the University's Student Conduct Procedures, the notice letter also invited the students to attend and participate in an informal resolution meeting on April 24, 2018, and encouraged the students to obtain a procedural advisor (a student, staff, or faculty member at the University) to assist them through the disciplinary process. *Id*., ¶ 13. Most of the 18 students charged in the *Theta Tau* matter opted to participate in the informal resolution meetings, and two of the 18 resolved the complaints against them at this initial stage of the process. *Id*., ¶ 14.

On May 3, 2018, following completion of the informal resolution meetings, the University informed the students that the University Conduct Board (the "Board") would convene to adjudicate the charges beginning on May 9, 2018. This date was selected by agreement with the students so that the Board would not interfere with the completion of final examinations. *Id*., ¶ 15. In the May 3 notification, the University also informed the students of additional charges being brought against them under auspices of Title IX, alleging that their conduct violated the University's Sexual Harassment, Abuse and Assault Prevention Policy. *Id*., ¶ 16.

The Board hearing took place on May 9, 10, and 14, 2018. *Id*., ¶ 17. Although, under the Student Conduct Procedures, formal rules of evidence do not apply at the hearing, an accused student is permitted to make an opening statement, present testimony and documentary evidence, hear all the evidence presented against him/her, have procedural advisors, including attorneys,

present for advisory purposes, and present a closing statement.  *Id*., ¶ 18.  The *Theta Tau* students were provided all of these rights.  *Id*., ¶ 19.

Following the hearing, the Board completed its deliberations on June 5, 2018.  *Id*., ¶ 23. On June 5, 2018, the Board issued written decisions, finding the students liable for some, but not all, of the asserted charges.  *Id*.  In terms of the range of punishments issued, the Board placed the students on a status of indefinite suspension for either one or two years (depending on the nature of the student's involvement), after which the students could petition the University to return.  *Id*. Each of the disciplinary punishments imposed in the written Board decisions fell within the range of appropriate sanctions, and within the Board's discretion, set forth in the Student Conduct Procedures.  *Id*., ¶ 22.  The decisions also advised the students of their University appeal rights. *Id*., ¶¶ 21, 23.

Fourteen of the fifteen students found responsible in the Board decisions availed themselves of that right by filing written appeals on June 8, 2018.  The University Appeals Board has not yet issued its decisions.  *Id*., ¶ 26.

C.     **The University's Voluntary Dismissal of the Title IX Charges.**

As stated above, on May 3, 2018, the University included additional charges against the students under the auspices of Title IX, which included, in particular, conduct falling under the University's Sexual Harassment, Abuse, and Assault Prevention Policy.  *Id*., ¶ 27.  The University made the determination to add the new Title IX charges in good faith and with an adequate basis to add such charges.  *Id*., ¶ 28.

On May 4, 2018, Gregory Germain, a University law professor who also serves as a procedural advisor to three of the *Theta Tau* students, filed a complaint with the U.S. Department of Education, Office of Civil Rights ("OCR"), contending, in relevant part, that he did not believe

the students' conduct alone sufficed to establish a hostile environment in violation of Title IX.  *Id.*, ¶ 31.  On May 15, 2018, Felice Bowen of OCR sent a letter to Mr. Germain dismissing his complaint for procedural reasons, but also setting forth her opinion, based solely on Mr. Germain's characterization of the charges, and presumably without any of the actual evidence, that the University's Title IX charges may not comport with OCR's current interpretation of Title IX, at least with respect to its definition of a hostile environment.  *Id.*, ¶ 30.

The OCR letter was addressed to Mr. Germain, and it merely dismissed his complaint.  The letter did not order or direct the University to do anything, and it was not even addressed to the University.  *Id.*, ¶ 33.  As explained by Mr. Nugent, "[n]otwithstanding that the University may disagree with Ms. Bowens' opinion, once the University was made aware of OCR's position, it voluntarily decided to withdraw the charges brought under the University's Sexual Harassment, Abuse, and Assault Prevention Policy, before the Conduct Board issued its decisions."  *Id.*, ¶ 34.

In addition, as Mr. Nugent further explains:  "[T]he voluntary dismissal of the additional Title IX-related charges shows only that the University chose not to proceed under that one theory, which incorporates an external, federal law standard.  Although the University works zealously to apply and enforce the requirements of Title IX in all of its programs, the proper interpretation and reach of Title IX is currently the subject of some debate, at least within current federal enforcement authorities and as revealed by Ms. Bowen's letter to Mr. Germain."  *Id.*, ¶ 35.

**D.      University Policy of Placing "Holds" on Student Records During Disciplinary Proceedings.**

As explained in the Declaration of Eric Nestor, in student conduct cases involving charges that may result in suspension, or in cases that arise close in time to the end of the academic year, it is routine practice for the University to place a hold on the accused student's academic file.  Nestor Decl., ¶ 3.  The hold prevents the student from registering from classes or obtaining a copy

of their academic records, including their academic transcripts, while the disciplinary process is pending. *Id*.

This practice is openly disclosed on the Registrar's website. *Id*.  The website declares that "Staff from [the Office of Students Rights and Responsibilities] can place a hold preventing a student from attempting to register until *any* outstanding judicial actions are settled." *Id*. (emphasis added, citing webpage).  The practice is also indicated on the website associated with the release of transcripts, which provides:  "Transcripts are not released for students or alumni with outstanding financial or student conduct obligations." *Id*. (citing webpage).

The University regularly places holds on students' files regardless of the nature of the charge. *Id*., ¶ 4.  Holds are meant to prevent students accused of serious disciplinary violations from merely withdrawing from the University without being held accountable for their conduct. *Id*., ¶ 5.  These holds remain in place until the student conduct case is fully resolved, including until all appeals, if any, are decided. *Id*., ¶ 6.  If a student is suspended from the University for a non-Title IX, non-violence-related violation, a notation is placed on his/her transcript that reads: "Administrative Withdrawal – University Initiated." *Id*., ¶ 7.

With regard to the *Theta Tau* students (including Plaintiffs here), holds were placed on their files on April 21, 2018, before the Title IX charge was lodged. *Id*., ¶ 10.  The holds placed on Plaintiffs' transcripts were consistent with the University's routine practice to enforce transcript holds in any student conduct case involving charges that may result in suspension, or that otherwise occur close to the end of the academic year. *Id*., ¶ 9.

After the University Conduct Board issued decisions in the disciplinary cases against Plaintiffs, several of the *Theta Tau* students requested copies of their academic transcripts for purposes of applying to other universities. *Id*., ¶ 12.  Although the University typically would

withhold the transcript until the University appeal is decided, because of the timing of this case – *i.e.*, during the summer months, when transfer applications may be due – the University agreed to release the *Theta Tau* students' transcripts as they had requested, on the condition that the notation of "Administrative Withdrawal – University Initiated" would appear on the documents.  *Id.*, ¶ 14. The University made clear to the students that in the event their appeals were successful, the University would remove the notations on their transcripts and issue new documents at that time. *Id.*  The University advised the students in writing:  "If the outcome of your appeal is favorable to you, resulting in either no disciplinary status or a status less than indefinite suspension, our office will submit paperwork to have the notation removed from your transcript.  You may, after that time, request a new transcript without the withdrawal notation."  *Id.* (quotation marks omitted).

This decision was an effort to accommodate the requests made by the Plaintiffs. *Id.*, ¶ 15. In so doing, the University treated them more favorably than other similarly-situated students subject to pending discipline, whose transcripts would have been kept on hold during the pendency of the disciplinary process as a matter of standard practice.  *Id.*

## ARGUMENT

### I.      Standard of Review

A preliminary injunction "is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion."  *Moore v. Consol. Edison Co. of N.Y., Inc.*, 409 F.3d 506, 510 (2d Cir. 2005) (quotation marks omitted).  As the Second Circuit has recognized, it is "one of the most drastic tools in the arsenal of judicial remedies," *Hanson Trust PLC v. SCM Corp.*, 774 F.2d 47, 60 (2d Cir. 1985), and its purpose – as Plaintiffs concede – "is . . . to preserve the relative positions of the parties until a trial on the merits can be held," Pls. Mem. Law, at 3 (quoting *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981)).

A preliminary injunction is thus inappropriate unless a plaintiff can demonstrate "(1) irreparable harm; (2) either a likelihood of success on the merits or both serious questions on the merits and a balance of hardships decidedly favoring the moving party; and (3) that a preliminary injunction is in the public interest." *N. Am. Soccer League, LLC v. United States Soccer Fed'n, Inc.*, 883 F.3d 32, 37 (2d Cir. 2018).

Critically, the purpose of a preliminary injunction is to preserve the status quo; it is not to moot the dispute by granting one of the parties all the relief they would receive after a full trial on the merits. Indeed, a "typical preliminary injunction is prohibitory and generally seeks only to maintain the status quo pending a trial on the merits." *Tom Doherty Assocs., Inc. v. Saban Ent,'t, Inc.*, 60 F.3d 27, 34 (2d Cir. 1995). Where, like here, the moving party requests that the court alter the status quo "by commanding some positive act", the party is actually seeking a "mandatory injunction." *Id.* The standard for a mandatory preliminary injunction is heightened—it requires "*clear or substantial* likelihood of success," or alternatively that "extreme or very serious damage" would result in the absence of preliminary relief. *Id.* at 34, 37 (emphasis added) (internal quotation marks omitted).

## II.     The Court Should Deny the Motion for a Preliminary Injunction.

Under these well-established standards, Plaintiffs' motion for a preliminary injunction fails. Plaintiffs, like all other students subject to a student conduct process that could result in suspension or expulsion – *regardless of the charge* – had a "hold" placed on their transcripts pending the conclusion of the conduct process. When *Theta Tau* members began requesting their transcripts prior to the conclusion of the conduct process for the purposes of completing transfer applications, the University, as an accommodation to the students, agreed to lift the holds on the transcripts on the condition that the transcripts bore the notation "Administrative Withdrawal –

University Initiated." If Plaintiffs wish to have that notation removed until the student process is complete, the University would do so, but then the hold on the transcripts would be reinstated pending the conclusion of the process. What Plaintiffs are *not* entitled to receive is a transcript with no notation, which would render a nullity the finding of the Conduct Board that the students committed serious infractions of the University's Code of Student Conduct.

In their motion, Plaintiffs do not even attempt to argue that they have a likelihood of success on the merits of their claims that the Conduct Board's decision should be invalidated. As this heavy burden is the Plaintiffs', the present motion should be denied on this basis alone. Plaintiffs should not receive, through the extraordinary remedy of a preliminary injunction, the very relief they would be entitled to receive only were they to prevail on the merits of their claims. The limited ground invoked by Plaintiffs for an injunction also fails for multiple additional reasons.

*First*, Plaintiffs claim that "the only way to preserve the status quo" is for them to "obtain academic transcripts that do not bear the improperly placed disciplinary notations." Pls. Mem. Law, at 3-4. But that is not the case. The status quo, as Plaintiffs themselves acknowledge, is that their transcripts bear the notation and thus what Plaintiffs seek is to *change*, not maintain, the status quo. Preliminary injunction motions seeking to change the status quo – so-called "mandatory injunctions" – "must meet a heightened legal standard by showing a clear or substantial likelihood of success on the merits." *N. Am. Soccer League, LLC*, 883 F.3d at 37 (internal quotation marks omitted). Because Plaintiffs have made no showing of a success on the merits at all, their request for a mandatory injunction should be rejected on that ground alone.

*Second*, Plaintiffs argue they have established "fair grounds for litigating their claims" because "Defendants improperly used Title IX charges as a weapon against Plaintiffs to serve their administrative and public relations goals." Pls. Memo Law, at 4. Specifically, Plaintiffs allege

that Defendants brought "bogus" Title IX charges "as a pretext to place improper holds on Plaintiffs' transcripts," because "[t]he Syracuse University Student Conduct System Handbook clearly establishes that administrative holds on transcripts pending the resolution of disciplinary proceedings . . . are *only* authorized in the case of students charged with a sexually-based offense under the Title IX 'Sexual Harassment, Abuse and Assault,' policy."   *See* ECF No. 14-1, Hulslander Decl., ¶¶ 11, 12, 15, 16.   As an initial matter, Plaintiffs offer no evidence that the University acted with malicious intent in bringing Title IX charges.   But, more importantly, these allegations are demonstrably false.

For one, the holds on Plaintiffs' transcripts were imposed on April 21—*before*, not after—the Title IX-related charges were brought.   Nestor Decl., ¶ 8.   In addition, transcript holds are imposed in every case in which a student is accused of a serious disciplinary infraction, *not* just Title IX cases.   *Id.*, ¶ 4.   The basis for these holds is to prevent students accused of serious disciplinary violations from evading the University's conduct process by withdrawing from the institution.   *Id.*, ¶ 5.   Far from "blatantly disregard[ing] procedures for discipline," Pls. Mem. Law, at 5, the University followed its routine, and rational, procedures here.

Plaintiffs misstate the Student Conduct System Handbook, ECF 14-3, in support of their motion.   It is true that the Handbook declares that, when a Title IX charge is brought, "A hold will be placed on the respondent's academic records until a final resolution of the complaint."   *Id.*, ECF 14-3, at § 10.10.   But the Handbook does *not* say that this is the *only* instance when such a hold will be placed, *see id.*, and the University policy plainly stated on its website quoted above that it is *not* the only instance.   *See* Nestor Decl., ¶ 3 (and materials cited).

Likewise, and for the reasons described above, Defendants' placement of the notation on Plaintiffs' transcripts does not constitute a "patent, pervasive, and persistent failure[] to follow its

own disciplinary procedures." Pls. Mem. Law, at 4. This is again a naked assertion of fact that has no evidentiary support in Plaintiffs' papers. On the contrary, as set forth in Defendants' evidentiary submissions, the University normally waits to place a notation on a transcript until a student has exhausted the full appeals procedure. But concomitant with that policy, the University places a hold on students' transcripts during the pendency of the disciplinary proceedings. Here, in order to accommodate the *Theta Tau* students who were seeking their transcripts in order to submit transfer applications during the summer, the University agreed to lift the holds and release the transcripts with the notation affixed. If Plaintiffs would prefer the University to maintain its normal policy of placing a "hold" on the transcript and refusing to release it to the student at all until the disciplinary process is complete, the University would do so. But Plaintiffs have no right to have the University release the transcripts with no notation, in effect reversing without basis the Conduct Board's finding of responsibility.

*Third*, a plaintiff's ability to show irreparable harm is "the single most important prerequisite for the issuance of a preliminary injunction." *Bell & Howell: Mamiya Co. v. Masel Supply Co. Corp.*, 719 F.2d 42, 45 (2d Cir. 1983). To make such a showing, the plaintiff must show that, absent such relief, "the injury it will suffer is likely and imminent, not remote or speculative, and that such injury is not capable of being fully remedied by money damages." *N.A.A.C.P., Inc. v. Town of E. Haven*, 70 F.3d 219, 224 (2d Cir. 1995) (citations omitted).

Here, Plaintiffs claim they will be irreparably injured by "an improper transcript hold and subsequent improper transcript notation," because they will be unable to submit transfer applications with an "official, clean transcript" prior to the end of the summer transfer period. Pls. Mem. Law, at 7-8. But as demonstrated above, the factual predicate Plaintiffs cite for their injury – that Defendants' initiated a frivolous Title IX proceeding in order to justify a hold and notation

on their transcripts that otherwise would not exist – is simply wrong.  Further, Plaintiffs' claimed harm—the inability to transfer to another college without that college having knowledge of the pending discipline against them—is not a right that they would have otherwise had based on University policy.   And, as previously observed, Plaintiffs have not even raised, let alone demonstrated, a likelihood of success on the merits of their claims that the Conduct Board's procedures were invalid and its outcome should be reversed.

### III.   Plaintiffs' request to amend their Complaint should be denied as long as they continue to refuse to identify themselves.

A portion of Plaintiffs' requested relief seeks Court permission to amend their Complaint. Subject to the objection raised below, Defendants do not otherwise oppose this request and note that Plaintiffs otherwise had the unilateral right to file an amended pleading as of right under Fed. R. Civ. P. 15(a).  Although Defendants assert that amendment of the complaint is futile, Defendants have not yet answered or otherwise responded to Plaintiffs' original complaint.  As a result, Defendants will advance their arguments in response to the Amended Complaint

However, if the Court grants Plaintiffs motion to amend, it should do so only if Plaintiffs comply with Rules 10(a) and 17(a)(1) of the Federal Rules of Civil Procedure and caption the Amended Complaint in their actual names.  As explained in the University's Memorandum of Law in support of its motion to correct the caption, *see* ECF No. 19-1, Plaintiffs are unable to satisfy the rigorous standard for proceeding anonymously set forth in *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 189, 190 (2d Cir. 2008).

## <u>CONCLUSION</u>

Defendants respectfully request that the Court deny Plaintiffs' motion for a preliminary

injunction.

Dated: June 18, 2018                                 Respectfully submitted,

                                                    _____/s/ John G. Powers_____
                                                    John G. Powers

JENNER & BLOCK LLP                                  HANCOCK ESTABROOK, LLP
David W. DeBruin, Esq. (*pro hac vice* imminent)    John G. Powers, Esq. (Bar Roll #: 508934)
Ishan K. Bhabha, Esq. (*pro hac vice* imminent)    Paul J. Tuck, Esq. (Bar Roll #: 520814)
1099 New York Avenue, N.W.,                         AXA Tower I, Suite 1500
Suite 900                                           100 Madison Street
Washington, DC 20001-4412                           Syracuse, NY 13202
(202) 639-6015                                      (315) 565-4500
ddebruin@jenner.com                                 jpowers@hancocklaw.com

                    *Attorneys for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 18, 2018, I electronically filed the foregoing with the Clerk of

Court, to be served on all parties of record via the CM/ECF system.

By:     s/ *John G. Powers*
        John G. Powers