# Exhibit A

# STUDENT CONDUCT
# SYSTEM HANDBOOK

## 2017 - 2018



Syracuse University

# TABLE OF CONTENTS

SYRACUSE UNIVERSITY STATEMENT OF STUDENT RIGHTS AND RESPONSIBILITIES............................................2

SYRACUSE UNIVERSITY CODE OF STUDENT CONDUCT...............................................................................................3

SYRACUSE UNIVERSITY POLICY ON SEXUAL ASSAULT, SEXUAL HARASSMENT, STALKING OR
DATING OR DOMESTIC VIOLENCE..................................................................................................................................3

    The Syracuse University Definition of Consent ............................................................................................................4

    Amnesty for Reporting Individuals...................................................................................................................................4

    Bill of Rights...........................................................................................................................................................................4

SYRACUSE UNIVERSITY ANTI-HAZING POLICY.........................................................................................................5

SYRACUSE UNIVERSITY STUDENT CONDUCT SYSTEM PROCEDURES 2017 - 2018......................................6

    PART 1. ORGANIZATION AND PHILOSOPHY...........................................................................................................6

    PART 2. JURISDICTION.......................................................................................................................................................6

    PART 3. ROLES OF ADMINISTRATORS.........................................................................................................................7

    PART 4. INTERIM SUSPENSION, NO CONTACT ORDERS AND OTHER ADMINISTRATIVE ACTIONS....7

    PART 5. OVERVIEW OF THE CONDUCT PROCESS*................................................................................................9

    PART 6. FORMAL HEARINGS*........................................................................................................................................11

    PART 7. RIGHTS OF COMPLAINANTS AND RESPONDENTS*..............................................................................11

    PART 8. RESPONSIBILITIES OF COMPLAINANTS AND RESPONDENTS*........................................................12

    PART 9. HEARING PROCEDURES*...............................................................................................................................13

    PART 10. OVERVIEW OF THE CONDUCT PROCESS FOR CASES INVOLVING SEXUAL ASSAULT,
    STALKING, GENDER-RELATED HARASSMENT AND DATING OR DOMESTIC VIOLENCE........................14

    PART 11. SANCTIONS FOR ALL CONDUCT CASES................................................................................................17

    PART 12. APPEALS............................................................................................................................................................21

    PART 13. MODIFICATION OF PROCEDURES............................................................................................................22

    PART 14. DISCIPLINARY RECORDS AND TRANSCRIPT NOTATIONS................................................................22

    PART 15. STUDENT INITIATED WITHDRAWAL.......................................................................................................23

    PART 16. GOOD STANDING..........................................................................................................................................23

    PART 17. ENFORCED MEDICAL WITHDRAWAL......................................................................................................23

    PART 18. RIGHTS TO AMEND.......................................................................................................................................23

*APPLIES TO ALL CASES EXCEPT THOSE INVOLVING SEXUAL ASSAULT, STALKING, GENDER-RELATED
HARASSMENT AND DATING OR DOMESTIC VIOLENCE

# SYRACUSE UNIVERSITY STATEMENT OF STUDENT RIGHTS AND RESPONSIBILITIES

Syracuse University is an academic community and all persons—students, faculty, administrators and staff—share responsibilities for its growth and continued welfare. As members of the University community, students can reasonably expect that all members of the University community will respect the following rights.

All members of the University community are further encouraged to endorse, support, and abide by the values expressed within these rights, which this community has deemed fundamental to its mission and integral to its growth.

1. **SPEECH/EXPRESSION/PRESS**

   Students have the right to express themselves freely on any subject provided they do so in a manner that does not violate the Code of Student Conduct. Students in turn have the responsibility to respect the right of all members of the University to exercise these freedoms.

2. **NON-DISCRIMINATION**

   Students have the right not to be discriminated against by any agent or organization of Syracuse University for reasons of age, creed, ethnic or national origin, gender, pregnancy, disability, marital status, age, race, color, veteran status, military status, religion, sexual orientation, domestic violence status, genetic information, gender identity and gender expression, perceived gender or any other protected class as described by law. In their individual roles as members of student organizations, students have the responsibility not to discriminate against others.

3. **ASSEMBLY/PROTEST**

   Students have the right to assemble in an orderly manner and engage in peaceful protest, demonstration, and picketing which does not disrupt the functions of the University, threaten the health or safety of any person, or violate the Code of Student Conduct.

4. **RELIGION/ASSOCIATION**

   Students have the right to exercise their religious convictions and associate with religious, or other organizations of their choice in University facilities provided they do so in a manner that respects the rights of other members of the community and complies with the Code of Student Conduct. Students have the responsibility to respect the rights of other members of their University community to free exercise of their religious convictions and to free association with organizations of their choice.

5. **PRIVACY/SEIZURE**

   Students have the right of privacy and to be free from unreasonable searches or unlawful arrest on University property and within their campus residences. Students have the responsibility to respect the privacy of other members of the University community in their person and in their place of residence.

6. **ACADEMIC PURSUITS**

   Students have the right to accurate and plainly stated information relating to maintenance of acceptable academic standing, graduation requirements, and individual course objectives and requirements. Students can expect instruction from designated instructors at appointed class times and reasonable access to those instructors. Students have the responsibility to attend class and know their appropriate class requirements.

7. **QUALITY ENVIRONMENT**

   Students have the right to expect a reasonably safe environment supportive of the University's mission and their own educational goals. Students have the responsibility to protect and maintain that environment and to protect themselves from all hazards to the extent that reasonable behavior and precaution can avoid risk.

8. **GOVERNANCE/PARTICIPATION**

   Students have the right to establish representative governmental bodies and to participate in University governance in accordance with the rules and regulations of the University. Students who accept representative roles in the governance of the University have the obligation to participate responsibly.

9. **FUNDAMENTAL FAIRNESS**

   Students have the right to written notice and the opportunity for a hearing before any change in status is incurred for disciplinary reasons unless a significant threat to persons or property exists. Students have the right to fundamental fairness before formal disciplinary sanctions are imposed by the University for violations of the Code of Student Conduct--as provided in the published procedures of the University's Student Conduct System or other official University publications.

10. **CONFIDENTIALITY**

    Students have the right to access and control access to their educational records as provided in the federal Family Educational Rights and Privacy Act, also known as the Buckley Amendment. These include the rights to review and challenge the content of educational records, to control disclosure of personal and academic information to third parties, and to limit the routine disclosure of all or some information defined as "directory information" by the Act.[1]

---

1   The above statement is also true for international students and scholars, except where specified by the legislation, rules and regulations governing the particular visa status

# SYRACUSE UNIVERSITY CODE OF STUDENT CONDUCT

All Syracuse University students are expected to conduct themselves in a manner that supports and promotes the educational mission of the University. Integrity, respect for one another and others' property, and a commitment to intellectual and personal growth in a diverse population are values deemed fundamental to our community.

The Code of Student Conduct applies to all students at Syracuse University. Violations can occur either on or off campus and individuals or collective groups can be held accountable.

Syracuse University considers the following behavior, or attempts thereof, by any student or student organization, whether acting alone or with any other persons, to violate the Code of Student Conduct:

1. Physical harm or threat of physical harm to any person or persons, including, but not limited to: assault, sexual abuse, or other forms of physical abuse.

2. Harassment—whether physical, verbal or electronic, oral, written or video—which is beyond the bounds of protected free speech, directed at a specific individual(s), easily construed as "fighting words," or likely to cause an immediate breach of the peace.

3. Conduct— whether physical, verbal or electronic, oral, written or video—which threatens the mental health, physical health, or safety of any person or persons including, but not limited to hazing, drug or alcohol abuse, bullying or other forms of destructive behavior.

4. Academic dishonesty,[2] including but not limited to plagiarism and cheating, and other forms of academic misconduct, for example, misuse of academic resources or facilities, misuse of computer software, data, equipment or networks.

5. Intentional disruption or obstruction of lawful activities of the University or its members including their exercise of the right to assemble and to peaceful protest.

6. Theft of or damage to University, personal, public, or private property/services or illegal possession or use of the same.

7. Forgery, alteration or fabrication of identification cards, records, grades, diplomas, University documents, possession of falsified identification cards or misrepresentation of any kind to a University office, University official, or law enforcement.

8. Unauthorized entry, use, or occupation of University facilities that are locked, closed or otherwise restricted as to use.

9. Disorderly conduct including, but not limited to, public intoxication, lewd, indecent or obscene behavior, libel, slander or illegal gambling.

10. Illegal use, possession, purchase, distribution, manufacture or sale of alcohol, drugs or controlled substances, or any other violation of the Syracuse University Policy on Alcohol, Other Drugs, and Tobacco.

11. Failure to comply with the lawful directives of University officials who are performing the duties of their office, especially as they are related to the maintenance of safety or security.

12. Unauthorized possession or use of any weapon, including: firearms, BB-guns, airsoft guns, air rifles, explosive devices, fireworks, or any other dangerous, illegal, or hazardous object or material, and improper use as a weapon of any otherwise permitted object or material.

13. Interference with or misuse of fire alarms, blue lights, elevators or other safety and security equipment or programs.

14. Violation of any federal, state, or local law which has a negative impact on the well-being of Syracuse University or its individual members.

15. Violation of University policies, rules or regulations that are published in the Student Handbook, or other official University publications or agreements.

Culpability is not diminished for acts in violation of this Code that are committed in ignorance of the Code or under the influence of alcohol, illegal drugs or improper use of controlled substances.

**Other policies of the University may be found on the Syracuse University website and in other University publications.**

# SYRACUSE UNIVERSITY POLICY ON SEXUAL ASSAULT, SEXUAL HARASSMENT, STALKING OR DATING OR DOMESTIC VIOLENCE

Syracuse University is committed to the maintenance of an environment which is supportive of its primary educational mission and free from all exploitation and intimidation. The University does not tolerate rape, sexual assault, domestic or dating violence, stalking, sexual coercion and non-contact sexual abuse such as voyeurism, and sexual exploitation or other forms of sexual violence or non-consensual sexual activity. Prohibited behaviors include:

1. Harassment - intentional, unwanted and unwelcome words or conduct directed at a specific person that alarms, threatens or causes fear for that person. Sexual harassment is a form of sexual discrimination. It is unwelcome behavior of a sexual nature that relates to

---

2   Cases involving academic dishonesty are handled by the Office of Academic Integrity.

the gender, sex or sexual identity of an individual. It has the purpose or effect of creating an intimidating or hostile environment. Sexual harassment includes a full range of coercive and unwelcome behaviors, such as unwelcome sexual advances, request for sexual favors, and other verbal, visual or physical conduct of a sexual nature, including rape and other forms of sexual assault, sexual coercion and non-contact sexual abuse such as voyeurism and sexual exploitation.

2. Sexual assault - any actual or attempted nonconsensual sexual activity including, but not limited to: sexual intercourse, or sexual touching, committed with coercion, threat, or intimidation (actual or implied) with or without physical force; exhibitionism or sexual language of a threatening nature by a person(s) known or unknown to the reporting individual. Forcible touching, a form of sexual assault, which is defined as intentionally, and for no legitimate purpose, forcibly touching the sexual or other intimate parts of another person for the purpose of degrading or abusing such person or for gratifying sexual desires.

   Rape - sexual intercourse without consent, committed with coercion, threat, or intimidation (actual or implied), with or without physical force by a person(s) known or unknown to the reporting individual. Sexual intercourse can involve anal, oral, or vaginal penetration, no matter how slight.

   Intoxication of the respondent cannot be used as a defense to an alleged incident involving sexual assault.

3. Stalking - intentionally, and for no legitimate purpose, engaging in a course of conduct directed at a person knowing (or should reasonably know) that such conduct is likely to cause reasonable fear of material harm or does cause substantial harm to the other person or that person's family or another party of their acquaintance. This includes cyber stalking—using technology to stalk another person.

4. Dating violence and domestic violence - patterns of behavior in which an individual uses physical violence, coercion, threats, intimidation, isolation or other forms of emotional, sexual, verbal and/or economic abuse to control their current or former intimate partner.

5. It is against University policy retaliate against a person, either directly or via a third party, for making a complaint of sexual violence or any kind of harassment or discrimination.

## The Syracuse University Definition of Consent

Affirmative consent is a knowing, voluntary and mutual decision among all participants to engage in sexual activity. Consent can be given by words or actions, as long as those words or actions create clear permission regarding willingness to engage in the sexual activity. Silence or lack of resistance, in and of itself, does not demonstrate consent. The definition of consent does not vary based upon a participant's sex, sexual orientation, gender identity, or gender expression.

Consent to any sexual act or prior consensual sexual activity between or with any party does not necessarily constitute consent to any other sexual act. Consent is required regardless of whether the person initiating the act is under the influence of drugs and/or alcohol. Consent may be initially given but withdrawn at any time. Consent cannot be given when a person is incapacitated, which occurs when an individual lacks the ability to knowingly choose to participate in sexual activity. Incapacitation may be caused by the lack of consciousness or being asleep, being involuntarily restrained, or if an individual otherwise cannot consent. Depending on the degree of intoxication, someone who is under the influence of alcohol, drugs, or other intoxicants may be incapacitated and therefore unable to consent. Consent cannot be given when it is the result of any coercion, intimidation, force, or threat of harm. When consent is withdrawn or can no longer be given, sexual activity must stop.

## Amnesty for Reporting Individuals

The health and safety of every student at Syracuse University is of utmost importance. Syracuse University recognizes that students who have been drinking and/or using drugs (whether such use is voluntary or involuntary) at the time that violence, including, but not limited to domestic violence, dating violence, stalking, or sexual assault occurs may be hesitant to report such incidents due to fear of potential consequences of their own conduct. Syracuse University strongly encourages students to report domestic violence, dating violence, stalking or sexual assault to institution officials. A bystander acting in good faith or a reporting individual acting in good faith that discloses any incident of domestic violence, dating violence, stalking, or sexual assault to Syracuse University's officials or law enforcement will not be subject to Syracuse University's Code of Student Conduct for violations of alcohol and/or drug use policies occurring at or near the time of the commission of the domestic violence, dating violence, stalking, or sexual assault.

## Bill of Rights

All faculty, staff and students have the right to:

1. Make a report to local law enforcement and/or state police.

2. Have disclosures of domestic violence, dating violence, stalking and sexual assault treated seriously.

3. Make a decision about whether or not to disclose a crime or violations and participate in the judicial or conduct process and/or criminal justice process free from pressure by the institution.

4. Participate in a process that is fair, impartial, and provides adequate notice and meaningful opportunity to be heard.

5. Be treated with dignity and to receive from the institution courteous, fair and respectful health care and counseling services where available.

6.  Be free from any suggestion that the reporting individual is at fault when these crimes and violations are committed, or should have acted in a different manner to avoid such crimes or violations.

7.  Describe the incident to as few institutional representatives as practicable and not be required to unnecessarily repeat a description of the incident.

8.  Be protected from retaliation by the institution, any student, the accused or the respondent and/or their friends, family and acquaintances within the jurisdiction of the institution.

9.  Access to at least one level of appeal of a determination.

10. Be accompanied by an advisor of choice who may assist and advise a reporting individual, accused or respondent throughout the judicial or conduct process including during all meetings and hearings related to such process.

11. Exercise civil rights and practice of religion without interference by the investigative, criminal justice, or judicial or conduct process of the institution.

### If a Student Experiences Sexual or Relationship Violence

The Sexual and Relationship Violence Response Team at the Counseling Center 315.443.4715, 200 Walnut Place, provides privileged and confidential support, advocacy, and counseling for survivors of sexual assault and can be accessed 24 hours, seven days a week.

Should a student impacted by sexual assault, relationship violence, sexual harassment or stalking choose to

file a formal complaint, the following resources are available for reporting:

Department of Public Safety, 005 Sims Hall, 315.443.2224

Title IX Coordinator, 005 Steele Hall, 315.443.0211

Syracuse Police Department, 511 South State Street, 315.435.3016

New York State Police, 24-Hour dedicated hotline, 1.844.845.7269

Anonymous reporting is available: "TIPS" at 315.443.TIPS (8477) or online: *publicsafety.syr.edu.*

## SYRACUSE UNIVERSITY ANTI-HAZING POLICY

Syracuse University is dedicated to promoting a safe and healthy campus environment for its students, faculty, staff and visitors. In addition, Syracuse University is committed to promoting an environment that fosters respect for the dignity and rights of all its community members. As such, the University will not tolerate hazing activities by any individuals, groups, teams, or recognized student organizations. For more information regarding Syracuse University's Statement of Student Rights and Responsibilities, call the Office of Student Rights and Responsibilities at 315.443.3728 or the Office

of the Senior Vice President for Enrollment and the Student Experience at 315.443.4263 for more information.

**Enforcement:** Syracuse University will enforce this policy through internal disciplinary procedures, the external prosecution of alleged offenders, or both. Individuals who participate in acts of hazing will be held accountable under this policy and the Code of Student Conduct. For more information regarding the Code of Student Conduct, call the Office of Student Rights and Responsibilities at 315.443.3728.

**Definitions** (as of May 21, 2002): Hazing is punishable under New York State Law as follows:

1.  **New York Penal Law 120.16; Hazing in the First Degree:** A person is guilty of hazing in the first degree when, in the course of another person's initiation into or affiliation with any organization, he intentionally or recklessly engages in conduct which creates a substantial risk of physical injury to such other person or a third person and thereby causes injury. Hazing in the First Degree is a class A misdemeanor.

2.  **New York Penal Law 120.17; Hazing in the Second Degree:** A person is guilty of hazing in the second degree when, in the course of another person's initiation or affiliation with any organization, he intentionally or recklessly engages in conduct, which creates a substantial risk of physical injury to such other person or a third person. Hazing in the second degree is a violation.

In addition, **Syracuse University defines hazing to include any action that intentionally or recklessly causes or poses a substantial risk of harm to the mental or physical health or safety of one or more persons.** Subjecting any person to and/or encouraging any person to commit an act that violates human dignity, the Code of Student Conduct, or the law for the purpose of initiating, promoting, fostering, or confirming any form of affiliation with a group or organization is prohibited. The express or implied consent of participants or reporting individuals will not be a defense.

**Examples:** Examples of hazing include, but are not limited to: forced consumption of alcohol or other substances, sleep deprivation, threats of harm, actual physical harm (e.g., paddling, beating, branding), performing any service or action under coercion or duress.

**Sanctions:** Hazing poses substantial risks to the safety and well-being of individual students and the University community. As such, violations of this policy will result in referral to the Office of Student Rights and Responsibilities. Possible disciplinary action may include, but is not limited to, any or all of the following: suspension or expulsion from the University, loss of University recognition and privileges, referral to law enforcement, participation in educational programs, and other educational or remedial action appropriate to the circumstances. Sanctions imposed under this policy do not diminish or replace the penalties available under generally applicable federal, state, and local laws.

**Reporting:** To make a report of hazing, or to determine whether a proposed activity constitutes or will constitute hazing, contact the Department of Public Safety at 315.443.2224, the Office of Fraternity and Sorority Affairs at 315.443.2718, the Office of Student Rights and Responsibilities at 315.443.3728, or the Office of the Senior Vice President for Enrollment and the Student Experience at 315.443.4263. Anonymous reports also can be made to the Department of Public Safety through the *Silent Witness Program* or by calling 315.443.TIPS (8477).

# SYRACUSE UNIVERSITY STUDENT CONDUCT SYSTEM PROCEDURES 2017 - 2018

## PART 1. ORGANIZATION AND PHILOSOPHY

1.1    The Trustees and Chancellor of Syracuse University have delegated authority to the University Student Conduct System to adjudicate cases alleging violations of the Code of Student Conduct by Syracuse University students.

1.2    The procedures included herein apply to the resolution of social misconduct and related matters.

1.3    Supervision of the University Student Conduct System is the responsibility of the Senior Vice President for Enrollment and the Student Experience. Implementation of these procedures is the responsibility of the Director of the Office of Student Rights and Responsibilities, or a designee, in cooperation with, the Director of Residence Life, the Director of Health Services, the Director of the Counseling Center, the Director of Fraternity and Sorority Affairs, the Director of Recreation Services and the Title IX Coordinator or their respective designees.

1.4    Syracuse University is an institution of higher learning where individual growth and development are fostered, excellence is pursued, and the highest standards of integrity are expected in all areas of life. Syracuse University is committed to providing an environment where persons are safe, property is secure, individual rights of all persons are respected, and education of the highest quality is achieved.

1.5    The Code of Student Conduct outlines the behavior that is expected of all students at Syracuse University. Having voluntarily enrolled at Syracuse University, all students have entered into an agreement to abide by the rules and regulations set forth in the Code of Student Conduct. Each student is responsible for conforming his or her conduct to the requirements of this code and applicable federal, state and local laws.

1.6    Syracuse University considers its Code of Student Conduct as a statement of minimal expectations and seeks to foster a commitment to the highest standards of ethical behavior by the coherent, consistent and fair manner in which it enforces its rules and regulations. The University views its student conduct process as a learning experience that is intended to result in the growth and understanding of individual responsibilities on the part of all persons.

1.7    The decision to pursue allegations of student misconduct through the University Student Conduct System is deemed acceptance of its philosophy that any potential sanctions will be designed to address the safety and security of persons and property and to educate students with regard to higher standards of behavior.

1.8    Violations of the Code of Student Conduct will be adjudicated by the University Student Conduct System, which is designed to reflect and to support the educational mission of the institution and ensure the fair and equitable treatment of all individuals and groups charged with or reporting student misconduct.

## PART 2. JURISDICTION

2.1    The University Student Conduct System has jurisdiction over all alleged violations of the Code of Student Conduct by any student or recognized student organization that may be brought to its attention. Jurisdiction of the University Student Conduct System extends to alleged misconduct that takes place on University owned or controlled property or on property close to the University, including the Greek chapter houses; alleged misconduct that takes place at any University sponsored event; and alleged misconduct that has a significant impact on the educational mission and well-being of the University community that takes place at any location off campus.

2.2    The University Student Conduct System has jurisdiction over complaints against students alleging sex discrimination including sexual and gender-based harassment, assault and violence. The Syracuse University Policy on Sexual Assault, Sexual Harassment, Stalking or Dating or Domestic Violence covers all University programs and activities. The University processes sex discrimination complaints regardless of where the alleged conduct occurs to determine whether the conduct occurred in the context of its educational program or if it had continuing effects on campus or in an off-campus program or activity.

2.3    University student conduct proceedings are administrative in nature and independent of any criminal and/or civil legal proceedings that may be concurrently in process. University student conduct proceedings are intended to enforce the Code of Student Conduct at Syracuse University although the conduct in question may be simultaneously in violation of federal, state or local laws. The University may notify local and federal authorities when a crime is alleged to have been committed, but such notification will not modify the University's authority to adjudicate the alleged misconduct through its own student conduct system.

## PART 3. ROLES OF ADMINISTRATORS

University administrators assume a variety of roles in the informal and formal resolution of most conduct matters. When a conduct complaint has been initiated, the roles of the University administrators are as outlined below.

3.1   The Office of Student Assistance is responsible for the coordination of support and advisory resources that are available to complainants and respondents involved in the University Student Conduct System. The Office of Student Assistance will guide parties to referral sources for on-campus counseling and to a pool of community members that have volunteered and been trained to provide procedural advice or personal support to participants in the University Student Conduct System.

3.2   The Graduate Assistants and Practicum Assistants are graduate students who educate complainants and respondents with regard to University Student Conduct System procedures; act as case managers in reaching informal resolutions of conduct complaints; and manage student referrals to University and community resources designed to assist students in fulfilling conduct sanctions.

3.3   The Student Conduct Advisors are professional staff members who act as case managers in reaching informal resolution of student conduct complaints; advise the University Conduct Board; design and provide training and educational Programming to the University community; and offer follow up support for students subsequent to the resolution of their conduct cases.

3.4   The Associate Director of Student Rights and Responsibilities acts as a case manager; supervises the assessment activities of the Office of Student Rights and Responsibilities; advises the University Appeals Board; serves as an administrative hearing officer; provides training, advising, and educational programming to members of the University community concerning the University Student Conduct System; and acts on behalf of the Director of Student Rights and Responsibilities in their absence.

3.5   The Director of Student Rights and Responsibilities directs the activities of the University Student Conduct System and acts as a case manager. The Director of Student Rights and Responsibilities approves informal resolutions to conduct complaints; appoints University Conduct Board members; assigns case managers; serves as an administrative hearing officer; confirms University Conduct Board decisions; advises or arranges for the legal advisement of the University Appeals Board; and assures that the overall functioning of the University Student Conduct System is consistent with applicable laws and regulations.

3.6   The Senior Vice President for Enrollment and the Student Experience or designee is responsible for the overall supervision of the University Student Conduct System, the imposition of interim suspensions, the appointment of University Appeals Board members, and the confirmation of University Appeals Board decisions, except as otherwise provided herein.

## PART 4. INTERIM SUSPENSION, NO CONTACT ORDERS AND OTHER ADMINISTRATIVE ACTIONS

4.1   The status of a respondent will not be changed while a case is pending, unless the Director of Student Rights and Responsibilities, in consultation with the Senior Vice President for Enrollment and the Student Experience, or a designee, determines that an interim suspension is required to promote the safety and well-being of the University community.

4.2   A student who is suspended on an interim basis pending the outcome of proceedings against them will be given the opportunity to be heard by the University Appeals Board on the merits of the decision to impose the interim suspension within three (3) University business days of receipt by the Office of Student Rights and Responsibilities of the student's written request for such a hearing. Such a request must be made by the student within 30 University business days of the imposition of the interim suspension. If no such request is made, the interim suspension will remain in effect pending a hearing or Informal Resolution meeting on the merits of the conduct case. All recommendations of the University Appeals Board reviewing the imposition of an interim suspension are confirmed by the Senior Vice President for Enrollment and the Student Experience or their designee, and when confirmed, the decision is final and no further review of the interim suspension status is available.

4.3   Where an interim suspension is imposed in a case involving the arrest of the respondent, the University may require the associated criminal matter to be resolved in full prior to the pending conduct case being heard on its merits. In cases of sexual misconduct, the University may be required to proceed with the conduct case prior to resolution of an associated criminal matter. In circumstances where a criminal matter remains pending or in other unusual circumstances, including those described herein at Sections 4.4 and 7.4, students who still seek to have their cases heard on the merits must file a written request for a meeting before the Director of Student Rights and Responsibilities, or a designee, who will attempt an Informal Resolution. If Informal Resolution is unsuccessful, the Director of Student Rights and Responsibilities will determine if the case will be referred to a University Conduct Board, Administrative hearing, or held until the criminal case concludes. This determination will be made on case-by-case basis.

Unless modified pursuant to Part 13 of these procedures, University Conduct Board Hearings will conform substantially to the procedures outlined at Parts 7 through 9 herein. The results of the proceedings may be appealed in writing to the University Appeals Board in accordance with Part 12 of these procedures.

4.4   Certain administrators have been granted authority to take specific administrative actions to promote the safety and well-being of members of the University community and to enforce other administrative policies.

a.   The Director of Residence Life, or a designee, is authorized to respond to alleged violations of Office of Residence Life Residential Policies consistent with the policies published by the Office of Residence Life. These policies and procedures are independent of the University Student Conduct System. Questions about the Office of Residence Life Residential Policies process should be directed to the Office of Residence Life, 111 Waverly Avenue, Suite 200, or 315.443.3637.

The Director of Residence Life, or a designee, is also permitted to respond on an emergency basis to behavioral incidents alleged to violate the Code of Student Conduct occurring within or otherwise impacting the safety of any residential unit by relocating a student within or removing a student from University housing on a temporary basis pending fulfillment of specific conditions and/or review of the matter by the University Student Conduct System.

b.   The Director of Health Services and the Director of the Counseling Center are authorized to respond to significant psychological, physical, or substance-abuse related conditions or other student behavior that poses a direct threat to others. A student who fails to attend and actively participate in an assessment, educational program, and/or other intervention as required or who engages in behaviors that pose a direct threat to others may be withdrawn for medical reasons from the University. The Associate Vice President for Health and Wellness, upon the recommendation of the Director of the Counseling Center or the Director of Health Services, is authorized to withdraw a student for medical reasons. Such withdrawal will extend until the student demonstrates completion of an assessment, educational program and/or other intervention to the satisfaction of the Director of Health Services or the Director of the Counseling Center. During the period of such a withdrawal for medical reasons, the student is prohibited from entering onto Syracuse University owned, operated, or controlled property, including but not limited to University-owned land leased to a non-University

affiliated party, and from participating in any course or program offered by Syracuse University. In addition, the student must demonstrate "good citizenship" to the Director of Student Rights and Responsibilities who, in consultation with the Senior Vice President for Enrollment and the Student Experience, or a designee, will determine whether and under what conditions the student will be permitted to return to the University.

c.   The Title IX Coordinator, or a designee, is authorized to respond to alleged violations of Title IX or other federal or state discrimination laws. This includes providing interim relief such as removing a student from a class on a temporary basis, issuing a temporary no contact order or other actions consistent with the University's responsibilities. Questions about Title IX should be directed to Equal Opportunity, Inclusion and Resolution Services, 005 Steele Hall, 315.443.0211 or *titleix@syr.edu*.

d.   The Director of Recreation Services, or a designee, is authorized to respond to alleged violations of the Department of Recreation Services published and/or posted policies. These policies and procedures are independent of the University Student Conduct System. Questions about policies of the Department of Recreation Services should be directed to the Department of Recreation Services, 241 Archbold Gym, 315.443.4386.

e.   The Director of Fraternity and Sorority Affairs, or a designee, is authorized to respond to alleged violations of policies of the Office of Fraternity and Sorority Affairs consistent with published policies and procedures. These policies and procedures are independent of the University Conduct System. Questions about policies of the Office of Fraternity and Sorority affairs should be directed to the Office of Fraternity and Sorority Affairs, 131 Schine Student Center, 315.443.2718.

Except in emergency circumstances related to a medical or psychological condition, or in situations where a student is in violation of local, state, or federal laws or regulations designed to safeguard the public's health, a student is entitled to an opportunity for a hearing before a hearing officer prior to withdrawal for medical reasons pursuant to this subsection. Such a hearing will be held in accordance with the procedures described above in Section 4.3, except that the hearing officer in such a case will be advised by an appropriately trained professional. The results of such a hearing may be appealed in writing to the University Appeals Board in accordance with Part 12 of these procedures.

In emergency medical or psychological circumstances, students may be removed immediately from the University pursuant to Part 17 of these procedures.

4.5     In certain circumstances, a Temporary No Contact Order (NCO) may be issued by the Department of Public Safety, the Office of Residence Life, or the Title IX Coordinator as a temporary directive to prohibit communication to or among designated students when there is reason to believe that continued contact is not in the best interest of the involved students to promote their safety and security.

4.6     No Contact Orders prohibit all forms of contact including, but not limited to, contact via social media, contact via a third party and/or in person contact. In certain circumstances, as indicated on the no contact order, a student who receives a No Contact Order that is issued on behalf of another student is required to remove themselves from any public area in which both individuals are present.

4.7     If a No Contact Order is issued, both parties will receive a written copy of the Order and both parties are expected not to have contact with one another.

4.8     Temporary No Contact Orders will be reviewed by the Director of the Office of Student Rights and Responsibilities, or a designee, within two business day of its issuance. The Director, or designee, will determine if there is a need to continue the order, amend the order, or remove the order. Both parties will be notified in writing of the decision of the Director, or the designee.

4.9     No Contact Orders issued by the Office of Student Rights and responsibilities are permanent unless amended or rescinded by the Director of the Office of Student Rights and Responsibilities, or a designee, by the University Conduct Board or by the University Appeals Board after the adjudication of a conduct case.

4.10    No Contact Orders may be removed or amended through an appeal to the Office of Student Rights and Responsibilities. In the event of an appeal, either involved student may submit a written request to have the No Contact Order removed or amended. The letter must include:

   a.   A description of the events resulting in the No Contact Order being issued.

   b.   Names of those listed on the No Contact Order.

   c.   Reasons why the No Contact Order should be removed or amended.

   d.   Plans to prevent any negative incidents from occurring between parties listed in the order.

   e.   Communication of the understanding that Syracuse University is not responsible for negative behaviors that may result from removal or amendment of the No Contact Order if the individual requesting the removal or amendment of the No Contact Order is the person who requested its issuance.

No Contact Orders will not be considered for removal or amendment if all elements of the written appeal are not addressed or if there is evidence of the potential for future negative incidents between listed parties.

4.11    Violations of No Contact Orders by the student to whom it is issued may result in the student's suspension on an interim basis from Syracuse University.

4.12    No Contact Orders are not part of a student's conduct file unless there is a related conduct case filed with the Office of Student Rights and Responsibilities.

## PART 5. OVERVIEW OF THE CONDUCT PROCESS

*NOTE: FOR CASES INVOLVING SEXUAL ASSAULT, STALKING, GENDER-RELATED HARASSMENT OR DATING OR DOMESTIC VIOLENCE, SEE PART 10, P. 14, FOR OVERVIEW OF PROCESS*

5.1     A University Student Conduct System complaint may be filed against any student or recognized student organization by any member of the University community. Complaints may be filed by a student, faculty member, or staff member by filling out a standard complaint form, which is available on the web at *studentconduct.syr.edu*. A non-University member may file a report with the Department of Public Safety against a student that may result in a student conduct complaint pursuant to this policy. A report by a non-University member may be adjudicated if the interests of the University community are sufficiently implicated. All documentation and other information associated with the complaint, e.g., Department of Public Safety or police reports and witness statements, should be included with the standard complaint form and submitted to the Office of Student Rights and Responsibilities. More than one complaint may be filed arising out of the same incident.

5.2     The Office of Student Rights and Responsibilities will determine whether a complaint concerns students and/ or recognized student organizations and whether the complaint concerns subject matter falling within the jurisdiction of the University Student Conduct System. The Office of Student Rights and Responsibilities further will determine whether the complaint demonstrates sufficient information of wrongdoing to warrant further investigation and/or commencement of the student conduct process.

5.3     The standard of proof applied within the University Student Conduct System is a preponderance of the evidence, which requires a demonstration that it is "more likely than not" that the respondent or recognized student organization has violated the Code of Student Conduct.

5.4     Some allegations of student misconduct require investigation prior to determining whether further student conduct proceedings are warranted. As appropriate, the University will conduct an investigation concerning the allegations. The investigation may be conducted by DPS

or another appropriate University office or representative. In cases involving alleged criminal conduct, DPS can assist a complainant in making a criminal complaint. A complainant need not pursue a criminal complaint in order to seek to hold the accused responsible through the University's student conduct system.

5.5   An individual may be permitted to withdraw a complaint subsequent to filing if the Office of Student Rights and Responsibilities is satisfied that the complainant's decision has not been influenced by pressure or intimidation. In the event that the complainant is determined to have been influenced by pressure or intimidation, or in other extenuating circumstances, or where the University's interests would be served by continuation of the case, the Senior Vice President for Enrollment and the Student Experience, or designee, or the Director of the Office of Student Rights and Responsibilities may appoint a University complainant to continue the case.

5.6.   Upon determining that the complaint is appropriate for further processing, the Office of Student Rights and Responsibilities will contact the student or recognized student organization. The respondent or recognized student organization will be offered an opportunity to participate in an informal resolution meeting with a case manager to discuss the allegations. If a student or recognized student organization does not attend the meeting without prior notice to the Office of Student Rights and Responsibilities, a decision may be rendered in the student's or organization's absence. Complainants do not attend informal resolution meetings with the respondents, but are informed of the outcome of these meetings to the extent legally permitted.

There are three possible results at this stage:

1.   The student/organization is found to have no responsibility and/or that there is insufficient basis to proceed against the student. If that occurs, the case does not proceed to a hearing; or

2.   The student/organization accepts responsibility and appropriate sanction(s) is/are agreed upon. If that occurs, the case is considered informally resolved; or

3.   The student/organization does not accept responsibility and the case manager determines that the complaint warrants a hearing. If that occurs, the case proceeds to a formal hearing either before the University Conduct Board or an administrative hearing officer.

Once an informal resolution is reached, the decision is final and will only be revisited based on one or more of the following:

a.   new information not reasonably available at the time of the informal resolution, the absence of which can be shown to have had a detrimental impact on the outcome of the informal resolution;

b.   procedural error that can be shown to have had a detrimental impact on the outcome of the informal resolution;

c.   errors in the interpretation of University policy so substantial as to deny fair informal resolution;

d.   grossly inappropriate sanction having no reasonable relationship to the charges.

In such a case, the student or student organization may submit a written petition for reconsideration of the case to the Director of the Office of Student Rights and Responsibilities within three (3) business days of the informal resolution meeting. Requests for review must be written and signed by the student. The decision of the Director of the Office of Student Rights and Responsibilities upon reconsideration is final.

5.7   If an informal resolution cannot be reached, and assuming the case manager finds that the complaint warrants a hearing, the case will be assigned to an appropriate hearing officer or hearing Board for formal resolution. The hearing process is described in Parts 6 through 9 herein.

5.8   Respondents may be advised during the informal resolution meeting by a procedural advisor. Persons who may serve as procedural advisors are limited to full-time students, faculty, and staff of Syracuse University. Parents/guardians are not permitted to attend informal resolution meetings and are not permitted to serve as procedural advisors.

The Office of Student Assistance maintains a pool of trained University community members who may be available to provide procedural advice and support. Assignment of a procedural advisor from the Office of Student Assistance is based on availability and is not guaranteed.

5.9   No attorney who is not also a full-time member of the Syracuse University faculty, staff, or student body will be permitted to participate in the conduct process on behalf of the respondent, except where criminal or civil proceedings are also pending. When criminal or civil proceedings are pending the respondent may be advised by an attorney, but the individual student or student group must represent themselves during the informal resolution meeting.

5.10   Attorneys for the respondent, when permitted to participate, are limited to the role of the procedural advisor. Procedural advisors, have no standing in University Student Conduct System proceedings, except to provide advice to their respective parties in a quiet, non-disruptive manner. Advisors, and attorneys when applicable, do not represent or speak for their respective parties. Any advisor who fails to conform his or her behavior to these requirements will be removed from the proceedings and barred from acting as a

procedural advisor in future University Student Conduct System proceedings. In such circumstances the case manager will determine whether to proceed with the informal resolution meeting without the presence of the procedural advisor or to forward the case to the Director of Student Rights and Responsibilities who will determine if the case will be forwarded to the University Conduct Board for formal resolution.

5.11    Students who need accommodations for a disability should contact the Office of Disability Services (ODS), located in Room 309 of 804 University Avenue, or call 315.443.4498 for an appointment to discuss their needs and the process for requesting accommodations before going through the informal resolution process. ODS is responsible for coordinating disability-related accommodations and will issue students with documented Disabilities Accommodation Authorization Letters, as appropriate. Since accommodations may require early planning and are not provided retroactively, students should contact ODS as soon as possible.

If a student is receiving on-going supportive services from a Syracuse University office, the student is welcome to discuss their case with their counselor/advocate prior to attending an initial meeting with OSRR. Students may ask their counselor/advocate to serve as a procedural advisor, but counselors from the University's Counseling Center may not be able to serve in this capacity.

5.12    Recording devices (audio and/or video) of any kind are not permitted for use during informal resolution meetings.

## PART 6. FORMAL HEARINGS

*NOTE: FOR CASES INVOLVING SEXUAL ASSAULT, STALKING, GENDER-RELATED HARASSMENT OR DATING OR DOMESTIC VIOLENCE, SEE PART 10, P. 14, FOR OVERVIEW OF PROCESS*

6.1    Cases involving minimum standard sanctions in which the potential minimum status after a determination of responsibility is either disciplinary reprimand or disciplinary probation may be referred to an administrative hearing involving a single hearing officer. Processes for these hearings will conform to the processes as outlined in Parts 7 - 9 of this Handbook. Appeals from decisions of administrative hearing officers that meet the criteria set forth in Part 12 are heard by the University Appeals Board.

6.2    The University Conduct Board is comprised of five (5) students selected from a pool of at least ten (10) students. When the respondent is an undergraduate student, at least two (2) Board members are undergraduate students; when the respondent is a graduate student, at least two (2) Board members are graduate students. The University Conduct Board

is advised by a trained designee of the Director of Student Rights and Responsibilities or, in cases of felony arrest, by the Director of Student Rights and Responsibilities, the Associate Director of Student Rights and Responsibilities, or an attorney appointed by the Director of Student Rights and Responsibilities.

6.3    The University Conduct Board may hear any case of alleged violations of the Code of Student Conduct filed against an individual student or student organizations, except cases of academic dishonesty. The University Conduct Board may impose sanctions up to and including expulsion from the University and may design sanctions that are educational and/or remedial specific to the facts of a given case. Standard Sanctioning Guidelines for specific offenses and the applicability of those guidelines are included in Part 11. Decisions of the University Conduct Board are confirmed by the Director of Student Rights and Responsibilities, or a designee.

6.4    Appeals from decisions of the University Conduct Board that meet the criteria set forth in Part 12 are heard by the University Appeals Board.

## PART 7. RIGHTS OF COMPLAINANTS AND RESPONDENTS

*NOTE: FOR CASES INVOLVING SEXUAL ASSAULT, STALKING, GENDER-RELATED HARASSMENT OR DATING OR DOMESTIC VIOLENCE, SEE PART 10, P. 14, FOR OVERVIEW OF PROCESS*

7.1    The reporting individual or University office which files a complaint that proceeds to a formal conduct process is the "complainant". The student or student organization against whom the complaint is filed is the "respondent".

7.2    Prior to a formal hearing on the merits of a case, each party (i.e., the complainant(s) and respondent(s)) will be given written notice of the charges stating: the alleged facts upon which the charges are based, the sections of the Code of Student Conduct alleged to have been violated, the procedures to be used in resolving the charges, and the date, time, and location of the hearing. Notice will be emailed at least three (3) University business days prior to the hearing to the respondent's syr.edu email address or in any other manner reasonable designed to give notice to the student.

7.3    Each party will be given an opportunity to be heard before an impartial hearing Board or hearing officer in a timely manner - usually within thirty (30) business days of the filing of the written complaint. Attendance at hearings is limited to the hearing Board and its advisor, and the parties immediately involved and their procedural advisors. Witnesses are permitted access to the hearing room solely for the purpose of and duration necessary to provide testimony.

7.4    Each party will have the opportunity to face the opposing party and to ask questions indirectly through

the hearing Board. The hearing Board has the discretion to determine whether to permit questioning of witnesses through the hearing Board. Formal rules of evidence do not apply. Any information or statement may be admitted (including hearsay) subject to the discretion of the hearing Board chairperson.

7.5 Hearing Boards may be advised at all times by an attorney or other advisor. Parties may be advised during the hearing by a procedural advisor. Persons who may serve as procedural advisors are limited to full-time students, faculty, and staff of Syracuse University. Parents are not permitted to serve as procedural advisors nor can they attend hearings.

7.6 The Office of Student Assistance maintains a pool of trained University community members who may be available to provide procedural advice and support. Assignment of a procedural advisor from the Office of Student Assistance is based on availability and is not guaranteed.

7.7 No attorney who is not also a full-time member of the Syracuse University faculty, staff, or student body will be permitted to participate in the conduct process on behalf of the complainant or the respondent, except where criminal or civil proceedings are also pending. When criminal or civil proceedings are pending, both the complainant and the respondent may be advised by an attorney, but the individual parties remain primarily responsible for conducting their own presentations. Attorneys for the complainant and the respondent, when permitted to participate, are limited to the role of the procedural advisor described below in Section 9.5. Any attorney who fails to conform his or her behavior to these requirements will be removed from the proceedings and barred from acting as a procedural advisor in future University Student Conduct System proceedings. In such circumstances the hearing Board will determine whether to proceed with the hearing without the presence of the procedural advisor or to forward the case to the Director of Student Rights and Responsibilities who will determine if the case will be forwarded to a hearing officer for resolution or if another Board will be convened.

7.8 Students who need accommodations for a disability should contact the Office of Disability Services (ODS), located in Room 309 of 804 University Avenue, or call 315.443.4498 for an appointment to discuss their needs and the process for requesting accommodations before going through the informal resolution process. ODS is responsible for coordinating disability-related accommodations and will issue students with documented Disabilities Accommodation Authorization Letters, as appropriate. Since accommodations may require early planning and are not provided retroactively, students should contact ODS as soon as possible.

If a student is receiving on-going supportive services from a Syracuse University office, the student is welcome to discuss their case with their counselor/advocate prior to attending an initial meeting with OSRR. Students may ask their counselor/advocate to serve as a procedural advisor, but counselors from the University's Counseling Center may not be able to serve in this capacity.

7.9 Each party may present objections to the participation of any Board member for reason of conflict of interest. Any such objection will be ruled on by the chairperson, or by vote of the majority of the Board, if the objection is to the chairperson's participation.

7.10 Each party will have the opportunity to present relevant testimony and/or information to the hearing Board on his or her own behalf and the opportunity to respond to testimony or information presented by other parties. Relevance of testimony will be determined by the respective Board chairperson.

7.11 An audio recording may be made of hearings involving an associated felony arrest. Either party may request that a written transcript of these recordings be made at the expense of the requesting party or have access to the recordings by arrangement with the Director of Student Rights and Responsibilities. Printed transcripts will be redacted by the Office of Student Rights and Responsibilities prior to being provided to the requesting party in accordance with the Family Educational Rights and Privacy Act of 1974, as amended.

7.12 Each party will receive written notice of the hearing Board's confirmed decision within five (5) University business days after the hearing is concluded. A hearing is considered concluded at the point when all hearing Board deliberations are complete.

7.13 Recording devices (audio and/or video) of any kind are not permitted for use during University Conduct Board hearings except as outlined in section 7.11.

## PART 8. RESPONSIBILITIES OF COMPLAINANTS AND RESPONDENTS

*NOTE: FOR CASES INVOLVING SEXUAL ASSAULT, STALKING, GENDER-RELATED HARASSMENT OR DATING OR DOMESTIC VIOLENCE, SEE PART 10, P. 14, FOR OVERVIEW OF PROCESS*

8.1 It is the responsibility of each party to investigate, prepare, and present his or her case before a hearing Board or other body. This responsibility includes identifying and presenting any witnesses or witness statements. The University Student Conduct System is not authorized to compel the appearance of any witness at a University Student Conduct System proceeding. Similarly, neither party nor their representatives are authorized to compel or attempt to compel the appearance of any person at a University Student

Conduct System proceeding.

8.2    All parties are expected to appear at the hearing as specified. If either party fails to appear at the hearing, the hearing Board may proceed with the hearing, dismiss the complaint, or reschedule the hearing, as the facts and circumstances of the case indicate. In cases in which either party is unable to appear before the Board as described in section 13.1, alternative means for participation may be made available which may include telephone or video conferencing. In such cases, individual parties may be required to supply and use their own communication equipment and/or hardware.

8.3    Each party must act in a manner that is respectful of the proceedings and the rights of all individuals involved. It is the responsibility of each party to assure advisors, witnesses, and other affiliates act in a manner that is respectful of the proceedings and all individuals involved. The Board chairperson shall retain the option to discontinue the hearing and forward the case for administrative resolution by the Director of Student Rights and Responsibilities, or a designee, when the behavior of any person has become an encumbrance likely to have a detrimental impact on the outcome of the hearing.

8.4    All parties are expected to answer pertinent questions truthfully during the hearing or choose to remain silent. The Board may draw inferences from the statements and silence of any person with respect to pertinent questions. False testimony by any person may give rise to further disciplinary action or an enhancement of sanction at the discretion of the Board.

8.5    At the hearing, each party must offer all information known or available to that they desire to be considered. Each party is responsible for calling witnesses to testify on his or her behalf regarding the facts of the case and for providing a list of potential witnesses. This list must be submitted to the Office of Student Rights and Responsibilities at least 24 hours in advance of the hearing. Witness lists will be made available to the opposing party by the Office of Student Rights and Responsibilities. The hearing Board chairperson will have the discretion to limit the number of witnesses to be called by either party unless the Board chairperson determines information is cumulative or irrelevant, or would unnecessarily compromise the confidentiality of the hearing.

## PART 9. HEARING PROCEDURES

*NOTE: FOR CASES INVOLVING SEXUAL ASSAULT, STALKING, GENDER-RELATED HARASSMENT OR DATING OR DOMESTIC VIOLENCE, SEE PART 10, P. 14, FOR OVERVIEW OF PROCESS*

9.1    The purpose of the hearing is to provide the opportunity for complainants and respondents to present all relevant testimony and other information with regard to alleged violations of the Code of Student Conduct. It is the responsibility of the hearing Board to consider impartially all relevant testimony and other information, determine the facts, and impose appropriate sanctions. Decisions of the respective hearing Boards are subject to review and confirmation by the appropriate University officials, as outlined in Part 3 above.

9.2    University Student Conduct System hearings are administrative, rather than criminal or civil, in nature. Rules of evidence and the criminal standard of proof do not apply.

9.3    University Student Conduct System hearings are confidential and closed to persons not directly related to the case. The results of University Student Conduct System hearings are held confidential in accordance with applicable law. The University reserves the right to correct any misinformation with regard to University Student Conduct System actions that may be circulated in the media when the well-being of the community so requires. The University will publish data related to the activities of the University Student Conduct System on a periodic basis consistent with constraints imposed by law.

9.4    Complainants, respondents, and the University, as represented by the respective hearing Boards, are the principal parties in University Student Conduct System proceedings. All parties, procedural advisors, witnesses, and hearing Board members are expected to maintain the confidentiality of conduct system proceedings.

9.5    Procedural advisors, including attorneys where applicable, have no standing in University Student Conduct System proceedings, except to provide advice to their respective parties in a quiet, non-disruptive manner. Advisors, and attorneys when applicable, do not represent or speak for their respective parties, except at the request of the Board chairperson. Excluding interim suspension hearings, requests for a procedural advisor should be made at least 72 hours prior to the hearing to the Office of Student Assistance via email at *studentassistance@syr.edu.*

9.6    Chairpersons appointed by the Director of Student Rights and Responsibilities, or a designee, will preside at each hearing.

9.7    The order of presentation at the hearing will be as follows:

     a.   introductions and reading of the complaint/appeal by the chairperson;

     b.   opening statements;

     c.   presentation of testimony/information/witnesses by the complainant;

     d.   presentation of testimony/information/witnesses by the respondent;

e.   closing statement by the complainant;

f.   closing statement by the respondent.

In cases involving felony arrest, or in other appropriate circumstances, the order of presentation at the hearing may be changed at the discretion of the Board chairperson.

9.8   The hearing Board members may ask questions at any time subject to limitations of relevance, as determined by the chairperson. The parties may ask questions indirectly through the Board chairperson subject to reasonableness and relevance, as determined by the chairperson. Hearing Board decisions are made in private and by a majority vote of the Board members. All hearing Board decisions are subject to confirmation by the appropriate University official.

9.9   All parties will be informed of the confirmed hearing Board decision in writing within five (5) University business days after the conclusion of the hearing. A hearing is considered concluded when all hearing Board deliberations are complete. Decisions of the Board are effective immediately, unless a written notice from either party requesting a review by the University Appeals Board has been received by the Office of Student Rights and Responsibilities. Procedures for requesting a review by the University Appeals Board are outlined in section 12 of this Handbook.

## PART 10. OVERVIEW OF THE CONDUCT PROCESS FOR CASES INVOLVING SEXUAL ASSAULT, STALKING, GENDER-RELATED HARASSMENT OR DATING OR DOMESTIC VIOLENCE

10.1   To file a formal complaint against a student alleging any prohibited behaviors included in the Syracuse University Policy on Sexual Misconduct, Gender Related Harassment, Stalking or Dating or Relationship Violence an individual (complainant) should contact the University's Title IX Coordinator, 315.443.0211. If the complainant would like to file a criminal complaint they should contact the Department of Public Safety, 315.443.2224.

10.2   The health and safety of every student at Syracuse University is of utmost importance. Syracuse University recognizes that students who have been drinking and/or using drugs (whether such use is voluntary or involuntary) at the time that violence, including, but not limited to domestic violence, dating violence, stalking, or sexual assault occurs may be hesitant to report such incidents due to fear of potential consequences of their own conduct. Syracuse University strongly encourages students to report domestic violence, dating violence, stalking or sexual assault to institution officials. A bystander acting in good faith or a reporting individual acting in good faith that discloses any incident of domestic violence, dating violence, stalking, or

sexual assault to Syracuse University's officials or law enforcement will not be subject to Syracuse University's Code of Student Conduct for violations of alcohol and/ or drug use policies occurring at or near the time of the commission of the domestic violence, dating violence, stalking, or sexual assault.

10.3   If a reporting individual files a complaint that proceeds to a formal conduct process, that person is the "complainant". The student against whom the complaint is filed is the "respondent". In cases in which the Title IX Coordinator has filed a complaint without the cooperation of the reporting individual(s) in a specific incident the Title IX Coordinator serves as the "complainant."

10.4   The University handles complaints discreetly and attempts to maintain privacy throughout the investigatory process, to the extent practicable and appropriate under the circumstances. However, in order to conduct an investigation, it is generally necessary to discuss the allegations with the alleged offender and other potential witnesses. Additionally, the University may have legal obligations to disclose information to law enforcement or in the context of legal proceedings.

10.5   Complaints may be made anonymously. While the University endeavors to investigate all complaints, including anonymous complaints, the nature of anonymous complaints makes investigation, determination, and remediation more difficult and, at times, impossible. Further, while the University attempts to protect the identity of complainants who do not wish to be identified, this may not always be possible.

10.6   Occasionally, an individual makes a complaint and later wishes to revoke or discontinue the investigation or adjudication process. Similarly, it may occur that a witness or other third party reports an incident, and the impacted person declines to participate in the investigation or adjudication process. In other instances, complaints may be received anonymously and/or the reporting party may not wish to be personally identified. The University endeavors to respect the wishes of a reporting party to either not be identified and/ or not participate in the process. In these situations, the University attempts to investigate and address complaints in accordance with the reporting party's wishes. However, the University may not always be able to do so. In order to protect the community, the University may be obligated to investigate and adjudicate serious incidents even when the reporting party would prefer otherwise. The University reserves the right to take action in response to any incident that comes to its attention.

10.7   If a complainant also chooses to file a criminal report and pursue criminal charges against the respondent, the University will not unduly delay its investigation unless requested to do so by the appropriate legal

authorities and, if a delay is requested, the delay will only be temporary. The University will comply with law enforcement agency requests for cooperation and such cooperation may require the University to temporarily suspend the fact-finding portion of an investigation while the law enforcement agency gathers evidence. The University will promptly resume its investigation as soon as notified by the law enforcement agency that it has completed the evidence gathering process.

10.8   The University will never require a student who complains of sexual harassment or violence to work out the complaint directly with the respondent through mediation or other types of conflict resolution. Complainants may withdraw formal complaints at any time, but the University may be compelled by law to continue the associated investigation or conduct process. The University will evaluate the appropriateness of resolution options on a case-by-case basis. Certain cases are not appropriate for mediation or other types of conflict resolution, including cases involving allegations of sexual assault or sexual violence.

10.9   Interim relief such as no-contact orders, changes in living and/or working and/or academic situations, protective escort services, and referrals to counseling may be provided as requested and when available. Such relief can be sought without regard to whether the complainant chooses to report the matter to DPS or to local law enforcement. Additional relief such as protective orders may be available through the criminal and/or family court process. Interim relief can be requested at any time even if such relief was refused when initially offered. The processes for issuance of no contact orders and interim suspensions as well as appeal processes for both are outlined in section 4 of this Handbook.

10.10   Upon the receipt of a complaint, the Title IX Coordinator will designate an investigator who may conduct a prompt, adequate, reliable and impartial investigation. In exceptional circumstances (including but not limited to especially complex cases or when the University is not in session), it may be necessary to extend these timelines. If that occurs, the parties will be informed in writing of the expected timeline for completion. The investigator will have the authority to meet with both the complainant, respondent, and witnesses to the alleged incident to gather information regarding the facts and circumstances of the incident. Both the complainant and the respondent will have an equal opportunity to provide the investigator information, names of witnesses, third party expert testimony, electronic communications, or other evidence related to the complaint. Both the complainant and the respondent should be prepared to offer all information of which they are aware that they desire to be considered in the investigation. Both the complainant and the respondent will be notified at regular intervals of the status of the investigation.

A hold will be placed on the respondent's academic records until a final resolution of the complaint.

10.11   The complainant and the respondent have an equal opportunity to be advised by an advisor of their choice throughout all phases of the investigation. For a University-trained procedural advisor, parties may contact the Office of Student Assistance at 315.443.4357. Procedural advisors, including attorneys where applicable, have no standing in the University investigation or in the University Student Conduct System proceedings, except to provide advice to their respective parties in a quiet non-disruptive manner. Advisors do not represent or speak for their respective parties. Any advisor, including attorneys, who fails to conform their behavior to these requirements will be removed from the proceedings and barred from acting as an advisor in future University Student Conduct System proceedings. In such cases, the Board will determine whether to proceed with the formal resolution process without the presence of an advisor or to reschedule the proceedings at which time the case will be forwarded to the Director of Student Rights and Responsibilities for further processing.

10.12   Once the investigation report is complete, both the respondent and the complainant will be given the opportunity to review the report and provide a written response within three (3) business days both of which will be provided to the Office of Student Rights and Responsibilities and the other party by the Title IX investigator.

Files will be redacted in accordance with the Family Educational Rights and Privacy Act of 1974, as amended. Complainants and respondents will not be permitted to create copies of the files.

10.13   The investigator will provide the alleged Code of Student Conduct violations, the written report, and the written responses to the Office of Student Rights and Responsibilities. The report will describe the relevant facts and circumstances learned during the course of the investigation and will contain statements of the interviews conducted by the investigator. The report will not include any conclusions regarding responsibility for violations of the Code of Student Conduct. Based on the outcome of the investigation, the Director of the Office of Student Rights and Responsibilities will determine if the complaint contains sufficient cause to proceed to a University Conduct Board hearing.

10.14   The University Conduct Board is comprised of three (3) members who are full-time faculty or staff from Syracuse University and who are trained annually on the handling of Title IX related complaints, the University's Title IX Policy and Grievance Procedures and applicable confidentiality requirements. Members of the University Conduct Board are appointed by the Senior Vice President for Enrollment and the Student

Experience, or designee, from a pool of at least ten (10) members recommended by the University community. The University Conduct Board is advised by the Director of Student Rights and Responsibilities, by the Associate Director of Student Rights and Responsibilities or an attorney appointed by the Director of Student Rights and Responsibilities.

Chairpersons, appointed by the Director of the Office of Student Rights and Responsibilities, or a designee, will preside at each University Conduct Board hearing.

10.15 The complainant and respondent will be notified simultaneously in writing of the charges filed against the respondent, the date, time and location of the hearing, and will be invited to participate in an individual pre-hearing meeting in the Office of Student Rights and Responsibilities to review the hearing process. Both the complainant and the respondent are permitted to have a procedural advisor of their choice attend the meeting. The procedural advisor will need to conform their behavior to the standards outlined in section 10.11.

10.16 At its sole discretion, the University Conduct Board may rely upon the investigator's report for its understanding of the relevant facts, or it may conduct additional witness interviews and/or gather other additional information. The University Conduct Board may also interview the investigator. The complainant and respondent will be invited to speak to the University Conduct Board, but neither party is required to attend the hearing. Neither party will be permitted to cross-examine the other party.

Any interviews conducted by the University Conduct Board may be recorded. Either party may request that a written transcript of these recordings be made at the expense of the requesting party or have access to the recordings by arrangement with the Director of Student Rights and Responsibilities. Printed transcripts may be redacted by the Office of Student Rights and Responsibilities prior to being provided to the requesting party in accordance with the Family Educational Rights and Privacy Act of 1974, as amended.

10.17 Based on the information contained in the final report, any written statements, and witness information provided to the Board, the Board will determine whether it is more likely than not that the respondent violated the Code of Student Conduct using the preponderance of the evidence standard. Rules of evidence and criminal standards of proof do not apply. University Conduct Board decisions are made in private and by a majority vote of the Board members.

Both parties have the right to exclude their own prior sexual history with persons other than the other party in the conduct process or their own mental health diagnosis and/or treatment during the finding of responsibility phase of the hearing.

10.18 Once a finding of responsibility is made and prior to deliberations regarding sanctions, the Board will consider any other relevant information including impact statements submitted by either party. Prior conduct history of the respondent will also be considered during the sanctioning phase of the hearing. This includes past findings of domestic violence, dating violence, stalking or sexual assault.

10.19 The hearing will be considered complete when the Board has agreed upon the final written version of the Board's decision. The University Conduct Board may impose sanctions up to and including expulsion from the University and may design sanctions that are educational and/or remedial specific to the facts of a given case. Standard sanctions for alcohol, safety, sexual harassment and violence related behaviors are listed in section 11 of this Handbook. The University Conduct Board will render a decision on all Code of Student Conduct violations listed in the complaint.

Decisions of the University Conduct Board are confirmed by the Director of Student Rights and Responsibilities or a designee.

10.20 University Conduct System formal resolution proceedings are confidential and closed to persons not directly related to the case. The results of University Student Conduct System formal resolution process are held confidential in accordance with applicable law. The University reserves the right to correct any misinformation with regard to University Student Conduct System action that may be circulated in the media when the well-being of the community so requires. The University will publish data related to the activities of the University Student Conduct System on a periodic basis consistent with constraints and requirements imposed by law.

10.21 The process of investigation and the Board's decision will be concluded within 60 days of the original complaint, pending special circumstances. If circumstances arise that delays either the investigation or the Board's determination of an outcome, both parties will be sent written notification of the delay and its cause. Each party will receive written notification of the decision of the University Conduct Board including a finding of responsibility, whether sex discrimination was found and sanctions.

10.22 In all cases of sexual assault, stalking, gender-related harassment, and domestic/relationship violence the decisions of the University Conduct Board are effective immediately. Information on how to appeal decisions of the University Conduct Board can be found in section 12 of this handbook.

## PART 11. SANCTIONS FOR ALL CONDUCT CASES

University Student Conduct System sanctions are official actions of the University. Failure to comply with sanctions that are imposed by the University Student Conduct System, or with specific conditions related to the safety and security of any persons or property while a case is pending, may result in immediate, indefinite suspension or expulsion from the University without benefit of further process.

11.1   The following sanctions, or any combination thereof, may be applied to any individual student, group of students, or student organization, for violations of the Code of Student Conduct and related University policies:

a.   EDUCATIONAL

The primary goal of the University Student Conduct System is education. Respective Boards and case managers may design sanctions that are specific to an individual case when it is determined that educational value may result and the interests of the University community are maintained. Examples of educational sanctions include, but are not limited to: community service, Community Involvement Assignment (CIA)[3], Decision Making, Civility Workshop, monetary restitution, and research and writing assignments.

b.   RESIDENTIAL WARNING

This status is a formal warning on behalf of the residential living program and is intended to warn the student about the consequences of continuing such behavior.

c.   RESIDENTIAL REPRIMAND

This status is a formal admonition on behalf of the residential living program and is intended to clearly document in a student's disciplinary file that student's behavior has been deemed unacceptable.

d.   RESIDENTIAL PROBATION

This status indicates that a student is no longer in good standing within the University's residential living program. Further violations may result in the immediate loss of eligibility to live in or visit the University's residence and/or dining facilities or in more serious sanctions, as circumstances warrant.

e.   RESIDENTIAL RELOCATION/SUSPENSION/EXPULSION

These statuses indicate that a student is not eligible to live in or visit some or all of the University's residence and/or dining facilities. A residential relocation involves the reassignment of a student's living unit within University housing and usually prohibits the student from returning to the residential area associated with the former living assignment. A residential suspension or expulsion involves the student's removal from housing altogether. These statuses may extend for a specific period of time, until the completion of specific conditions, or permanently. These statuses may be limited to a specific facility or applied to all facilities.

f.   SOCIAL PROBATION

This status is applied as a result of a breach of specific social regulations. Its primary effect is to suspend a privilege related to the nature of the offense and/or restrict access to specific campus facilities or programs.

g.   WARNING

In instances of less serious deviations from the University norms of conduct, the student may be formally warned of the possible consequences of continuing such behavior. No other specific action is taken unless further misconduct occurs.

h.   DISCIPLINARY REPRIMAND

This status is a formal admonition on behalf of the University community and is intended to clearly document in a student's or student organization's disciplinary file that their behavior has been deemed unacceptable. This status is applied for a minimum of one academic year, but can be extended for a specific period of time as determined by the case manager or formal hearing body.

i.   DISCIPLINARY PROBATION

This action constitutes a change in status between good standing and suspension or expulsion from the University. The student or student organization is permitted to remain enrolled at or retain recognition by the University under stated conditions, depending upon the nature of the violation and upon the potential learning value that may derive from specific restrictive measures. Further violations may result in immediate suspension, indefinite suspension, or expulsion from the University. This status is applied for a minimum of one academic year, but can be extended for a specific period of time as determined by the case manager or formal hearing body.

j.   INTERIM SUSPENSION

This action by the Director of Student Rights and Responsibilities, or a designee, in consultation with the Senior Vice President for Enrollment and the Student Experience, or a designee, is a temporary suspension of certain rights or privileges while a conduct case is pending. An interim suspension may be broad and inclusive or may be restricted to a

---

3    Community Involvement Assignment (CIA) includes a series of University community activities, events, and lectures designed to promote student engagement and life changing experiences.

specific location and/or function and is based on the determination that the safety and well-being of the University community or specific persons are at risk.

k.   INDEFINITE SUSPENSION

This action results in a student's involuntary withdrawal from the University, or in loss of University recognition and related privileges for a student organization, for an indefinite period of time. A suspended student or student organization is prohibited from any presence or activity on University owned, operated, or controlled property, including but not limited, to University-owned property leased to a non-University affiliated party, and from participation in any class or program offered by Syracuse University. A student or student organization placed on a status of indefinite suspension is permitted, after a minimum period of separation, to submit a petition demonstrating his/her good citizenship in the time away from the University and potential for making positive contributions in the future.

Individual student petitions are required to include: a personal essay evidencing the learning the student has gained from the incident that led to the indefinite suspension; the manner in which the student has been occupied since his/her departure from the University; and, the specific commitments the student will make to contributing positively to the University community if offered the opportunity for readmission; documented information of the student's completion of substantial service to the community; documented information of gainful employment and/or completion of academic course work at an accredited institution of higher education; and, documented information of completion of any special assignments identified for the student by the Office of Student Rights and Responsibilities at the time of or subsequent to the student's departure. This petition is reviewed by the Director of Student Rights and Responsibilities and the Senior Vice President for Enrollment and the Student Experience, or a designee, who will determine whether and under what conditions a student may be permitted to return to the University in a future semester.

Student organization petitions will include elements specific to the type of student organization, as determined by the Director of Student Rights and Responsibilities.

l.   EXPULSION

This action results in the permanent separation of the student, or student organization, from the University, its programs and facilities. It is the most severe disciplinary action that the University Student Conduct System can impose.

11.2   APPLICATION OF STANDARD SANCTIONING GUIDELINES

Standard sanctions have been adopted by Syracuse University to respond to substance abuse-related and other serious violations of the Code of Student Conduct. Syracuse University is deeply concerned about the extent to which some students engage in underage consumption of alcohol, unlawful use of drugs, and/or consumption of alcohol or other drugs to a degree that renders them in need of emergency medical intervention or other extraordinary assistance. In addition, Syracuse University seeks to deter students from engaging in conduct that poses risks to the safety and well-being of the individual student and/or the University community as a whole. Standard sanctions are intended to alert students and other members of the University community to the seriousness of alcohol- and drug-related behaviors, violence, and safety violations; provide meaningful consequences for violations of University expectations; and, ensure that students are provided opportunities to access education, counseling, and support.

Standard sanctions apply only to those offenses described in Sections 11.3, 11.4, 11.5, 11.6, and 11.7. Incidents falling within the Code of Student Conduct, but not described in Sections 11.3, 11.4, 11.5, 11.6, and 11.7, will be handled on a case-by-case basis in light of all the circumstances.

Other specific situations to which standard sanctions do not apply are as follows:

a.   where a student is found to have engaged in multiple violations of the Code of Student Conduct in a single incident, rather than solely in the violation addressed by the standard sanction;

b.   where a student is already on a conduct sanction status equal to or greater than the standard sanction for a previous offense; and/or

c.   where a specific incident presents exacerbating circumstances, an ongoing risk to persons or property, or other serious concerns.

In these situations, the appropriate sanctions will be determined on a case-by-case basis in light of all the circumstances. Generally, these situations will result in sanctions in excess of the standard sanction. The presence of substantial mitigating or other appropriate circumstances may result in the reduction of a standard sanction in the discretion of the Director of Student Rights and Responsibilities, or the University Appeals Board.

11.3    STANDARD SANCTIONS FOR SUBSTANCE ABUSE-RELATED VIOLATIONS

| Category | First Violation | Second Violation | Third Violation |
|---|---|---|---|
| Use or possession of alcohol under prohibited circumstances | Disciplinary Reprimand<br><br>Community Involvement referral and/or Educational project(s) | Disciplinary Probation<br><br>Community Involvement referral<br><br>Educational project(s) and/or Options Program referral | Indefinite Suspension for a minimum of one academic year |
| Supplying alcohol to underage person(s) | Disciplinary Probation<br><br>Community Involvement referral or Community Service project(s) and/or Educational project(s) | Indefinite Suspension for a minimum of one academic year | Not applicable* |
| Extreme alcohol intoxication posing a substantial risk to the health and well-being of self and/or others | Disciplinary Reprimand<br><br>Appropriate Educational assignments<br><br>Options Program referral | Disciplinary Probation<br><br>Residential relocation (at the discretion of the case manager or hearing Board)<br><br>Options Program referral<br><br>Other Educational project(s) | Indefinite Suspension for a minimum of one academic year |
| Manufacture or sale of alcohol under prohibited circumstances | Disciplinary Probation<br><br>Community Involvement referral or Community Service project(s) and/or Educational project(s) | Indefinite Suspension for a minimum of one academic year | Not applicable* |
| Driving any motor vehicle while intoxicated or while under the influence of unlawful drugs | Indefinite Suspension for a minimum of one academic term<br><br>Community Involvement referral or Community Service project(s) and/or Educational projects | Expulsion or Indefinite Suspension for a minimum of one academic year | Not applicable* |
| Use or possession of drug paraphernalia, marijuana, illegal drugs or controlled substances without an appropriate prescription | Disciplinary Probation<br><br>Residential relocation (at the discretion of the case manager or hearing Board)<br><br>Options Program referral<br><br>Community Involvement or Community Service referral and/or<br><br>Other Educational project(s) | Indefinite Suspension for a minimum of one academic year | Not applicable* |

| Category | First Violation | Second Violation | Third Violation |
|---|---|---|---|
| Extreme drug intoxication or abuse-related behavior posing a substantial risk to the health and well-being of self and/or others | Disciplinary Probation<br><br>Residential relocation (at the discretion of the case manager or hearing Board)<br><br>Options Program referral<br><br>Community Involvement referral and/or Other Educational project(s) | Indefinite Suspension for a minimum of one academic year | Not applicable* |
| Manufacture, sale, purchase, or distribution of illegal drugs or controlled substances | Expulsion or Indefinite Suspension for a minimum of one academic year | Not applicable* | Not applicable* |

*In these circumstances, sanctions will be determined on a case-specific basis by the adjudicator or appropriate adjudicative body.

**DWI and serving alcohol to minors do not apply.

11.4   STANDARD SANCTIONS FOR WEAPONS-RELATED VIOLATIONS

| Category | Sanction |
|---|---|
| Possession of a prohibited weapon or other dangerous object, including, but not limited to firearms, BB-guns, sling shots, airsoft guns, air rifles, explosive devices, fireworks, or any other dangerous, unlawful, or hazardous object or material | Disciplinary Probation, Indefinite Suspension, or Expulsion as determined by the case manager or hearing Board;<br><br>Expulsion from student housing, if the student is not suspended, Indefinitely Suspended, or Expelled and lives in a University residence,<br><br>Minimum of 80 hours of Community Service and/or other Educational sanctions as deemed appropriate by the case manager or hearing Board |
| Any improper use, attempted use, or threat of use of a weapon or other dangerous, illegal, or hazardous object; any improper use as a weapon of any otherwise permitted object or material | Expulsion or indefinite suspension for a minimum of one academic year |

11.5   STANDARD SANCTIONS FOR VIOLENCE-RELATED VIOLATIONS

| Category | Sanction |
|---|---|
| Physical harm or threat of physical harm without a weapon resulting in little or no physical injury to involved persons | Disciplinary probation or indefinite suspension as determined by the case manager or hearing Board,<br><br>Participation in the Conflict Resolution Program, Options Program referral, if alcohol or other drugs were a factor in the incident,<br><br>Minimum of 80 hours of community service and/or other Educational sanctions as deemed appropriate by the case manager or hearing Board |
| Physical harm without a weapon resulting in significant physical injury to another person | Expulsion or Indefinite Suspension for a minimum of one academic year |

11.6    STANDARD SANCTIONS FOR SAFETY AND FIRE-RELATED VIOLATIONS

| Category | Sanction |
| --- | --- |
| Tampering with smoke detectors in on campus residential facilities | Disciplinary Reprimand, educational projects and residential probation |
| Interference with, improper activation of, or damage to any elevator or safety or emergency equipment, including, but not limited to: fire alarms, fire extinguishers, sprinkler systems, and blue lights; lighting any unauthorized fire on University property | Indefinite Suspension for a minimum of one academic semester; Expulsion |

11.7    STANDARD SANCTIONS FOR GENDER RELATED VIOLENCE/HARASSMENT

| Category | Sanction |
| --- | --- |
| Sexual harassment including unwanted sexual advances, requests for sexual favors and some visual and physical conduct of a sexual nature; Stalking | Disciplinary Probation with appropriate educational projects; Indefinite Suspension for a minimum of one academic year or Indefinite Suspension until the survivor graduates, whichever is longer (as appropriate) |
| Sexual assault, including, but not limited to sexual touching without consent, forcible touching; stalking with threats of harm; use of physical violence in a dating or sexual relationship | Indefinite Suspension for a minimum of one academic year or Indefinite Suspension until the impacted person graduates, whichever is longer (as appropriate); Expulsion |
| Sexual intercourse without consent | Indefinite Suspension for a minimum of one academic year or Indefinite Suspension until the impacted person graduates, whichever is longer (as appropriate); Expulsion |
| Retaliation against an individual who has filed a report of gender related violence/harassment | Disciplinary Probation with appropriate educational projects; Indefinite Suspension for a minimum of one academic year; Expulsion |

## PART 12. APPEALS

12.1    In cases of violence related violations, sexual assault, stalking, gender-related harassment, or domestic/relationship violence, decisions of the respective Boards are effective immediately. In all other cases, decisions of the respective Boards are effective immediately, unless a written notice of intention to appeal has been received by the Office of Student Rights and Responsibilities within one business day after the confirmed decision is made available.

12.2    Either party may appeal the decision of the hearing Board in writing within three (3) University business days after the written decision is made available. All appeals must be authored and signed by the submitting party. Appeal submission must not be more than ten (10) pages, double-spaced, using 12-point font and 1-inch margins (not including attachments). An appeal by one party will be forwarded by the Office of Student Rights and Responsibilities to the other party. Appeals produced by procedural advisors or other non-parties will not be considered by the University Appeals Board.

12.3    Appeals must be based on one or more of the following:

a.    New information not reasonably available at the time of the original hearing, the absence of which can be shown to have had a detrimental impact on the outcome of the hearing.

b.    Procedural error that can be shown to have had a detrimental impact on the outcome of the hearing.

c.    Errors in the interpretation of University policy so substantial as to deny either party a fair hearing.

d.    Grossly inappropriate sanction having no reasonable relationship to the charges.

12.4    When an appeal has been filed, the other party will be permitted to respond in writing, specifically addressing the issues raised in the appeal, within three (3) business days after the appeal has been made available. Responsive submission must not be more than ten (10) pages, double-spaced, using 12-point font and 1-inch margins (not including attachments.) Any responsive document will be forwarded by the Office of Student Rights and Responsibilities to the appealing party.

12.5    The University Appeals Board is comprised of three (3) members who are full-time faculty or staff from Syracuse University. Members of the University Appeals Board are appointed by the Senior Vice President for Enrollment and the Student Experience, or a designee, from a pool of at least ten (10) members recommended by the University community. The University Appeals

Board has authority to hear appeals from decisions of any lower non-academic conduct Board that meet the criteria set forth in Part 12.3. In addition, the University Appeals Board has authority to review the decision rendered by any hearing officer described within these procedures. The University Appeals Board is advised by the Director of Student Rights and Responsibilities, if they have not been involved in the original hearing, or by a designee of the Senior Vice President for Enrollment and the Student Experience.

12.6   The University Appeals Board will determine whether the prescribed criteria for appeals have been met and what process, if any; will be required to resolve the case. The Board may re-hear cases or limit the proceedings to the specific issues outlined in the appeal, depending on the nature of the case. The Board may uphold the decision, change lower Board decisions, alter sanctions up or down, or return cases to the respective lower Board for further process. The University Appeals Board may impose sanctions up to and including expulsion from the University and may design educational and/or remedial sanctions appropriate to a given case. The University Appeals Board may alter the Standard Sanctioning Guidelines in Part 11 where the Board determines that substantial mitigating or exacerbating circumstances warrant reduction or enhancement of the standard sanction.

12.7   Findings of fact will be accepted as determined by the original Board, unless the appellate body determines that the original Board acted in an arbitrary, capricious, or unfair manner.

12.8   The University Appeals Board will make a decision based on the written submissions within three (3) business days after all written submissions are received, or indicate in writing what further process is necessary for final resolution.

12.9   Decisions of the University Appeals Board will be final when reviewed and confirmed by the Senior Vice President for Enrollment and the Student Experience or a designee. The Senior Vice President for Enrollment and the Student Experience, or a designee, as appropriate, may interview any participant in an earlier proceeding, change the decision, alter the sanction up or down, or return the case to the University Appeals Board or another hearing Board for further process. Decisions of the Senior Vice President for Enrollment and the Student Experience, or a designee, are final. Review and confirmation by the Senior Vice President for Enrollment and the Student Experience, or a designee, will be made within three (3) business days after the decision of the University Appeals Board is complete. Parties will be informed of the outcome of any appeals only upon confirmation by the Senior Vice President for Enrollment and the Student Experience, or a designee.

## PART 13. MODIFICATION OF PROCEDURES

13.1   Syracuse University reserves the right to modify its conduct procedures and appeals processes with written notice to the complainant and the respondent when classes are not in session, while any involved individual is studying abroad, during the summer session, when safety and security issues so demand, when special expertise is needed to ensure fairness, or in other circumstances where in the University's sole discretion the procedures described herein are deemed insufficient to meet the objectives of educating and protecting members of the University community. Modified procedures, nonetheless, will provide students with required elements of fundamental fairness.

## PART 14. DISCIPLINARY RECORDS AND TRANSCRIPT NOTATIONS

14.1   Access to disciplinary records is provided in accordance with the Family Educational Rights and Privacy Act of 1974, as amended. FERPA gives parents certain rights with respect to their children's education records. These rights transfer to the student when he or she reaches the age of 18 or attends a school beyond the high school level. Students to whom the rights have transferred are "eligible students."

Except in unusual circumstances as determined in its sole discretion, and consistent with federal law, Syracuse University will seek to notify parents or guardians of conduct issues involving dependent students as follows:

a.   In an emergency;

b.   After final adjudication and finding of responsibility in all alcohol and drug-related offenses;

c.   After final adjudication and finding of responsibility in all offenses resulting in disciplinary probation, suspension or expulsion.

A student is not a dependent student if the student:

- is or will be 24 years old during the academic year;

- is enrolled in a graduate or professional program;

- is married;

- is a veteran of the U.S. Armed Forces;

- is an international student.

14.2   Disciplinary records maintained are retained for seven (7) years from the date of the most recent incident in the student's file or until one (1) year after the student has graduated from the University, whichever is longer. Records of students who were suspended, expelled, prohibited from future enrollment or otherwise withdrawn for disciplinary reasons are retained indefinitely. Students are advised to consult the Academic Integrity Office with regard to the records retention policies associated with academic dishonesty cases.

14.3    Students found to be responsible for non-violence related violations who are suspended or expelled will have the following notation listed on their transcript: "Administrative Withdrawal – University Initiated". Students found to be responsible for violence related violations as defined by the Clery Act who are suspended or expelled will have their University transcripts issued with the following notations:

- In cases of suspension – "suspended after a finding of responsibility for a code of conduct violation."

- In cases of expulsion – "expelled after a finding of responsibility for code of conduct violation."

- If a student who has alleged to have been involved in an incident involving violence related violations withdraws from the University with an investigation or conduct case pending, the following notation will be listed on their University transcript: "withdrew with conduct charges pending."

Students who have been suspended for a violence related violation who would like to appeal the suspension notation on their transcript may do so one year after the conclusion of the suspension via the process listed in section 14.4. Notations for expulsion will not be removed.

14.4    Students who choose to appeal a suspension notation on their transcript may do so via the following process:

a. Appeals submitted prior to one year after the completion of the suspension will not be considered.

b. In order to appeal a suspension notation on a University transcript, all readmission or other sanction requirements must be completed at the time of the request.

c. If a student has been determined to be responsible for any additional conduct related incidents which took place after the start of the suspension, appeals will not be considered.

d. Submissions of a request for removal of a suspension notation should be submitted in writing to the Office of Student Rights and Responsibilities at, 310 Steele Hall, Syracuse, NY 13244 or via email at *studentconduct@syr.edu*. Submissions should contain the following:

- A brief description of the incident and the sanction imposed.

- Reflections on the student's actions, how they have impacted the student as well as others.

- An account of the student's decision-making and behavior since the incident.

- An explanation as to why the student believes that the transcript notation indicating suspension should be removed from their transcript.

- Any supporting material (letters of recommendation, verification of community service and/or employment).

e. All requests will be responded to in writing. If the request is granted, the notation of suspension will be changed to "Administrative Withdrawal – University Initiated."

## PART 15. STUDENT INITIATED WITHDRAWAL

15.1    A student who chooses to withdraw from the University rather than participate in the conduct process may be classified as having been withdrawn for disciplinary reasons. This status will be noted on the student's transcript as "Administrative Withdrawal – University Initiated." A student who withdraws under these circumstances may not receive a transcript, is not permitted to enter onto Syracuse University owned, operated, or controlled property, including but not limited to University-owned land leased to a non-University affiliated party, and may not participate in any course or program offered by Syracuse University until the pending matter is resolved.

## PART 16. GOOD STANDING

16.1    In order to obtain a Syracuse University degree (undergraduate or graduate), students must be in good standing with the University. "Good standing" includes a requirement that all matters pending before the University Student Conduct System have been fully and finally resolved (including, but not limited to, full satisfaction of any sanctions imposed). Students who are not in good standing will not be granted a degree, will not have access to transcripts, and are not eligible to participate in graduation ceremonies.

## PART 17. ENFORCED MEDICAL WITHDRAWAL

17.1    Syracuse University reserves the right to withdraw a student temporarily from the institution for misconduct that is based on a significant psychological, physical or substance abuse-related condition. Such action of the Senior Vice President for Enrollment and the Student Experience and/or a designee, or the Director of Student Rights and Responsibilities or a designee, will be done with appropriate professional consultation. The student will be provided written notice of the reason(s) for the withdrawal and an opportunity to be heard by the Senior Vice President for Enrollment and the Student Experience or one or more designee(s), as deemed appropriate under the circumstances.

## PART 18. RIGHTS TO AMEND

18.1    The procedures and policies outlined above supersede all previous statements and policies of Syracuse University with respect to student rights and responsibilities as may appear in any Syracuse University publication. The University reserves the right to amend these policies and procedures from time to time.

*Print date: August 2017*

**SYRACUSE UNIVERSITY NON-DISCRIMINATION AND EQUAL OPPORTUNITY STATEMENT**

The University does not discriminate and prohibits harassment or discrimination related to any protected category including creed, ethnicity, citizenship, sexual orientation, national origin, sex, gender, pregnancy, disability, marital status, age, race, color, veteran status, military status, religion, sexual orientation, domestic violence status, genetic information, gender identity, gender expression or perceived gender[4]. Any complaint of discrimination or harassment related to any of these protected bases should be reported to Sheila Johnson-Willis, the University's Interim Chief Equal Opportunity & Title IX Officer. She is responsible for coordinating compliance efforts under the various laws including Titles VI, VII, IX and Section 504 of the Rehabilitation Act. She can be contacted at Equal Opportunity, Inclusion, and Resolution Services, 005 Steele Hall, Syracuse University, Syracuse, NY 13244-1120; or by email: *sjohnson@syr.edu*; or by telephone: 315-443-1520. Questions or concerns may be directed externally to Office for Civil Rights (OCR), U.S. Department of Education, 400 Maryland Avenue, SW, Washington, DC 20202 1100; Customer Service Hotline #800-421-3481; Facsimile: #202-453-6012; TDD #877-521-2172; *www.ocr.gov*.

[4] Title IX prohibits harassment or discrimination based on sex, gender, sexual orientation, gender expression, or gender identity. Titles VI and VII prohibit harassment or discrimination based on race, national origin, or color. Sections 503 and 504 of the federal Rehabilitation Act and the Americans with Disabilities Act prohibit discrimination or harassment because of disability. In addition, New York law prohibits discrimination or harassment based on these and other protected categories.

Syracuse University

# Exhibit B



April 21, 2018

██████████████

Sent electronically to ████████████

SUID ███████████
██████████████

Dear ███████████

This office received a complaint filed against you by the Department of Public Safety alleging that you have violated the following section(s) of the Code of Student Conduct:

1) Physical harm or threat of physical harm to any person or persons, including but not limited to: assault, sexual abuse, or other forms of physical abuse.

2) Harassment—whether physical, verbal or electronic, oral, written or video—which is beyond the bounds of protected free speech, directed at a specific individual(s), easily construed as "fighting words," or likely to cause an immediate breach of the peace.

3) Conduct—whether physical, verbal or electronic, oral, written or video— which threatens the mental health, physical health, or safety of any person or persons including, but not limited to hazing, drug or alcohol abuse, bullying and other forms of destructive behavior.

10) Illegal use, possession, purchase, distribution, manufacture or sale of alcohol, drugs or controlled substances, or any other violation of the Syracuse University Policy on Alcohol, Other Drugs, and Tobacco.

15) Violation of University policies, rules or regulations that are published in the Student Handbook, or other official University publications or agreements.

- Office of Fraternity and Sorority Affairs Policy
- Syracuse University Anti-Harassment Policy

More specifically, this complaint arises from an incident that occurred during the spring 2018 semester.

**Please attend an informal resolution meeting in the Office of Student Rights and Responsibilities (OSRR), 310 Steele Hall, on Thursday, April 26, 2018, at 2 p.m. to discuss this matter and determine whether formal proceedings will be instituted.**

Pamela Peter has been assigned as your student conduct case manager, and will gladly answer any of your questions concerning this matter at your scheduled meeting. It is recommended that prior to your meeting you review the Syracuse University Student Conduct System Handbook. Please note that your student conduct case manager, per Part 11.2 and 12 of the Student Conduct System Handbook, may consider previous violations of the Code of Student Conduct during any sanctioning discussion.

**Office of Student Rights and Responsibilities**

310 Steele Hall, 131 Crouse Drive
Syracuse, NY 13244                    **T** 315.443.3728  **F** 315.443.9118  studentconduct.syr.edu

If you are unable to attend your informal resolution meeting, please notify your case manager in advance. Failure to attend your informal resolution meeting without the advance notification of your case manager may result in the informal resolution process proceeding in your absence.

We recommend that you obtain a procedural advisor to assist you throughout the conduct process, including your initial meeting with OSRR. The Student Conduct System Handbook (Parts 5.8 - 5.10) defines procedural advisors as a full-time student, staff, or faculty member at Syracuse University. You are encouraged to reach out to your home school or college to seek procedural advice or other support. In addition, the Office of Student Assistance maintains a pool of University community members that have volunteered and have been trained to provide procedural advice and support. If you are interested in requesting a procedural advisor through the Office of Student Assistance, please call 315.443.4357. Please note that assignment of a procedural advisor from the Office of Student Assistance is based on availability and is not guaranteed.

If you believe that you need accommodations for a disability, please contact the Office of Disability Services (ODS), located in Room 309 of 804 University Avenue, or call 315.443.4498 for an appointment to discuss your needs and the process for requesting accommodations before you go through the informal resolution process. ODS is responsible for coordinating disability-related accommodations and will issue students with documented Disabilities Accommodation Authorization Letters, as appropriate. Since accommodations may require early planning and are not provided retroactively, please contact ODS as soon as possible. (Refer to Part 5.11 of the Student Conduct System Handbook.)

If you are receiving on-going supportive services from a Syracuse University office, you are welcome to discuss your case with your counselor/advocate prior to attending your initial meeting with OSRR. You may ask your counselor/advocate to serve as your procedural advisor, but please understand that counselors from the University's Counseling Center may not be able to serve in this capacity. (Refer to Part 5.11 of the Student Conduct System Handbook.)

Should you have any questions regarding this process, please contact this office. To review the Syracuse University Student Conduct System Handbook please visit studentconduct.syr.edu.

Sincerely,

Eric M. Nestor
Associate Director

# Exhibit C

UNIVERSITY CONDUCT BOARD HEARING OPINION

Syracuse University
Department of Public Safety
Office of Equal Opportunity, Inclusion & Resolution Services
**Complainant**
vs.
███████████ Student
**Respondent**

OPINION OF THE BOARD
At a session of the University Conduct Board

Held on 5/9/2018
from 8:44 a.m. – 4:24 p.m. in the Melanie Gray Ceremonial Courtroom (Dineen Hall)

and 5/10/2018
from 8:08 a.m. – 2:44 p.m. in the Melanie Gray Ceremonial Courtroom (Dineen Hall)

and 5/14/2018
from 9:03 a.m. – 9:29 a.m. in the Melanie Gray Ceremonial Courtroom (Dineen Hall)

Presiding:
Jackie Dorchester, Chairperson
Carlota Deseda-Coon, Board Member
Tommy Powell, Board Member
Chris Cofer, Board Member Alternate
Ali Cridge, Board Member Alternate

Advisor to Complainant: N/A                    Advisor to Respondent:
                                               Todd Engel

Witness(es) for Complainant:                   Witness(es) for Respondent:
Detective Michael Toia, DPS

Opinion by: Jackie Dorchester, Chairperson
Board Advisor: Devon Riley, Esq.

**SYRACUSE UNIVERSITY**
OFFICE OF STUDENT RIGHTS
AND RESPONSIBILITIES

**ITEMS PROVIDED IN THE CASE FILE FOR CONSIDERATION BY THE BOARD**

The Case File contained the following information:

1. Confidential Report of Investigation by the University's Equal Opportunity, Inclusion, and Resolution Services
2. Declaration of Teresa Dahlberg
3. DPS Investigation
4. DPS Notes of Video
5. John Doe Affidavit 1
6. John Doe Affidavit 2
7. John Doe Affidavit 3
8. John Doe Affidavit 4
9. John Doe Affidavit 5
10. Social Media Exhibit
11. Student identification photographs
12. April 18, 2018 transcript
13. April 25, 2018 transcript
14. Respondent Response to Title IX Investigative Report (May 7, 2018)
15. Letter to Nestor from Germain dated May 2, 2018, re: *Fraternity Administrative Proceedings*, and related follow up via email
16. Letter to Nestor from Germain dated May 5, 2018, re: *US DOE Policy on Fair Title IX Hearing Process*
17. Letter to Nestor
18. Videos 1-9
19. Syracuse.com article on Theta Tau Response


**STATEMENT OF HEARING MOTIONS AND RULINGS**

**1. Bias of the Board**

When originally asked, Respondent ▮▮▮▮ did not object to any specific member of the Board on the basis of bias (May 9 Hearing Transcript, p. 4, line 25). Respondent ▮▮▮▮▮▮ later objected to the members of the Board on the basis of bias and said, "Entirely as a result of the situation, one faculty member has already been terminated from his position within the University in response to this event. I feel that there may be a conflict of interest, the Board may be worried about losing their jobs if they were to render a verdict that was not in the Chancellor's favor." (May 9 Hearing Transcript, p. 21, line 15).  Respondent ▮▮▮▮▮▮ also said, "I'd like to bring forth the objection that the entire Board is biased because again you did receive Chancellor Syverud's initial email, incorrectly representing the case essentially deeming us guilty before any proper hearing or evidence was presented." (May 9 Hearing Transcript, p. 36, line 4-9). In response, the Board Chairperson provided information regarding the selection process, indicating that the presiding Board is composed of a trained group of volunteers who were available to hear the matter, and have experience hearing student conduct cases involving Title IX matters, and who have served on the University

Conduct Board for two to five years. The Board members are neutral and impartial, having no prior connection to or relationship with the parties or the facts.

**2. Seven Additional Videos**

Respondent ███████ objected "to showing videos that were not in the procedural file." (May 9 Hearing Transcript, p. 9, line 8). Respondent ███ objected to "any videos not published they create basis for charges again us…. No public has seen them so the charges seem to be again the videos that were released to the public." (May 9 Hearing Transcript, p. 13, line 7). Respondent ███████ also joined in Respondent ███████'s objection. (May 9 Hearing Transcript, p. 39, line 24). The Board Chairperson noted that the videos were part of the procedural file and the Respondents had been provided a previous opportunity to review the videos.  The Investigative Report provided the following notice, *"There are seven additional videos in the University's possession, four of which contain additional content.  All nine videos will be shown at the hearing.  The University will not distribute these videos, which have not been publically released, electronically. However, Respondents wishing to review the additional videos in advance of the hearing may contact EIORS to schedule a time to view them in the EIORS office."* (EIORS Report of Investigation, p. 16, footnote 2).

**3. Appearing Together**

Respondent ███████ objected to being tried as a group asking, "Why are being tried together and not as individuals? Why is there not an individual hearing for each of us?" (May 9 Hearing Transcript, p. 17, line 10).  Respondent ███████ joined in this objection. The Board noted that Respondent ███████'s question was procedural and previously determined by University officials.[1] The Respondents were given the opportunity to present their case in a group as well as an individual setting.

**4. The Role of the Board Advisor**

Respondent ███████ inquired whether the Board's Advisor, Devon Riley, was independent or acting as an agent for the University. (May 9 Hearing Transcript, p. 23, line 4). Respondent ███████ joined in this inquiry and asked for clarification (May 9 Hearing Transcript, p. 27, line 17). The Board's Advisor responded that she is an external attorney advisor to the Board.  The Board Chairperson noted that Ms. Riley is not serving as a voting member of the Board.

**5. The Role of the Alternates**

Respondent ███████ objected to the presence of the alternates, Christopher Cofer and Alison Cridge asking, "Why are they present, why are they full present and offering advice if they're supposed to be alternates and not really involved." (May 10 Hearing Transcript, p.187, line 6). Respondent ███████ joined in this objection. The Board Chairperson clarified that alternates are permitted to ask questions and participate in the hearing, in the event one of the original Board members could not be present for deliberations.

---

[1] All Respondents were advised in their hearing notice that they could speak to the Board individually and outside of the presence of the other Respondents. That information would only be shared with other Respondents if it inculpated or exculpated the other Respondent. Specifically, the Board informed them "that if you tell us something that related to another Respondent, or the charges against them, we will need to provide a transcript of that information to the other Respondent." (May 14 Hearing Transcript, p. 7, line 19).

**STATEMENT OF FACTS**

**The Complainant alleges that the Respondent has violated the Code of Student Conduct Sections:**

1) Physical harm or threat of physical harm to any person or persons, including, but not limited to:  assault, sexual abuse, or other forms of physical abuse.

2) Harassment—whether physical, verbal or electronic, oral, written or video—which is beyond the bounds of protected free speech, directed at a specific individual(s), easily construed as "fighting words," or likely to cause an immediate breach of the peace.

3) Conduct— whether physical, verbal or electronic, oral, written or video— which threatens the mental health, physical health, or safety of any person or persons including, but not limited to hazing, drug or alcohol abuse, bullying or other forms of destructive behavior.

10) Illegal use, possession, purchase, distribution, manufacture or sale of alcohol, drugs or controlled substances, or any other violation of the Syracuse University Policy on Alcohol, Other Drugs, and Tobacco.

15) Violation of University policies, rules or regulations that are published in the Student Handbook, or other official University publications or agreements.

- Syracuse University's Office of Fraternity and Sorority Affairs Policy

  o Sexual Abuse and Harassment: Chapters will not tolerate or condone any form of sexist or sexually abusive behavior on the part of its members, whether physical, mental or emotional.  This is to include any actions, activities or events, whether on chapter premises or an off-site location which are demeaning to women or men, including but not limited to verbal harassment, sexual assault by individuals or members acting together.

- Syracuse University's Anti-Harassment Policy

  o Prohibited Harassment: Members of the Syracuse University community are prohibited from engaging in Harassment. Harassment is defined at the University as unwelcome conduct or speech directed at an individual or group of individuals, based on a Protected Category, which is so severe or pervasive that it unreasonably interferes with an individual's work performance, terms of employment, educational program participation, or it creates an intimidating, hostile, or offensive environment for study, work, or social living. To qualify as Harassment under this policy, the speech or conduct must be both viewed by the listener(s) as Harassment, and be objectively severe or pervasive enough that a reasonable person would agree that the speech or conduct constitutes harassment. In determining whether reported speech or conduct qualifies as Harassment under this policy, the University will consider all circumstances

4

surrounding the reported incident(s), including, without limitation, the frequency, location, severity, context, and nature of the speech or conduct, including whether the speech or conduct is physically threatening or humiliating, rather than a mere offensive remark. The University will also consider the intent of the speaker(s).

- Syracuse University's Sexual Harassment, Abuse and Assault Prevention Policy[2]

  o Sexual Harassment: Syracuse University defines sexual harassment as unwelcome behavior of a sexual nature that relates to the gender or sexual identity of an individual and that has the purpose or effect of creating an intimidating, offensive or hostile environment for study, work, or social living.

    The courts have recognized two forms of sexual harassment claims under Title VII of the Civil Rights Act of 1964: "quid pro quo" claims and "hostile environment" claims.

    The "quid pro quo" claim (literally "this for that") involves harassment in which a supervisory employee or academic superior demands sexual favors in exchange for job or academic benefits over which that supervisor has some control or influence. The "hostile work environment" claim involves unwelcome behavior of a sexual nature that creates an intimidating or hostile environment. This standard prohibits not only behavior intended to create a hostile environment, but also behavior that has the reasonably foreseeable effect of interfering with an individual's work, academic performance, or social living. Anyone who contributes to the creation of a "hostile work environment" may be held liable for sexual harassment, including the employer or its agents, if they knew of or reasonably should have known of the harassing conditions.
    Sexual harassment is conduct that focuses on a person's sexuality and/or gender, rather than on that person's contributions, as a student or employee, to the University. It encompasses the full range of coercive, unwelcome behavior, from subtle psychological force, to gross physical abuse. These acts may be visual (e.g., leering, ogling, and physical gestures conveying a sexual meaning), verbal (e.g., sexual innuendoes, suggestive remarks, sexually derogatory jokes), written (e.g., sexually suggestive e-mail, cartoons or letters), or physical (e.g., hugging, pinching or fondling). Sexual harassment may encompass acts of sexual violence, including rape, sexual assault, sexual battery, and sexual coercion. Sexual harassment also includes requests for sexual relations combined with threats of adverse consequences if the person refuses.
    Conduct alleged to be sexual harassment will be evaluated by considering the totality of the particular circumstances, including the nature,

---

[2] During deliberations, the Office of Student Rights and Responsibilities notified the Board Chairperson that the charge of Sexual Harassment under the Sexual Harassment, Abuse, and Assault Prevention Policy was withdrawn.  The Board therefore does not find the Respondent responsible for violating this Policy

frequency, intensity, location, context, and duration of the questioned behavior. Repeated incidents or a pattern of harassing behavior may be cause for serious corrective action. However, a more serious incident, even if isolated, may be sufficient cause for action under this policy.

**The Complainant presented the following information:**

- Detective Toia confirmed that Respondent ▮▮▮▮ participated in the skit on March 30th, 2018, which was captured in the video. Detective Toia walked the Board through the video and identified Respondent ▮▮▮▮ as wearing dark Adidas sweat pants.

- Detective Toia described the interview process that was used to obtain information from Respondent ▮▮▮▮ regarding the March 30th incident.

- Detective Toia described the demeanor of some Respondents during the interviews and noted that some appeared remorseful.

- Detective Toia confirmed that there was no evidence or information that any Respondents used, possessed, purchased, distributed, manufactured, or sold alcohol or narcotics.

- Detective Toia said that some of the Respondents were offered safety plans to ensure their protection.

- Detective Toia confirmed that DPS conducted a factual investigation that included gathering evidence and conducting witness interviews.

- Detective Toia indicated that the matter was conveyed to the Title IX Office for review, based on the sexual nature of the skits, which, he said is standard protocol.

- Detective Toia confirmed that when DPS concluded its investigation the matter was forwarded to the Office of Students Rights and Responsibilities to determine any appropriate charges.

- Detective Toia confirmed the contents of the Case File included the DPS investigation, EIORS Report of Investigation, and exhibits.

**The Complainant presented the following evidence in support of this claim:**

- Case file

- Nine videos of the March 30th event

- Verbal testimony supplementing and further detailing the investigation

- 19 DPS interviews of Respondents and other members of Theta Tau

**The Respondent defended against the Complainant's claim by arguing that:**

- Regarding Code of Conduct Section 1, Respondent  stated that at no time did he commit physical harm and had never been told that his specific conduct was a form of direct or indirect sexual abuse. Respondent ▮▮▮▮ denied that his conduct constituted sexual abuse.

- Regarding Code of Conduct Section 2, Respondent ▮▮▮▮ said that his conduct within the roast was completely nonverbal in nature. Even if he did speak, any conduct he did was not beyond the bounds of free speech. He said his role was limited to standing and walking off stage and standing with his back to the audience. He did not act in a manner that would fit within the definition of harassment.

- Regarding Code of Conduct Section 3, none of the actions Respondent ▮▮▮▮ personally participated in could in any way threaten the mental health, physical health, or safety of any persons. The roast does not fit the definition of hazing.

- Regarding Code of Conduct Section 10, at no time was any alcohol present or in use during the roast. Respondent ▮▮▮▮ stressed he did not drink or use drugs at any time during this event.

- Regarding Code of Conduct Section 15, as it relates to violating the Fraternity and Sorority Affairs, Respondent ▮▮▮▮ stated that this claim focuses on the actions of the Fraternity, not an individual. At the time, he was a pledge and had no control over the events in question. He was a minor participant with no verbal participation in the roast.

- Respondent ▮▮▮▮ stated that the event was a closed, member-only event, not open to the public. It was in a safe place where they were able to express their right to free speech. It was meant to be satirical and there was no malicious intent.

- Regarding Code of Conduct Section 15, as it relates to the Anti-Harassment Policy, Respondent ▮▮▮▮ stressed he had no speaking role. The roast and skits were meant to be humorous and satirical.

- Respondent ▮▮▮▮ stated that he had no involvement in the release of the videos, and did not make anyone watch the video.

- Respondent ▮▮▮▮ said he is very sorry he participated in the fraternity skit and he did not intend for anyone's feelings to be hurt and has learned an important lesson to think carefully about how a skit might be misinterpreted before participating in one.

- Respondent ▮▮▮▮ hopes to end the personal attack against him, which is threatening and creating an unnecessary psychological impact on him and taking a heavy toll on his family.

7

**The Respondent presented the following information in support of this argument:**

- May 6th written response
- May 10th written testimony

Additionally, the Respondents, collectively claimed that the Chancellor's communications to the University community regarding the videos negatively impacted the community's reaction to the videos.  Since all members of the Board had not previously read or watched the Chancellor's communications, the Board asked for, reviewed, and considered the following information, only as it related to the Respondents' claims that the messages were inflammatory and heightened the community's reaction:

1. April 18 email to students, faculty, and staff
2. April 19 email to students, faculty, and staff
3. April 20 email to alumni
4. April 21 notification that Theta Tau was expelled
5. April 21 video
6. April 22 email to students, faculty, and staff

## THE BOARD'S FINDING OF FACT

**Facts Determined by the Board**

1. An event took place at the Theta Tau house after the fraternity chapter meeting on March 30th at or about 7 p.m. The house is located at 1105 Harrison Street.

2. As part of the membership intake process, pledge class members were asked to create a skit that roasted current members.  The skit was a traditional part of the pledging process.

3. All pledge class members present participated in creating the script and producing the skit.

4. All Respondents confirmed that, during the entire evening, their individual participation was voluntary.

5. The Board accepts the Respondent's statement that the actions and language in the video are not representative of the Respondent's personal beliefs.

6. There was no information in the Case File or given at the hearing that alcohol or drugs were used, possessed, purchased, distributed, manufactured, or sold.

7. The events of March 30 were video recorded by a member of the fraternity that was later uploaded to a secret Facebook page, *Tau of Theta Tau*.

8. Videos were anonymously submitted to DPS and The Daily Orange on or about the morning of April 18, 2018.

9. Two videos (identified in the Case File as videos #9 and #4), were published by The Daily Orange.

10. Respondent ███████ has been identified in the videos as wearing dark Adidas sweat pants.

11. Video #9 depicts the following scenes:

   a. Scene 1: Respondent ████████ played a dog and Respondent ████████ played the dog's owner. As narrated by Respondent ████████████, Respondent ████████ and Respondent ████████ could not find "hot bitches to have sex with" and therefore the dog had to engage in sexual intercourse with his owner, wherein Respondent ████████ simulated humping Respondent ████████. Respondent ████████ then simulated "shitting outside the window" after the dog put "cum in his ass."

   b. Scene 2: Responded i████████ held a can at his genitals, while Respondent ████████ was on his knees facing Respondent ████████, stroking the can with his hand. Respondent ████████ simulated masturbation in Respondent ████████'s face. Respondent ████████ said to Respondent ████████, "Do you know the oath?" Respondent ████████ placed his hand on the can and replied, "Fuck black people and fuck Spics." Respondent ████████ asked Respondent ████████ to recite the following oath: "I solemnly swear to always have hatred in my heart for Niggers, Spics, and most importantly, the fucking Kikes." Respondent ████████ told Respondent ████████ to "go to town boy." Respondent ████████ then simulated oral sex of the can, which was still positioned at Respondent ████████'s genitals. Respondent ████████ called Respondent ████████ and Respondent ████████ to the front and said, "You fucking Kikes, get in the fucking shower." An audience member said, "Too far."

   c. Scene #3: Respondent ████████ punched a hole in the wall and simulated sexual intercourse with the hole in the wall. Respondent ████████ narrated that Respondent ████████'s character "has had a hard night after facing 30 rejects from women." Respondent ████████ entered the scene and told Respondent ████████ and another student to "stick [their] dicks in the wall." Respondent ████████ bent down while they were humping the wall and Respondent ████████ narrated from the script, "Then [Respondent ████████] proceeds to bend down and snort coke of their dicks."

12. Video #4 depicts the following scenes:

   a. Scene #1: Respondent ████████ sat in a chair with wheels, wearing a helmet. Respondent ████████ narrated from the script that "people come up with a plan to fuck wheelchair retarded Yankee…he's drooling out of his mouth because he is retarded and in a wheelchair so the hole is already very lubricated." Respondent ████████ straddled Respondent ████████ while Responden ████████ and Respondent ████████ surrounded Respondent ████████ and all three Respondents simulated forcing oral sex on Respondent ████████, who pretended to be unresponsive and unaware of the situation. Respondent ████████ read from the script that

9

Respondent ▆▆▆▆ was "totally unaware that this light rape is occurring" and that "his mouth becomes a dumpster for all three of their cum."

13. Video #5 depicts the following scenes:

   a. Scene #1:  Respondent ▆▆▆▆▆▆▆▆▆ was listening at the door and simulated masturbation while Respondent ▆▆▆▆ was "trying to get it up" with Respondent Ari.  Respondent ▆▆▆▆▆▆▆▆ then mocked Respondent ▆▆▆▆ for not being able to "get his dick up for a girl."

   b. Scene # 2: Respondent ▆▆ impersonated a "smoke show" female.  He was bent over a table while Respondent ▆▆▆▆ simulated trying to have sex with him, but was having some "problems with performance."

14. Video #8, which was not released by The Daily Orange, depicts the following scenes:

   a. Scene #1: Respondent ▆▆▆▆ simulated sex with Respondent ▆▆ as Respondent ▆▆ was lying on his back on the table with his legs spread.

   b. Scene #2: Respondent ▆▆▆▆ and Respondent ▆▆ enacted a gym scene in which Respondent ▆▆▆▆ felt Respondent ▆▆s pectorals, and Respondent ▆▆▆▆ placed his groin in Respondent ▆▆▆▆ face.

**Party Credibility**

1. Complainant – The Board found Detective Toia credible due to his 32 years of law enforcement service and clear presentation of the facts investigated.

2. Respondent – The Board found Respondent ▆▆▆▆ to be credible as he explained his role in the videos. The Board finds that the Respondent's actions in the video speak for themselves.

**Information Not Considered by the Board**

The Board considered all information presented.

**Case Analysis**

The Board applied the preponderance of the evidence standard in determining whether the conduct in the videos, and as further explained by Respondent ▆▆▆▆ constituted violations of University policies.  Respondent ▆▆▆▆ admitted to his voluntary participation in the events of March 30, 2018 and did not contest that the conduct portrayed in the video occurred as depicted. Additionally, he confirmed that he participated in the creation of the content of the skit. He argued the skit was intended to be satirical and was only meant to be viewed by the fraternity and not the public at large. Respondent ▆▆▆▆ also repeatedly stated he did not intend to hurt anyone.

**THE DECISION OF THE BOARD**

**Finding of Responsibility**

We find the Respondent to be:

Responsible for violating the Code of Student Conduct, sections: 2, 3, 15

Not Responsible for violating the Code of Student Conduct, sections: 1, 10

**Rationale of the Decision of the Board**

**Respondent  is found responsible for violating the Code of Student Conduct Section 2.**
The Board finds that Respondent ▮▮▮▮ engaged in conduct, directed at another person(s) that is likely to cause an immediate breach of the peace. Respondent ▮▮▮▮ told the Board that he participated in the creation of the skit depicting the scenes above. The Board finds the skit was directed at an audience, as was inferred from audience laughter, and was confirmed by Respondent ▮▮▮▮'s statement to the Board that it was indented to be a satirical roast of fraternity members. The Board finds the following scenes are likely to cause an immediate breach the peace: (1) taking an oath to "always have hatred in my heart for Niggers, Spics, and most importantly, the fucking Kikes;" (2) the statement, "you fucking Kikes get in the fucking shower" (a likely reference to the genocide of people of Jewish faith); and (3) the "light rape" of a "wheelchair retarded Yankee."

It is reasonable to conclude that a person hearing the sexist and racist language in these scenes would become upset, reactive, and responsive to its content, thereby breaching the peace of that person's environment. Indeed, an audience member yells, "too far" in response to the scene in which Respondent ▮▮▮▮ says, *"you fucking Kikes get in the fucking shower."* Moreover, Respondent ▮▮▮▮ told the Board that immediately following the skit, he approached three African American fraternity brothers and asked them whether they were "ok with what just happened," which gives support to the inference that he was concerned about the impact of the videos on others. (May 10th hearing transcript, p. 215, line 15). When the videos were made public by The Daily Orange, there was community outrage, prompting two community forums to discuss the conduct; a number of students posted their feelings of distress and fear on social media; major print and television media outlets across the country covered the content of the video and its subsequent impact on the campus community. Based on the content of the video, as well as Respondent ▮▮▮▮'s admitted participation in the creation of the video, there is sufficient evidence that Respondent ▮▮▮▮ engaged in conduct, directed at another that is likely to cause an immediate breach of the peace.

**Respondent ▮▮▮▮ is found responsible for violating the code of student conduct Section 3.**
The Board finds that it is more likely than not that Respondent ▮▮▮▮ engaged in conduct, namely the creation of the skit, which threatened the mental health, physical health and safety to any person. As noted above, Respondent ▮▮▮▮ admitted to voluntarily participating in creating and acting out material for the skits. The conduct in the skits caused others in the community to feel their safety was threatened. As an example one student reported that, "Videos like this promote the inability to feel safe in your own body and in the space of this campus." (Transcript of the April 18, Fraternity

11

Open Forum). Another student posted on social media, "I don't feel safe here." (EOIRS Report of Investigation, p. 15).

**Respondent** ▮▮▮ **is found responsible for violating the Code of Student Conduct Section 15,** because there is sufficient information that he violated the Syracuse University Office of Fraternity and Sorority Affairs Policy on Sexual Abuse and Harassment, and the Syracuse University Anti-Harassment Policy.

**Respondent** ▮▮▮ **is found responsible for violating the Office of Fraternity and Sorority Affairs Policy.** The Risk Management Policy of FIPG under which the Sexual Abuse and Harassment Policy appears, provides that it "includes the provisions, which follow and shall apply to all fraternity/sorority entities and all levels of fraternity/sorority membership." Pledging is a level of membership and Respondent ▮▮▮ was participating as part of the new member intake process. Respondent ▮▮▮ is an individual who voluntarily participated in that intake process, contributed to the creation of the skits, was present and participated during the production, and did not intervene, to object, or stop the skit. He thereby condoned the words and actions portrayed in the skit. This behavior was sexually abusive as evidenced by the simulated rape and bestiality in the events recorded on video, as well as sexist, as evidenced, for example in the scene in which Respondent ▮▮▮ is so "whipped by a girlfriend" that he becomes "a wheelchair retarded Yankee."

**Respondent** ▮▮▮ **is found responsible for violating the University's Anti- Harassment Policy.** Respondent ▮▮▮ engaged in unwelcome conduct that was directed at an individual or group of individuals, based on a protected category, which was so severe or pervasive that it created a hostile environment. Specifically, Respondent ▮▮▮ participated in the creation of the script that portrays a culture of tolerance of degrading behavior about minorities, women and religious groups that was unwelcome by the University community. He used subject matter in the script, including sending a group to the shower, referencing the genocide of people of Jewish faith or "dumping of a load" into the mouth of a disabled person while simulating rape, all as a parody to incite laughter. The Board finds that although the Respondents said they intentionally directed their conduct at only the audience present at the Theta Tau fraternity house on March 30th, the University community did see their conduct via video, and was impacted by it.

From an objective perspective, it is reasonable that a person of the campus community would be negatively affected by the horrid content of the video, especially in the context of a fellow contributing member of the campus community acting in the skits. The subjective response from the community included outrage, national media attention, cancelled classes, sit-ins, and protests, all of which, more likely than not, unreasonably interfered with students participation in educational programming and employees work performance. Some Respondents shared with the Board that the community impact from seeing the video interfered with their own studies as well.[3] In addition,

---

[3] Respondent ▮▮▮ explained that "this was distressing to me and my family. I have been hurt by this and my family has been hurt by this." (May 10 Hearing Transcript, p 32, line 2). Respondent ▮▮▮ described that "my life has been changed as a result of this. You know my family has been put I want to say at risk. My parents' job locations have been posted on Twitter, where I live. My sister has been distressed at school. My girlfriend was almost assaulted at her work." (May 10 Hearing Transcript, p. 62, line 15).  Respondent ▮▮▮ described that he was "at risk of losing my research position on campus. I have since been kicked off an asthma inhaler engineering team which received over $50,000 in funding in the last six months alone. That was one of my crowing achievements at the University and essentially just because the two girls that started there were in my classes and knew that was…just in the organization, kicked me off the team just because of that. I've had two professors telling me they can no longer provide

Detective Toia told the Board that a safety plan was needed for some of the members of the fraternity. The impact of the Respondents' conduct on the community was immediate, intense, severe, and pervasive. Despite the fact that there is no evidence of similar conduct had occurred prior to the evening of March 30, the nature and severity of the acts depicted on the skit and the language employed is sufficiently severe to create a hostile environment. The Board considered Respondent ████s claim that he never intended for the video to be released or to offend anyone, as was echoed by all Respondents. The Board finds, however, that he intentionally engaged in conduct that was unwelcome by the University community and resulted in a hostile environment for affected members of the University community, and therefore, finds him in violation of the Anti- Harassment policy.

**Respondent is found not responsible for violating Code of Student Conduct Section 1.** There was no information presented that a person was physically harmed or threatened with physical harm during the event on March 30th.

**Respondent ████ is also found not responsible for violating Code of Student Conduct Section 10.** As referenced in the finding of fact, there is no information in the Case File or given at the hearing that alcohol or drugs were use, possessed, purchased, distributed, manufactured or sold.

The Sexual Harassment charge under the Sexual Harassment, Abuse, and Assault Prevention Policy was withdrawn.

**The Board recommends that the Respondent be given the following sanctions:**

Indefinite suspension for two academic years with eligibility for readmission for the Fall 2020 term.[4]

In order to petition to return to Syracuse University, Respondent ████ is to complete the following:

- Personal essay evidencing the learning the student has gained from the incident that led to the indefinite suspension; the manner in which the student has been occupied since his/her departure from the University; and, the specific commitments the student will make to contributing positively to the University community if offered the opportunity for readmission;
- Documented information of gainful employment and/or completion of academic course work at an accredited institution of higher education;
- 160 hours of community service; and
- Find three (3) books related to the topics of inclusion and/or bystander intervention. Write a 1-page synopsis of each book. Using the three books that you read, along with additional sources, write a 12-page research/reflection paper on the following prompt:
    a) What does it mean to be a member of a diverse community?
    b) How do you plan to contribute in a meaningful way to the communities of which you are a member?

recommendation letters as well as I lost my AIAA Vice President position because I, due to this unlawful suspension levied against us, I cannot attend the elections for next year." (May 10 Hearing Transcript, p. 227, line 4).
[4] The decision on sanction recognized the withdrawal of the Sexual Harassment charge under the Sexual Harassment, Abuse, and Assault Prevention Policy, and is based only on the charges for which the Respondent was found responsible, as discussed above.

       c)  What does inclusion mean to you?

**Rationale for Determining Sanctions**

After finding that Respondent ██████ violated the policies discussed above, the Board considered the following factors in determining sanction; the nature and severity of the conduct; Respondent ██████'s individual actions; the impact on the community; Respondent ██████'s explanation of his intent and the purpose of the skit; any prior disciplinary history; Respondent ██████'s written mitigation statement; the standard sanctions outlined in the Student Conduct System Handbook; and the range of sanctions imposed for similar conduct, including the sanctions imposed for the three students who accepted responsibility for similar conduct. [5] The Board finds that it is not bound by the standard sanctions, as the Handbook provides that standard sanctions do not apply when the Respondent engaged in multiple violations of the Code of Student Conduct in a single incident, as Respondent ██████ is found to have done here.

The Board issued a combination of sanctions that are reasonably tailored to stop the conduct, prevent it from happening again, and to remedy its effect on the University community. The Board finds the nature of the conduct in the videos egregious, and is concerned about the culture of acceptance displayed by both the actors in the skit and the audience laughing at its content. The words and actions portrayed in the video show a disregard for the experiences and struggles of other people. Respondent ██████ contributed to drafting the content and acting in scenes that use sexual assault to incite laughter and that mocked individual based on race, ethnicity, religion, sexual identity, and ability-individuals who make the Syracuse University community.  Because Respondent ██████ both contributed to drafting and acting in the heinous scenes, the Board is implementing a suspension of two years.  The Board believes that suspension, with the stated conditions, will allow the Respondent ██████ to reflect on the impact his actions had on the community, as well as rehabilitate him and reasonably ensure that the conduct will not be repeated. The impact on the community will be remedied by the removal of Respondent ██████ from the community, allowing time for it to heal.

---

[5] The Board was not bound by the sanctions imposed in these three matters, and was free it impose any sanctions deemed appropriate for the Respondent in this matter.