**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**JOHN DOE #1, JOHN DOE #2, JOHN DOE #3,**
**JOHN DOE #4 and JOHN DOE #5,**

                      **Plaintiffs,**

         v.                                                                                   5:18-CV-496
                                                                                          (FJS/DEP)

**SYRACUSE UNIVERSITY; KEN SYVERUD,**
**individually and as Chancellor of Syracuse**
**University; PAMELA PETER, individually and**
**as Assistant Dean of Student Rights and Affairs**
**and the Director of the Office of Student Rights**
**and Responsibilities; ROBERT HRADSKY,**
**individually and as Syracuse University Dean**
**of Students and Associate Vice President of**
**the Student Experience; and TERESA**
**ABI-NADER DAHLBERG, individually and**
**as the Dean of the College of Engineering**
**and Computer Science,**

                      **Defendants.**
_____

**APPEARANCES**                                  **OF COUNSEL**

**SMITH, SOVIK, KENDRICK &**          **DAVID M. KATZ, ESQ.**
**SUGNET, P.C.**                         **KAREN G. FELTER, ESQ.**
250 South Clinton Street, Suite 600    **KEVIN E. HULSLANDER, ESQ.**
Syracuse, New York 13202-1252
Attorneys for Plaintiffs

**HANCOCK ESTABROOK, LLP**         **JOHN POWERS, ESQ.**
1500 AXA Tower I
100 Madison Street
Syracuse, New York 13202
Attorneys for Defendants

**SCULLIN, Senior Judge**

**MEMORANDUM-DECISION AND ORDER**

**I. INTRODUCTION**

On June 13, 2018, Plaintiffs filed a motion for a temporary restraining order and a preliminary injunction by Order to Show Cause.[1]  *See* Dkt. No. 14.  That same day, the Court denied the motion for a temporary restraining order and scheduled a motion hearing regarding Plaintiff's motion for a preliminary injunction for June 21, 2018.  *See id.*  At the conclusion of the motion hearing, the Court reserved decision on the motion and directed counsel to file supplemental briefing on several issues.  The parties filed their supplemental papers on June 25, 2018.  *See* Dkt. Nos. 21-22.  Having completed its review of all of the parties' submissions, as well as their oral arguments, the following constitutes the Court's written disposition of Plaintiff's motion.

**II. DISCUSSION**

Generally, "[a] party seeking a preliminary injunction must show (1) irreparable harm; (2) either a likelihood of success on the merits or both serious questions on the merits and a balance of hardships decidedly favoring the moving party; and (3) that a preliminary injunction is in the public interest." *North Am. Soccer League v. U.S. Soccer Fed'n*, 883 F.3d 32, 37 (2d Cir. 2018) (citation omitted).  However, when a party seeks a mandatory, as opposed to a prohibitory, injunction, "[b]ecause [such] injunctions disrupt the status quo, a party seeking one must meet a heightened legal standard by showing 'a clear or substantial likelihood of success on the merits.'" *Id.* (quoting *N.Y. Civ. Liberties Union v. N.Y.C. Transit Auth.*, 684 F.3d 286, 294 (2d Cir. 2012)).

---

[1] Plaintiffs also moved for leave to file an amended complaint.  *See* Dkt. No. 14.  The Court granted that motion.  *See* Dkt. No. 23.

Since "the proposed injunction's effect on the status quo drives the standard, [the court's first step is to] ascertain the status quo – that is, 'the last actual, peaceable uncontested status which preceded the pending controversy.'" *Id.* (quoting *Mastrio v. Sebelius*, 768 F.3d 116, 120 (2d Cir. 2014) (per curiam) (quoting *La-Rouche v. Kezer*, 20 F.3d 68, 74 n.7 (2d Cir. 1994)) (footnote omitted). In the context of a preliminary injunction, "[t]he 'status quo' . . . is really a 'status quo ante.'" *Id.* at 37 n.5 (citations omitted). The Second Circuit explained that "[t]his special 'ante' formulation of the status quo in the realm of equities shuts out defendants seeking shelter under a current 'status quo' precipitated by their wrongdoing." *Id.*; *see also O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 1012 (10th Cir. 2004) (*en banc*) (*per curiam*) (explaining that determining the status quo is important in this context because, "[a]t the preliminary injunction stage, . . ., the function of the court is not to take whatever steps are necessary to prevent irreparable harm, but primarily to keep things as they were, until the court is able to determine the parties' respective legal rights").

Not surprisingly, the parties do not agree on what constitutes the "status quo ante." Plaintiffs assert that "the last actual, peaceable uncontested status which preceded the pending controversy" was the moment before Defendants placed a hold on their student accounts and refused to release their transcripts without a disciplinary notation. On the other hand, Defendants argue that "the last actual, peaceable uncontested status" was the situation that existed immediately prior to Plaintiffs filing this lawsuit on April 24, 2018, at which time there was a hold on Plaintiffs' academic files, including their transcripts.

After reviewing the entire record in this matter, the Court concludes that, because Defendant University's policy and regular procedure was to place a hold on a student's academic file in all

student conduct cases that involved charges that might result in a suspension or when the case arose close to the end of the semester, *see* Dkt. No. 20-3 ("Nestor Decl.") at ¶ 3,[2] the status quo ante was the relationship that existed between the parties immediately prior to Plaintiffs commencement of this action on April 24, 2018, at which point there was a hold on Plaintiffs' academic files.

Having determined the "status quo ante," the Court must next determine whether Plaintiffs are seeking a mandatory or prohibitory injunction.

In this case, Plaintiffs are seeking an order requiring Defendant University to lift the hold on their academic files, including their transcripts, and to provide them with their transcripts without the notation "Administrative Withdrawal -- University Initiated."  Such an order would, undeniably, alter the status quo.  Thus, the Court concludes that Plaintiffs are seeking a mandatory injunction, which requires that they show (1) irreparable harm; (2) a clear or substantial likelihood of success on the merits; and (3) that a preliminary injunction would be in the public interest.  *See North Am. Soccer League*, 883 F.3d at 37.[3]  Furthermore, because the party seeking a preliminary injunction

---

[2] Although Plaintiffs dispute that this was, in fact, Defendant University's policy and regular procedure regarding all disciplinary cases, the material on which they rely to support their position, *i.e.*, that only § 10.10 of the Student Conduct System Handbook, which applies solely to Title IX cases, specifically mentions such a hold, does not negate or seriously call into question  Mr. Nestor's statement that Defendant University's policy and regular practice was to place an administrative hold on all student academic files when disciplinary charges might result in a suspension or when the charges were filed in close proximity to the end of the academic year, no matter what the nature of the offense.

[3] *See also Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.*, 60 F3d 27, 34 (2d Cir. 1995), in which the court stated that, rather than having to distinguish between mandatory and prohibitory injunctions, "[a] heightened standard has also been applied where an injunction – whether or not mandatory – will provide the movant with substantially 'all the relief that is sought.'"  The court concluded that "[t]he bottom line is that, if a preliminary injunction will make it difficult or impossible to render a meaningful remedy to a defendant who prevails on the merits at trial, then the plaintiff should have to meet the higher standard of substantial, or clear

(continued...)

bears the burden of proof with regard to each prong of the preliminary injunction test, where a court concludes that a plaintiff fails to meet its burden with regard to one prong, it is not necessary for the court to consider the other prongs. *See Nat'l Audubon Soc., Inc. v. U.S. Fish & Wildlife Serv.*, 55 F. Supp. 3d 316, 365 n.21 (E.D.N.Y. 2014) (stating that, "[s]ince [the] plaintiff has not demonstrated a likelihood of success on the merits of any of its claims against [the] defendants, it is unnecessary to consider the 'irreparable injury' and 'public interest' prongs of a preliminary injunction motion"). Nonetheless, in the interest of completeness, the Court will discuss each of these prongs in turn.

### A.  Irreparable harm

Plaintiffs argue that they will suffer irreparable harm if the Court does not order Defendants to remove the hold on their academic files and provide them with unannotated transcripts by July 1, 2018, because they will not be able to complete their applications to transfer and will, as a result, lose at least one year of school, which will affect their graduation date. In other words, they assert that they will be unable to continue their education by transferring to another institution.

To the contrary, Defendants assert that, because they have already agreed, as an accommodation to Plaintiffs, to remove the hold on Plaintiffs' academic files, Plaintiffs' only

---

[3](...continued)
showing of, likelihood of success to obtain preliminary relief." *Tom Doherty Assocs.*, 60 F.3d at 35 (citation omitted).

In this case, if the Court were to grant Plaintiffs' motion for a preliminary injunction and order Defendants to remove the hold on Plaintiffs' academic files, including their transcripts, and provide Plaintiffs with unannotated transcripts so that they could include those transcripts in their applications to transfer to other institutions, Plaintiffs would have, at least with respect to their breach-of-contract claim, received substantially all the relief they seek. Furthermore, once Defendants complied with the Court's order, it would be difficult or impossible to render a meaningful remedy to Defendants if they prevailed on the merits at trial.

claimed impediment to transfer is the notation on their transcripts, "Administrative Withdrawal - University Initiated." Defendants argue that the significance of this notation to any college that receives an application from Plaintiffs is for that institution to decide, and Plaintiffs are free to provide whatever information or explanation concerning that notation they want. Moreover, Defendants contend that, according to Defendant Dean Hradsky, "many students are accepted to other schools despite such notation." *See* Dkt. No. 21-2 ("Hradsky Decl.") at ¶ 12. For all these reasons, Defendants argue that "it is entirely speculative and conclusory for Plaintiffs to contend that the presence of that notation on their transcripts will prevent them from transferring[, and] Plaintiffs have submitted no evidence of such an effect." *See* Dkt. No. 21 at 14.

In *Winter v. Natural Res. Defense Council*, 555 U.S. 22 (2008), the Supreme Court stated that its "frequently reiterated standard requires plaintiffs seeking preliminary relief to demonstrate that irreparable injury is *likely* in the absence of an injunction." *Id.* at 22 (citations omitted). The Court explained that, "[i]ssuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with [the Court's] characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Id.* (citation omitted); *see also Allah v. Piccolo*, Case # 16-CV-177-FPG, 2018 WL 2381886, *2 (W.D.N.Y. May 25, 2018) (explaining that "[t]he mere possibility of harm is insufficient to justify granting a preliminary injunction"; rather, "[t]o satisfy the irreparable harm requirement, a movant generally must show that he is likely to suffer irreparable injury if the injunction is not granted' . . . and that the harm is 'not remote and speculative' but rather 'actual and imminent.' . . ." (internal quotation omitted)).

Under the circumstances of this case, the Court finds that Plaintiffs have not shown that they

are likely to suffer irreparable harm in the absence of an injunction. They have not come forward with any evidence that would support a finding that, if they were to submit an annotated transcript as part of their applications to transfer to another institution, the institution would deny their application because of that notation. In addition, as Defendants point out, there is nothing that prevents Plaintiffs from explaining, if they think it is necessary to do so, what that notation means or the circumstances that caused Defendant University to place that notation on their transcripts.[4] Therefore, the Court concludes that Plaintiffs have failed to show that they will suffer an imminent and actual harm if the Court does not grant the injunction.

**B.     Clear or substantial likelihood of success on the merits**[5]

Plaintiffs' motion relates to their breach-of-contract claim against Defendants. To state a breach of contract claim under New York law, a plaintiff must prove "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1991) (citations omitted).

---

[4] Furthermore, it seems disingenuous to prohibit Defendant University from disclosing the fact that there is a disciplinary issue.

[5] Plaintiffs have made no attempt to show that they have a clear or substantial likelihood of success on the merits of their claim that Defendants breached their contract with Plaintiffs by failing to follow Defendant University's rules, policies and procedures related to the disciplinary process.. *See* Dkt. No. 14-17 at 4-5. In both their original and supplemental memorandum of law, they assert that they are seeking a prohibitive injunction and that they have "establish[ed] sufficiently serious questions going to the merits to make the questions fair ground for litigation and the balance of the hardships tips in [their] favor." *See* Dkt. No. 14-17 at 4; *see also* Dkt. No. 22-4 at 1 (stating that their "request for preliminary injunctive relief . . . is not governed by the heightened standard applicable to mandatory injunctions"). Nonetheless, the Court will briefly address this issue.

The parties do not dispute, at least for purposes of this motion, that there is an implied contract between enrolled students and Defendant University. In their complaint, Plaintiffs allege that "[t]he terms of this contract provided that in return for Plaintiffs continued payment of tuition, charges, and fees, along with satisfying Plaintiffs' respective courses of study, abiding by the rules, regulations, and requirements set forth in the University's Code, Plaintiffs would obtain a degree in each of their respective fields." *See* Dkt. No. 1 ("Complaint") at ¶ 46.

As relates to this motion, Plaintiffs assert that Defendants breached their contract with them by placing a hold on their academic files and refusing to release their transcripts without the notation "Administrative Withdrawal – University Initiated."

Whether Defendant University's actions were a breach of their contract with Plaintiffs or were, instead, consistent with Defendant University's policies and procedures that govern disciplinary procedures and, thus, in compliance with their contract with Plaintiffs is the heart of the parties dispute.

In support of their position, Plaintiffs point to Section 10.10 of the Student Conduct System Handbook, which provides that, in Title IX cases, "[a] hold will be placed on the respondent's academic records until a final resolution of the complaint[,]" *see* Dkt. No. 14-3 ("Conduct System Handbook") at § 10.10. Based on the fact that this is the only section in the Conduct System Handbook that contains this language, Plaintiffs argue that the Conduct System Handbook "clearly establishes that administrative holds on transcripts pending the resolution of disciplinary proceedings are **only** authorized in the case of students charged with sexually-based offenses under the Title IX 'Sexual Harassment, Abuse and Assault,' policy." *See* Dkt. No. 22-4 at 13 n.8.

In addition, Plaintiffs argue that, although Defendant University asserts that it placed the

notation "Administrative Withdrawal - University Initiated" on their transcripts in compliance with § 15.1 of the Conduct System Handbook, that section does not apply to them because they did not withdraw from Defendant University rather than participate in the disciplinary process.  Rather, they "have participated in *every conceivable aspect* of the conduct process and are awaiting final appeals from the University . . . ."  *See* Dkt. No. 22-4 at 4.

  To the contrary, Defendants argue that it is their policy and practice to place a hold on a student's academic files if the charges may result in a suspension or the case occurs close to the end of the academic year, irrespective of the basis for those charges.  *See* Dkt. No. 20-3, Declaration of Eric Nestor, Associate Director of Syracuse University's Office of Student Rights and Responsibilities ("OSRR"), ("Nestor Decl.") at ¶¶ 3-4 (stating that,"[i]n student conduct cases involving charges that may result in suspension, or [when] the case arises close in time to the end of the academic year, it is routine practice for OSRR to place a hold on the accused student's academic records, including their academic transcripts, while the disciplinary process is pending" and that Defendant "University regularly places holds on students' files regardless of the nature of the charge").  Furthermore, Mr. Nestor points to Defendant University's policy regarding the release of transcripts, which appears on the Registrar's website: "Transcripts are not released for students or alumni with outstanding financial or student conduct obligations."  *See id.* at ¶ 3.

  With regard to § 15.1 of the Conduct System Handbook, Defendants assert that their offer to Plaintiffs to release their transcripts to them, as an accommodation to their need for these transcripts to complete their transfer applications, but only with the notation "Administrative Withdrawal - University Initiated" on those transcripts, fully complied with the requirements of § 15.1.  This section provides, in pertinent part, that "[a] student who chooses to withdraw from the University

rather than participate in the conduct process may be classified as having been withdrawn for disciplinary reasons.  This status will be noted on the student's transcript as 'Administrative Withdrawal – University Initiated.'  A student who withdraws under these circumstances may not receive a transcript . . . until the pending matter is resolved."  *See* Dkt. No. 14-3 at § 15.1.

The parties have certainly raised issues of fact with respect to (1) the policies and procedures regarding the placement of administrative holds on the academic files of students who have been charged with violations of the Student Code of Conduct and (2) the meaning of Section 15.1 of the  Conduct System Handbook.  The Court cannot resolve those issues at this time; such resolution must await further motions and/or a trial.  Nonetheless, the Court does find that Plaintiffs have certainly not shown that their positions with regard to these issues constitute a clear or substantial likelihood of success on the merits.[6]

## C.     Public interest

Plaintiffs asserts that the public has an affirmative interest in the enforcement of contracts and that there is no countervailing public interest that would be adverse to an injunction.

---

[6] The Court notes that, even if Plaintiffs were seeking a prohibitory injunction, they have not met their burden to show "either a likelihood of success on the merits or both serious questions on the merits and a balance of hardships decidedly [in their favor]." *North Am. Soccer League*, 883 F.3d at 37.  At best, Plaintiffs have shown that they have raised "serious questions" as to the merits of their breach-of-contract claim.  However, they have failed to show that the balance of hardships tips decidedly in their favor.  As noted, Defendant University has already agreed, as an accommodation to Plaintiffs, to release their transcripts to them, albeit with the disciplinary notation.  Thus, although Plaintiffs might argue that it would be easier for them to transfer if they did not have to explain the reasons for that notation, that does not mean that the hardships tip decidedly in their favor.  The situation might be different if Defendant University withdrew their offer to lift the hold on Plaintiffs' academic files and to release their annotated transcripts to them; but that is not the situation that the Court has before it.

Specifically, Plaintiffs contend that the public does not need to know that disciplinary charges are pending against them because they do not present a public safety risk. Moreover, Plaintiffs argue that, unlike violent crimes and sexual assault crimes, there is no need to alert other schools to the disciplinary charges that Defendants have lodged against them because the risk that they have a propensity to commit violent or sexual crimes is non-existent. Finally, Plaintiffs contend that there is no concern about their academic integrity, as there would be in a case involving cheating; and, thus, there is no public interest involved.

Defendants, on the other hand, argue that issue of an injunction under the circumstances of this case would be contrary to the public interest that the existence of candor and consistency among colleges and universities serves. To support this argument, Defendants rely on the declaration of Defendant Dean Hradsky, in which he states that the process by which Defendant University administers transcripts during the time that disciplinary proceedings are pending "allow[s] other schools to make a careful assessment, based on all information about the applicant, as to whether the student is fit to be a member of the transfer school's community.'" *See* Hradsky Decl. at ¶ 12. Defendant Dean Hradsky also asserts that Defendant University's enforcement of its policies regarding transcript annotation "serves important interests within the national community of colleges and universities" by conforming its policy to those of comparable institutions so that "there will be nothing about a student's academic records that might be perceived by the transferee institution as misleading in their consideration of that student as a potential applicant to their own college or university community." *See id.* at ¶ 15. Finally, Defendant Dean Hradsky provided examples of similar policies regarding transcripts under similar circumstances from Cornell University and the University of Rochester. *See id.*

In *Main St. Baseball v. Binghamton Mets Baseball Club*, 103 F. Supp. 3d 244 (N.D.N.Y. 2015), the court stated that "[t]he 'public interest' prong simply means that if injunctive relief is granted, a court should ensure that the injunctive provisions of the order do not harm the public interest." *Id.* at 253 n.3 (citing *SEC v. Citigroup Global Mkts. Inc.*, 673 F.3d 158, 163 n.1 (2d Cir. 2012)).

The Court concludes that, if it were to grant Plaintiffs the injunctive relief they seek, doing so would harm the public interest in ensuring that any institution to which Plaintiffs submit a transfer application has a complete picture of Plaintiffs' experience while they were enrolled as students at Defendant University. In evaluating students for admission, whether initially or as a transfer student, universities look at all facets of the students' prior experience – academic, athletic, and social. The public interest would not be served if the Court required Defendants to provide Plaintiffs with transcripts that were not completely accurate. Therefore, the Court concludes that Plaintiffs have not shown that granting their motion for a preliminary injunction would serve the public interest.

### III. CONCLUSION

Having reviewed the parties' submissions and oral arguments, as well as the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Plaintiffs' motion for a preliminary injunction, *see* Dkt. No. 14, is **DENIED**.

**IT IS SO ORDERED.**

Dated:   June 28, 2018
         Syracuse, New York

_____
Frederick J. Scullin, Jr.
Senior United States District Judge