UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

JOHN DOE #1, JOHN DOE #2, JOHN DOE
#3, JOHN DOE #4, JOHN DOE #5, JOHN
DOE #6, JOHN DOE #7, JOHN DOE #8,
and JOHN DOE #9,

                Plaintiffs,

    v.

SYRACUSE UNIVERSITY, KENT
SYVERUD, individually and as Chancellor
of Syracuse University, ROBERT
HRADSKY, individually and as Syracuse
University Dean of Students and Associate
Vice President of the Student Experience,
and TERESA ABI-NADER DAHLBERG,
individually and as the Dean of the College
of Engineering and Computer Science,

                Defendants.

**MEMORANDUM OF LAW**
Case No.:     5:18-cv-496 (FJS/DEP)

Plaintiffs, by and through their attorneys, Smith, Sovik, Kendrick & Sugnet, P.C., submit this Memorandum of Law in opposition to Defendants' motion to correct the caption and identify Plaintiffs by name. Under the controlling test, Plaintiffs have established that their interest in privacy is sufficient to allow them to proceed under a pseudonym and that Defendants will suffer ***no prejudice*** if Plaintiffs can proceed anonymously. This case involves sensitive, personal, highly-charged issues arising out of the statements and subsequent unwarranted disciplinary action taken by Syracuse University based on the exercise of free speech in a private setting among consenting participants resulting in Plaintiffs' suspension from Syracuse University. The University's statements, and subsequent disciplinary charges, attempt to turn this private event—a roast—into alleged harassment, claiming it was racist, anti-semitic, homophobic, sexist, and hostile to people with disabilities and attributing those views to Plaintiffs.

At this point, due to the unwarranted statements by University administrators and officials declaring Plaintiffs as actual bigots, sexists, homophobes, and anti-semitics, from the outset, it is possible for determined individuals to 'connect' certain dots and identify some of the John Doe Plaintiffs. Specifically, while the University pledged to keep the identity of the students charged with disciplinary violations as a result of participating in the controversial skits confidential, it took no action to prevent dissemination of efforts to 'out' and 'dox' the students on University-sponsored social media avenues following the videos' release by *The Daily Orange*.

None of the students have been identified—individually or collectively—in any publically filed document or media publication. Thus, an internet for these Plaintiffs' names does not (at the present time) result in association with the University's repeated statements that Plaintiffs are "extremely racist, anti-semitic, sexist, homophobic, and hostile to people with disabilities." *Forcing Plaintiffs to reveal their identities only ensures one outcome: even if Plaintiffs are vindicated, their names will forever be tied to the videos as Google search result number 1.*

Within minutes of the Theta Tau videos' release Defendants labelled Plaintiffs as guilty of engaging in the most egregious, offensive conduct imaginable and suggested they were a danger to the whole University community without any regard for the physical safety of Plaintiffs. In the ensuing month, as the story gained national infamy, *Defendants' unnecessary, continual condemnation of the videos fanned the firestorm, leading to riots and protests notwithstanding their knowledge that the videos depicted satirical skits and not actual expressions of racism, sexism, anti-semitism, homophobia, or hostility toward people with disabilities. Defendants' actions contributed to a mob mentality on campus culminating in physical threats aimed at Plaintiffs.* Now Defendants seek to force Plaintiffs to identify themselves publically, which will result in permanently branding Plaintiffs as racists, anti-semitics, homophobics, sexists, and people

who are hostile to those with disabilities in the mind of any future admissions employee, employer, or future friend.  While Defendants correctly argue that Plaintiffs *could* be identified right now by watching the videos and matching Plaintiffs to their faces, currently it would take serious investigation and determination to link a Plaintiff to the videos and confirm Plaintiffs' identities.

Contrary to the University's contentions, Plaintiffs' desire to remain anonymous is not about the Plaintiffs avoiding "embarrassment" caused by this litigation, but, rather, is motivated by bona fide concerns over their safety as well as future educational and employment prospects. The stakes could not be higher.  Plaintiffs should be permitted to proceed with this litigation anonymously.

A. **The Violent Atmosphere On Campus Following the Videos' Release**

Plaintiffs seek to preserve the last chance they have at not forever being tied to the Theta Tau videos: not having their names easily publically accessible.  And, contrary to Defendants' contentions, the threat of physical harm to Plaintiffs is very real.  Indeed, Syracuse University stationed a Department of Public Safety ("DPS") patrol car outside the Theta Tau house where several Plaintiffs were living and put officers outside "standing watch"[1] to avoid violence.  *After the videos were released, a 250-person mob descended on the Theta Tau house, stopped only by two DPS officers*.[2]  As *The Daily Orange* described, the mob heckled the DPS officers protecting Plaintiffs: "[a] Department of Public Safety vehicle was parked in front of the fraternity house

---

[1] Natalie Gontcharova, *Syracuse University Students Demand Action After Racist Theta Tau Frat Video is Leaked*, YAHOO! (April 19, 2018), https://www.yahoo.com/lifestyle/syracuse-university-students-demand-action-180000135.html.

[2] Kennedy Rose, *Students protest Theta Tau videos outside Chancellor Kent Syverud's house*, DAILY ORANGE (April 18, 2018), http://dailyorange.com/2018/04/students-protest-theta-tau-videos-outside-chancellor-kent-syveruds-house/.

during the protest, and two DPS officers stood in front of the building before marchers walked past it. Marchers shouted, 'Who are you protecting?'"[3]  As one protest organizer stated: "If you are not angry [at Plaintiffs], then you have no heart."[4]

As the mob incident establishes, the aftermath of the videos' release did not result in "peaceful protests and meetings" as Defendants claim. ECF No. 19-1, p. 12.  To the contrary, the campus was hostile and filled with protests and riots with hundreds of people.[5]  Defendants claim "no acts of retaliation occurred and as time has passed, it is clear there is no legitimate risk of safety . . . that requires ongoing anonymity," but Defendants are wrong.  *As John Doe #5 details in his Declaration, and as both John Doe #1 and John Doe #5 detailed in their previous affidavits, physical and education retaliation was threatened—and occurred—in the aftermath of the videos' release*.  *See* Doe Decl., ¶¶ 3–10; *see also* ECF Nos. 5-3, 5-6.

*Plaintiffs received public, physical threats—<u>including one involving potentially deadly force</u>—on social media* and physical violence in the University community:

---

[3] Kennedy Rose, *Students protest Theta Tau videos outside Chancellor Kent Syverud's house*, DAILY ORANGE (April 18, 2018), http://dailyorange.com/2018/04/students-protest-theta-tau-videos-outside-chancellor-kent-syveruds-house/.

[4] Rori Sachs, *Students protest in response to Theta Tau video*, DAILY ORANGE (April 18, 2018), http://dailyorange.com/2018/04/students-protest-response-theta-tau-video/.

[5] Natalie Gontcharova, *Syracuse University Students Demand Action After Racist Theta Tau Frat Video is Leaked*, YAHOO! (April 19, 2018), https://www.yahoo.com/lifestyle/syracuse-university-students-demand-action-180000135.html.  "A protest erupted on campus Wednesday evening as students demanded that the university release the videos."  Catherline Leffert et al., *SU suspends Theta Tau fraternity after video of 'extremely racist' behavior surfaces*, DAILY ORANGE (April 19, 2018), http://dailyorange.com/2018/04/su-suspends-theta-tau-fraternity-video-extremely-racist-behavior-surfaces/.

- **"SO NOW WHAT.  NOW WHAT.  FIND THESE MFs SU STUDENTS.  FIND EM. !!!!!!!!"**
- **"Should I deck him when I catch him lackin'?"[6]**
- **"I would dead go just to fuck them up"[7]**

Although there was limited dissemination of the students' names on SU social media outlets, the absence of public identification prevented more widespread threats from materializing. Defendants now seek to permanently tie Plaintiffs to these controversial videos even after unjustly disciplining them for assault, harassment, and violations of the University's anti-harassment policy. Defendants' claims that they are racists, anti-semitic, homophobic, sexists, and hostile to people with disabilities.  In doing so, Defendants are not only again threatening Plaintiffs' physical safety, but Defendants are engaging in a reckless attempt to forever alter the course of Plaintiffs' personal, educational, and professional futures.

### B. <u>The University Has Repeatedly Acknowledged Plaintiffs' Privacy is an Utmost Concern</u>

Syracuse University began the disciplinary process by repeatedly stating it would not reveal Plaintiff's identities.  At a forum in April, Defendant ***Robert Hradsky specifically stated, "The law prevents us from providing any individually identifying information***, so we wouldn't be able to say 'Student X received this particular sanction,' but perhaps we may be able to do

---

[6] "Caught lackin'" is slang for not being prepared to defend oneself with a gun when someone randomly pulls a gun on you.  Daniel Roth, *Internet Craze The 'No Lackin Challenge' Where People Pull Guns On Each Other To Film Their Response Goes Horribly Wrong When A Memphis Boy, 17, Is Shot*, DAILY MAIL (Jan. 28, 2018), http://www.dailymail.co.uk/news/article-5321381/No-lackin-challenge-stunt-goes-horribly-wrong.html.  The term originated in Chicago and persists in gang communities:  **"The term refers to <u>"lacking" a gun or fire arm</u>, a way to test the readiness of an individual should they need a firearm to protect themselves or use for a more sinister purpose."**  *Id.*  *The Daily Mail* described the "no lackin' challenge" as "the most dangerous Internet craze to sweep YouTube."  *Id.*  One unwitting participant was actually shot in the head.  *Id.*

[7] *See* Doe #5 Decl. Exhs. **"C"** and **"D"**.

something more broadly."[8] "He said he would need to see if providing that information would be in violation of the Family Education Rights and Privacy Act."[9] On June 8, 2018, *while discussing the University Conduct Board decision involving Plaintiffs, Defendant Robert Hradsky again stated, "[d]ue to federal privacy laws, we are not able to report on the specifics* of those sanctions."[10] And, at the commencement of this lawsuit, counsel for Defendants asked for a "schedule of identities for the John Does Plaintiffs so that I can prepare . . . opposition papers," but also stated he would "not make the names public in [the] opposition papers." Hulslander Decl. Exh. **"A"**, p. 2.

Now, Defendants seek to reverse their position, which is particularly vindictive given Plaintiffs are awaiting the opportunity to vindicate themselves in an Article 78 proceeding which will review the lack of evidentiary basis for the University's disciplinary charges and the University's procedural improprieties during the University Conduct Board proceedings. Hulslander Decl. Exh. **"H"**. However, the University has deliberately delayed in rendering University Appeals Board decisions on Plaintiffs' appeals of the University Conduct Board determinations. Hulslander Decl. Exh. **"J"**. Indeed, Plaintiffs' appeals in the proceedings were filed on June 8, 2018. Respondents in the proceedings waived their right to submit a response.

---

[8] Daniel Strauss & Kennedy Rose, *SU Will Not Publicly Release Names Of Students In Theta Tau Investigation*, DAILY ORANGE (April 23, 2018), http://dailyorange.com/2018/04/su-will-not-publicly-release-names-students-theta-tau-investigation/.

[9] *Id.*

[10] Robert Hradsky, *Update on Student Conduct Process from Dean of Students Robert Hradsky*, SYRACUSE UNIV. (June 8, 2018), https://news.syr.edu/2018/06/update-on-student-conduct-process-from-dean-of-students-robert-hradsky/.

Hulslander Decl. Exh. **"I"**.  In accordance with University procedures, the appeals should have been decided in three days.  Hulslander Decl. Exh. **"G"**, § 12.8.

Plaintiffs are currently at Defendants' mercy.  Defendants have refused to issue a decision on their appeals, which precludes Plaintiffs from commencing an Article 78 proceeding where they ***would be entitled to anonymity as a matter of statutory law***.  N.Y. EDUCATION LAW § 6448; N.Y. C.P.L.R. § 3016(i).

### C.  Plaintiffs Have Offered to Eliminate Any Prejudice Resulting From Pseudonym Status.

Defendants disingenuously argue prejudice because they claim to not know who Plaintiffs are while simultaneously asserting they are identifiable in the videos.  More particularly, however, Defendants know exactly who Plaintiffs are: they are obviously "students associated with the *Theta Tau* videos," and students who are involved in disciplinary proceedings before the University Conduct Board.  ECF No. 19-1, p. 6; ECF No. 20-1, ¶ 7 ("[E]ach of these steps were completed by the University with each of the Doe Plaintiffs."); ECF No. 20-4 (printout of holds placed on Plaintiffs' transcripts).  The University Conduct Board decisions complained of are identical in reasoning, and Plaintiffs' claims are identical.  *See* ECF No. 20-1, ¶ 23 (attaching one Plaintiffs' decision as representative of all Plaintiffs' decisions).  As a result, there is no prejudice that results from Plaintiffs' anonymity even if—which is not the case here—Defendants had to actually guess who each of the nine Plaintiffs are from the eighteen Plaintiffs initially charged.  And, given the First Amended Complaint's paragraphs identifying Plaintiffs' domicile and, in some cases, ethnic information, which is also present in the affidavits, affirmations, and declarations filed in this case, Defendants should have no trouble matching the John Doe Plaintiffs with Syracuse University records.

*Even if there was some prejudice arising out of Plaintiffs' anonymity, Plaintiffs have offered to eliminate it by providing a confidential stipulation listing Plaintiffs' actual identities under seal.* Hulslander Decl. Exhs. **"A"** and **"B"**. *Defendants refused Plaintiffs' offer.* Hulslander Decl. Exh. **"A"**. *Plaintiffs remain ready, willing, and able to enter into the stipulation.* As a result, any prejudice asserted by Defendants is either non-existent or self-imposed.

## I.   CONTRARY TO DEFENDANTS' CONTENTIONS, THE APPLICABLE LAW FAVORS PROCEEDING ANONYMOUSLY

*In federal court, courts across the nation have allowed anonymity in factually identical circumstances. See Doe v. Colgate Univ.*, No. 5:15-cv-1069, 2016 WL 1448829, at *4 (N.D.N.Y. April 12, 2016), *rev'g* 2015 WL 5177736 (N.D.N.Y. Sept. 4, 2015) (collecting cases). Defendants correctly identify *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185 (2d Cir. 2008), as the leading Second Circuit case regarding when a party can proceed anonymously. However, Defendants fail to properly analyze the *Sealed Plaintiff* factors and, indeed, fail to acknowledge on-point case law governing this particular factional scenario. As discussed below, several of the *Sealed Plaintiff* factors militate in favor of allowing the case to proceed anonymously under pseudonyms.

### A.   On Point Cases Cited by Defendants Establish Plaintiffs' Right to Proceed Anonymously

Defendants only cite two cases involving this specific context—disputes regarding disciplinary matters between college students and a University—and both undermine their position.

First, *Doe v. Colgate University*, is on point and its import is wholly ignored by Defendants. In *Doe v. Colgate University*, this Court reviewed a Magistrate Judge's decision *de novo* and allowed the plaintiffs to proceed anonymously. *Doe v. Colgate Univ.*, No. 5:15-cv-1069, 2016

WL 1448829, at *4 (N.D.N.Y. April 12, 2016), *rev'g* 2015 WL 5177736 (N.D.N.Y. Sept. 4, 2015).

There, the Court began by acknowledging the *Sealed Plaintiff* factors and then analyzed whether

a student accused of sexual assault who was then suspended was entitled to proceed anonymously

against Colgate University. *Id.* at *1–2.[11]   The Court began by noting that "cases stemming from

investigations of sexual abuse on college and university campuses have garnered significant media

attention, posing the risk of further reputational harm to both the plaintiffs in these cases and their

accusers." *Id.* at *2 (citing *Doe v. Brown Univ.*, No. 15-144, 2016 WL 715794, at *1 (D.R.I. Feb.

22, 2016).   Before returning to the *Sealed Plaintiff* factors, the Court found "that protecting the

anonymity of sexual assault victims and those accused of committing sexual assault can be an

important safeguard to ensure that the due process rights of all parties are protected." *Id.*

Returning to the *Sealed Plaintiff* factors, the Court found that the first two factors, whether

the litigation presented sensitive, personal issues and whether identification created a risk of

retaliation, cut in the plaintiff's favor. *Id.* at *3. The Court specifically noted that "courts across

the country have allowed plaintiffs alleging similar claims against colleges and universities

stemming from investigations of sexual assault to proceed anonymously."[12]   *Id.*   The Court also

---

[11] The Magistrate Judge's 2015 decision was issued *sua sponte* because plaintiff's Complaint indicated a motion to proceed anonymously would be filed contemporaneously with the complaint, but a month passed without any filing. *Id.* at *1 ("At the time Judge Peebles issued the September Order, neither party had submitted arguments on the issue of whether Plaintiff could proceed under pseudonym."). When the issue was reviewed *de novo* and fully briefed before the District Court Judge, the Court held that proceeding anonymously was warranted. *Id.* at *4.

[12] In weighing the first two factors, the Court collected seven on-point decisions uniformly holding that Plaintiff's privacy interests allowed them to proceed anonymously. *Id.* at *3 (citing *Doe v. Univ. of Massachusetts-Amherst*, No. 14-30143, 2015 WL 4306521 (D. Mass. Jul. 28, 2015); *John Doe v. Columbia Univ. and Trs. of Columbia Univ.*, 101 F. Supp. 3d 356 (S.D.N.Y. 2015); *Doe v. Washington & Lee Univ.*, No. 14-CV-00052, 2015 WL 4647996 (W.D. Va. Aug. 5, 2015); *Doe v. Salisbury Univ.*, 107 F. Supp. 3d 481 (D. Md. 2015); then citing *Doe v. Univ. of S. Fla. Bd. of Trs.*, No. 8:15-cv-682, 2015 WL 3453753 (M.D. Fla. May 29, 2015); *Doe v. Univ. of the S.*, 687 F. Supp. 2d 744 (E.D. Tenn. 2009)); *see also Doe v. Purdue Univ.*, 321 F.R.D. 339, 342 (N.D. Ind.

found that the third factor, the disclosure's harm to Plaintiff, was in Plaintiff's favor, stating "[s]hould Plaintiff prevail in proving that the charges against him were unfounded and the procedures Defendants followed in their investigation were unfair, *forcing Plaintiff to reveal his identity would further exacerbate the emotional and reputational injuries he alleges*." *Id.* And, continuing on the third factor, the Court found that *"forcing Plaintiff to reveal his identity would not advance any aspect of the litigation but instead poses a risk that Plaintiff would be subject to unnecessary ridicule and attention."* *Id.* The Court further found that public policy boded in favor of anonymity under this factor because of the "potential chilling effect that forcing Plaintiff to reveal his identity would have on future plaintiffs facing similar situations." *Id.* Turning to the prejudice to the defendants, the sixth factor, the Court found that *"Defendants are aware of Plaintiff's true identity and will have an uninhibited opportunity to litigate this matter regardless of whether Plaintiff's identity is disclosed publicly."* *Id.* Thus, the Court in *Doe v. Colgate University* held, "that Plaintiff's interest in anonymity outweighs "both the public interest in disclosure and any prejudice" to Defendants." *Id.* at *4 (quoting *Sealed Plaintiff*, 537 F.3d at 189).[13]

Here, as in *Doe v. Colgate University*, this case involves sensitive, highly-charged issues of a personal nature, which favors allowing Plaintiffs to proceed anonymously. *See generally* ECF

---

2017) (allowing student-plaintiffs to proceed anonymously); *Doe v. Trs. Of Dartmouth Coll.*, No. 18-cv-040-LM, 2018 WL 2048385, at *3 (D.N.H. May 2, 2018) (same); *id.* at *3, n. 1 (collecting scholarly work regarding pseudonyms in litigation).

[13] Defendants may argue that "cases where the parties consented to allow a plaintiff to proceed under pseudonym are somehow unpersuasive" but, as the Court noted in *Doe v. Colgate University*, those cases "indicate that the accused colleges and universities recognize the highly personal and sensitive nature of these cases as well as the limited value of forcing plaintiffs to reveal their identities when seeking to vindicate their federal rights." *Id.* at *3.

Doc. No. 1. Just as in *Doe v. Colgate University*, "[s]hould Plaintiff[s] prevail in proving that the charges against [them] were unfounded and the procedures Defendants followed in their investigation were unfair, forcing Plaintiff[s] to reveal [their] identity would further exacerbate the emotional and reputational injuries" unnecessarily. *Id.* at *3. Clearly, Defendants, already know who Plaintiffs are, having charged and disciplined each of them under the University's conduct rules. Plaintiffs' formal standing offer to execute a stipulation identifying the John Doe Plaintiffs under seal eliminates any conceivable remaining prejudice.[14] *See* Hulslander Decl. Exhs. **"A"** and **"B"**; *see also Doe v. Colgate Univ.*, 2016 WL 1448829, at *3 ("Defendants are aware of Plaintiff's true identity and will have an uninhibited opportunity to litigate this matter regardless of whether Plaintiff's identity is disclosed publicly."). Thus, as in *Doe v. Colgate University*, "forcing Plaintiff[s] to reveal [their] identity would not advance any aspect of the litigation but instead poses a risk that Plaintiff[s] would be subject to unnecessary ridicule and attention." *Id.*

Second, *A.B. v. Hofstra University*, an Eastern District of New York case, is distinguishable. *A.B. v. Hofstra Univ.*, No. 2:17-cv-5562, 2018 WL 1935986 (E.D.N.Y. 2018). Critically, there unlike here, the plaintiff's name was actually revealed in another proceeding ***before*** the anonymity issue was raised in *A.B.* for the Court's decision. *Id.* at *1. Thus, the Court's decision was predicated on the fact that the plaintiff's identity had already ordered to be exposed in another litigation: "even if the factors weighed numerically in Plaintiff's favor the Court would

---

[14] Further, in an attempt to maintain anonymity in this action, but to vitiate any claim that Defendants do not know who Plaintiffs are, Plaintiffs offered to enter into a limited stipulation to reveal Plaintiffs' true identities to Defendants. Hulslander Decl. Exh. **"A"**. Defendants refused. Hulslander Decl. Exh. **"A"**. Plaintiffs are ready, willing, and able to enter into that stipulation at this time. Thus, any alleged prejudice resulting from not knowing the John Does' true identities flows from Defendants' actions.

still require Plaintiff to proceed under his true name given the Court's prior decision denying Plaintiff's request to proceed pseudonymously . . . , which shares certain facts." *Id.* at *3.

Even after the plaintiff's name was actually revealed in another court proceeding involving the same subject matter, however, the Eastern District of New York found several *Sealed Plaintiff* factors favored allowing the plaintiff to proceed anonymously. *Id.* at *2–3. The Court acknowledged that "the litigation here involves matters that are of a highly sensitive and personal nature, as the case relates—in part—to allegations of sexual harassment and misconduct." *Id.* at *2. The Court noted that the reason it was "not convinced" that the second factor cut in the plaintiff's favor was because "Plaintiff has already been identified by his true name in the other case." *Id.* Additionally, the court found that the plaintiff could not be protected by any "alternative mechanisms for protecting his confidentiality." *Id.* at *3. As to the sixth factor, prejudice to the defendant, the Court found it was "effectively neutral, as there does not appear to be any direct prejudice to Defendant from allowing Plaintiff to proceed pseudonymously at any stage of the litigation." *Id.*

Here, unlike *A.B.*, Plaintiffs' names have not been revealed—in litigation or otherwise— by Plaintiffs or Defendants. And, contrary to the facts in *A.B.*, Plaintiffs will be ***statutorily entitled*** to anonymity in the subsequent Article 78 proceeding should the University ever finalize the administrative process by issuing decisions on Plaintiffs' appeals. N.Y. EDUCATION LAW § 6448.

But, even assuming *A.B.* is persuasive precedent, even if this Court considers the social media posts as disclosure of Plaintiffs' true identities, several *Sealed Plaintiff* factors establish Plaintiffs' entitlement to proceed anonymously. As in *A.B.*, "the litigation here involves matters that are of a highly sensitive and personal nature, as the case relates—in part—to allegations of sexual harassment and misconduct." *A.B.*, 2018 WL 1935986, at *2. Further, there are no

"alternative mechanisms for protecting his confidentiality" as Defendants refused to enter into a stipulation regarding Plaintiffs' anonymity. *Id.* at *3; Hulslander Decl. Exh. **"A"**. Finally, contrary to Defendants' contentions, there is no prejudice to Defendants arising out of Plaintiffs' attempt to proceed anonymously; instead, under *A.B.*, this factor is "effectively neutral, as there does not appear to be any direct prejudice to Defendant . . . at any stage of the litigation." *Id.*

As a result, Plaintiffs should be allowed to proceed under pseudonyms under *Doe v. Colgate University* and *A.B. v. Hofstra University*.

**B.** **Several *Sealed Plaintiff* Factors Militate in Favor of Allowing Plaintiffs to Remain Anonymous by Utilizing Pseudonyms Here.**

In *Sealed Plaintiff*, the Second Circuit established the authoritative, ten-factor test for determining when a Plaintiff can proceed anonymously. *Sealed Plaintiff*, 537 F.3d at 189–90. Under *Sealed Plaintiff*, a Court must determine whether Plaintiffs' privacy interests outweigh the public interest in knowing the true identities of the litigants by balancing ten factors:

> (1) whether the litigation involves matters that are highly sensitive and of a personal nature;
> (2) whether identification poses a risk of retaliatory physical or mental harm to the party seeking to proceed anonymously or even more critically, to innocent non-parties;
> (3) whether identification presents other harms and the likely severity of those harms, including whether the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity;
> (4) whether the plaintiff is particularly vulnerable to the possible harms of disclosure, particularly in light of his age;
> (5) whether the suit is challenging the actions of the government or that of private parties;
> (6) whether the defendant is prejudiced by allowing the plaintiff to press his claims anonymously, whether the nature of that prejudice (if any) differs at any particular stage of the litigation, and whether any prejudice can be mitigated by the district court;
> (7) whether the plaintiff's identity has thus far been kept confidential;
> (8) whether the public's interest in the litigation is furthered by requiring the plaintiff to disclose his identity;
> (9) whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigants' identities; and

(10) whether there are any alternative mechanisms for protecting the confidentiality
of the plaintiff.

537 F.3d at 189–90.

Several *Sealed Plaintiff* factors favor allowing Plaintiffs to remain anonymous, as discussed below. Plaintiffs' "interest in anonymity outweighs 'both the public interest in disclosure and any prejudice' to Defendants.'" *Colgate Univ.*, 2016 WL 1448829, at *4 (quoting *Sealed Plaintiff*, 537 F.3d at 189).

1. Factor 1: The Litigation Involves Matters That Are Highly Sensitive Because Defendants Labelled Plaintiffs as Racist, Anti-Semitic, Homophobic, Sexist, And Hostile To People With Disabilities, Which are Charged Terms in Today's Climate

The University charged Plaintiffs for conduct it alleged was racist, anti-semitic, homophobic, sexist, hostile to people with disabilities, and involved actual sexual acts, which are, to put it mildly, sensitive issues in today's America. This case has garnered on campus protests, online threats, and national media attention, making matters all the more sensitive. ECF No. 21-2, ¶¶ 8–9. Suits arising out of university disciplinary actions, especially where the discipline itself involved a sensitive topic, are sensitive and, thus, Plaintiffs' identity should be protected through the use of anonymity. *Doe v. Colgate Univ.*, 2016 WL 1448829, at *3 (collecting cases). The stigma of being labelled racist, anti-semitic, homophobic, sexist, and hostile to people with disabilities is the modern Scarlet Letter and Plaintiffs should not be forced to be forever branded to vindicate their rights.

2. Factors 2 and 3:   Identifying Plaintiffs Poses a Risk Physical, Mental, Academic, and Reputational Harm to Plaintiffs, Who Are Young College Students

Defendants claim that there would be no harm resulting from Plaintiffs being exposed because "no acts of retaliation have occurred and as time has passed, it is clear there is no legitimate risk to the safety of the Plaintiffs that requires ongoing anonymity." ECF No. 19-1, p.

8.  First, John Doe #4's Affirmation shows that Plaintiffs did receive threats and were harassed after the videos were released and in the aftermath of statements by University administrators, including Defendants.  Second, as evidenced by the experience of Syracuse University students like Hannah Strong,[15] these types of highly-charged allegations involving racism can affect professional pursuits for years after a controversy has occurred and ostensibly died down.

   3.  Factor 4:   Plaintiffs, While Not Minors, Are Particularly Vulnerable To The Possible Harms Of Disclosure, Because They Have Barely Passed The Age Of Majority

Plaintiffs, while not minors, are young adults who should not be forced to be forever connected to these videos just to vindicate their rights.  If Defendants' motion is granted, Plaintiffs will forever be indelibly branded as racist, anti-semitic, homophobic, sexist, and hostile to people with disabilities by virtue of the simple ability to perform a Google search for Plaintiffs' names.

   4.  Factors 5, 8, and 9:  This Suit Involves A Private Dispute Amongst Private Actors, but the Issues are Contractual and Not a Matter of Legitimate Public Interest

This suit is an action by private citizens to recover damages against private actors.  Under *A.B.*, a private dispute is less likely to militate in favor of granting relief to proceed anonymously through the use of a pseudonym.  *A.B. v. Hofstra Univ.*, No. 2:17-cv-5562, 2018 WL 1935986, at *3 (E.D.N.Y. 2018).  The public interest in open judicial proceedings is not "furthered by knowing which college student brought a particular lawsuit as opposed to knowing simply that some college student did so."  *Doe v. Univ. of St. Thomas*, No. 16-cv-1127, 2016 WL 9307609, at *3 (D. Minn. May 25, 2016).

---

[15] Hanna Strong was a "Syracuse University soccer player who suffered withering criticism in 2014 after she was captured on video using homophobic and racial slurs."  Ken Sturtz, *Former Syracuse Soccer Player Loses Substitute Teacher Job Over 2014 Video*, SYRACUSE.COM (Jan. 21, 2016), https://www.syracuse.com/news/index.ssf/2016/01/former_syracuse_soccer_player_loses_substit ute_teacher_job_over_2014_video_contr.html.  Two years later, she was dismissed from her position as a substitute teacher and "apparently lost her teaching job over the incident."  *Id.*

5.  Factor 6:   Defendants Are Not Prejudiced By Allowing Plaintiffs To Press Their
    Claims Anonymously

Defendants implausibly claim they will be prejudiced if Plaintiffs are allowed to proceed

anonymously.  Defendants have publically vowed to keep Plaintiffs' identities confidential and

Defendants concede that they have actual knowledge of Plaintiffs' identities. ECF No. 20, p. 4–

9 (describing University's actions against Plaintiffs).   Plaintiffs have offered to remove any

supposed prejudice Defendants may suffer by offering to provide them the identities under seal

by stipulation; Defendants refused.  Hulslander Decl. Exh. **"A"**.  There is simply no identifiable

prejudice to Defendants here that should preclude Plaintiffs from preserving their anonymity.

6.  Factor 7:   Defendants Have Previously Agreed, And Within The Scope Of Their
    Control Have Succeeded In, Keeping Plaintiffs' Identities Confidential

Defendants have specifically stated they will not reveal Plaintiffs' identities. ECF No. 19-

1, p. 15 ("The University itself has stringent procedures in place that protect its students'

privacy.").  Defendants' argument that third parties may have identified Plaintiffs does not

minimize the effect of forcing Plaintiffs to reveal their true identities in publically available

documents.

7.  Factor 10:  There Are No Alternative Mechanisms For Protecting The Confidentiality
    Of The Plaintiff.

Defendants' do not meaningfully address this factor.  Instead, Defendants start from the

position that "Plaintiffs have forfeited the confidentiality of their identities by filing this lawsuit"

and then merely claim that FERPA records can be protected by redaction.  ECF No. 19-1, p. 15.

But FERPA protection is independent of, and irrelevant to, whether Plaintiffs can proceed

anonymously.  Furthermore, as noted above, New York law recognizes a privacy interest in

challenging University disciplinary actions.  N.Y. EDUCATION LAW § 6448; N.Y. C.P.L.R. §

3016(i).  As the District of Minnesota noted in *Doe v. University of Saint Thomas*, *it is "difficult*

*to reconcile the University['s] . . . repeated and genuine expressions of concern for the privacy*

*of its students, including John [Does], with its decision not to follow the course taken by other*

*(though by no means all) universities and acquiesce to pseudonymous proceeding."* Doe v.

Univ. of St. Thomas, No. 16-cv-1127, 2016 WL 9307609, at *3 (D. Minn. May 25, 2016).

## II.   CONCLUSION

For the foregoing reasons, Plaintiffs are entitled to proceed anonymously.  Accordingly,

Defendants' motion should be denied.


Dated: July 9, 2018                         **SMITH, SOVIK, KENDRICK & SUGNET, P.C.**

By: _____
Kevin E. Hulslander, Esq.
Bar Roll No.:  103027
Karen Felter, Esq.
Bar Roll No.:  508182
David M. Katz, Esq.
Bar Roll No.:  700065
*Attorneys for Plaintiffs*
250 South Clinton Street, Suite 600
Syracuse, New York 13202
Telephone:      (315) 474–2911
Facsimile:       (315) 474–6015
Email:            khulslander@smithsovik.com