UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

---

JOHN DOE #1, JOHN DOE #2, JOHN DOE #3, JOHN DOE #4, JOHN DOE #5, JOHN DOE #6, JOHN DOE #7, JOHN DOE #8, and JOHN DOE #9,

                Plaintiffs,

v.

SYRACUSE UNIVERSITY, KENT SYVERUD, individually and as Chancellor of Syracuse University, ROBERT HRADSKY, individually and as Syracuse University Dean of Students and Associate Vice President of the Student Experience, and TERESA ABI-NADER DAHLBERG, individually and as the Dean of the College of Engineering and Computer Science,

                Defendants.

Case No.:   5:18-cv-496 (FJS/DEP)

---

### DECLARATION OF KAREN G. FELTER IN OPPOSITION TO DEFENDANTS' ORDER TO SHOW CAUSE TO PRECLUDE PLAINTIFFS FROM SEEKING OR PLACING INTO EFFECT ANY JUDICIAL REMEDY FROM JEFFERSON COUNTY SUPREME COURT IN A RELATED SPECIAL PROCEEDING PURSUANT TO C.P.L.R. ARTICLE 78

Karen G. Felter, pursuant to 28 U.S.C. § 1746, declares as follows:

1. I am an attorney licensed to practice law in the State of New York and am admitted to practice in all New York State courts and in the United States District Court for the Northern District of New York.

2. I am a partner in the law firm of Smith, Sovik, Kendrick & Sugnet, P.C., attorneys for Plaintiffs, JOHN DOES #1 through #9. I am fully familiar with the facts and circumstances surrounding this case.

3. I submit this Declaration in opposition to Defendants' motion, filed by Order to Show Cause, to preclude plaintiffs from pursuing a related Article 78 proceeding in Jefferson

{S0849446.1}   1

County Supreme Court or seeking or placing into effect any judicial remedy obtained in that special proceeding.

## PRELIMINARY STATEMENT

4. Defendants' motion desperately seeks an injunction—for which there is *no support* in federal law—to prohibit seven of the John Doe plaintiffs in this case, along with three other students who are not parties to this diversity action, from litigating a properly filed special proceeding in state court pursuant to C.P.L.R. Article 78. There is *no basis* for this Court to interfere with these petitioners' right to pursue the state court special remedy of judicial review and reversal of the unlawful administrative disciplinary action imposed by Syracuse University as well as attendant injunctive relief.

5. In support of their current motion, defendants make numerous misstatements of fact and law concerning this dispute, not the least of which is their continual reference to "plaintiffs" having pursued "duplicative and improper" relief in state court. Defendants are fully aware—having already litigated this exact issue in state court—that there are "plaintiffs" in this case and "petitioners" in the state court proceeding and the two groups are *not the same*, nor are the two actions based on the same legal claims for relief.

6. Contrary to defendants' claims, the present federal action (the "Federal Action"), and the present Verified Petition filed by the petitioners in Jefferson County Supreme Court (the "Article 78 proceeding") are not "identical"; rather, they are fundamentally different and seek distinct remedies. Specifically, the Article 78 proceeding is an attempt to *annul* the improper disciplinary determinations issued by defendant Syracuse University whereas the Federal Action demands compensatory and punitive damages for defamation and breaches of contract by defendants during the investigation, prosecution, and determination of disciplinary charges in this

case. The John Doe plaintiffs in the Federal Action cannot obtain the judicial review and reversal of administrative action requested in the Article 78 proceeding and the petitioners in that case cannot be awarded the money damages sought by the John Doe plaintiffs here. Moreover some of the petitioners in the Article 78 proceeding (JOHN DOE #'s "2", "8", and "10") are not even parties to the Federal Action and ***cannot join*** it based on their lack of diversity of citizenship.

7. Further, while defendants contend incorrectly that plaintiffs are engaged in "claim splitting," they were precluded from bringing the Article 78 proceeding in federal court because federal courts do not have subject-matter jurisdiction over Article 78 claims in the absence of a federal question or other independent subject matter jurisdiction. Indeed, numerous federal trial courts, including multiple judges in this District, have held that Article 78 proceedings cannot be commenced in federal court under similar circumstances. Plaintiffs here have pursued this action as both a means to obtain injunctive relief in advance of final administrative disciplinary actions which finally freed the petitioners to file an Article 78 proceeding and a means to assert claims for money damages against defendants which are not available under Article 78.

8. Indeed, in direct anticipation of defendants' argument that their now abandoned federal due process claim would be duplicative of relief that they could obtain via Article 78, plaintiffs dropped that claim. Moreover, even if all petitioners were eligible to be plaintiffs in the Federal Action (which they are not), plaintiffs have proceeded using a defensive strategy. Specifically, to avoid subjecting themselves to an argument that their Article 78 claims should be dismissed since the Court would have no supplemental jurisdiction to review them should all of the diversity claims be dismissed, plaintiffs elected to file the petition for review of unlawful administrative action in state court, as they are authorized to do. The cases cited by defendants in support of their baseless claim that the Article 78 proceeding is an attempt to "subvert" this Court's

authority, are distinguishable because they involved *removal of state court actions involving questions of federal law*, which is an entirely independent basis for federal court jurisdiction than asserted in the Federal Action.[1] In another removal case, the court found that once a claim for money damages together with a request for Article 78 review was *properly removed* based on diversity, the court had no discretion to remand the case because it requested money damages.

9. Here, there was no removal of the Article 78 proceeding, nor could there be, since there is no basis for federal jurisdiction and 28 U.S.C. § 1441(b)(2) specifically precludes removal here because of John Doe petitioners "2", "8", and "10". Even if the removal statute did not specifically prohibit diversity jurisdiction here, there would be no federal jurisdiction either because there is no question of federal law at issue in the either the Article 78 proceeding or the Federal Action. Moreover, while there are multiple individual defendants named in the Federal Action who are alleged to have defamed and damaged plaintiffs, there is only one named respondent in the Article 78 proceeding—Syracuse University—and even as to Syracuse University, the scope of review in the Article 78 only pertains to the final determinations; the Article 78 proceeding cannot remedy, for example, plaintiffs' improper quasi-suspension, which was granted without notice or a hearing. Specifically, the petitioners in the Article 78 proceeding seek annulment of the improper disciplinary determinations and attendant injunctive relief. As noted in the accompanying Memorandum of Law, the Article 78 petitioners are precluded from seeking this relief in federal court and damages for respondent Syracuse University's defamation

---

[1] Indeed, petitioners' claims in the Federal Action are premised on defamation and an assertion that the University *contractually agreed* to protect their right to free speech, not that the University's actions directly violated the First Amendment of the United States Constitution which would trigger jurisdiction under 28 U.S.C. § 1331.

and continual breaches of contractual obligations throughout the disciplinary process is not available in the Article 78 proceeding.

10. Further, there has been **no overlap** of injunctive relief sought in the Federal Action and Article 78 proceeding. Consequently, plaintiffs have not engaged in improper claim splitting or forum shopping. Thus, defendants' unjustified request for judicial intervention and injunctive relief should be denied.

### PLAINTIFFS HAVE NOT ENGAGED IN IMPERMISSIBLE CLAIM SPLITTING OR FORUM SHOPPING

11. Specifically, in the Federal Action, plaintiffs made two requests for temporary and/or preliminary injunctive relief. First, they sought an injunction at the outset of the case to prohibit defendants from implementing an improper "quasi-suspension" of the affected students from participation in University activities, including attending review classes, completing required class work and taking finals. Dkt. #s 5-2, 5-3, 5-4, 5-5, and 5-6 (John Doe Affidavits); see also Dkt. #s 5-1, 5-7 (other papers in support). Second, plaintiffs sought to force the University to release unmarked transcripts to students after defendants prematurely denoted the results of the disciplinary action while appeals of the Conduct Board's decisions were still pending. Dkt. #s 14-1 through 14-18.

12. Plaintiffs withdrew the former request for injunctive relief upon reaching an *agreement* with defendants that the students would be accommodated or provided with alternative arrangements during the final weeks of the semester. Dkt. #'s 7, 8. In opposition to the latter request, defendants argued that the injunction sought was a mandatory injunction which required the University to change the status quo of transcripts which had already been marked. Dkt. #s 20, 21, 22. The Court ultimately disagreed with plaintiffs that the status quo should be set *before* the

transcripts were marked and denied the request based on the higher standard applicable to mandatory injunctions. Dkt. # 24.

13. In reviewing plaintiffs' request to force the University to release unmarked transcripts, this Court noted plaintiffs did not show the premature marking of the transcripts would prevent them from transferring to another university. Dkt. # 24, p. 7.[2] Moreover, the Court stated plaintiffs did not meet the "heightened standard" of showing they had a "clear or substantial likelihood" of success on the merits to support their request for a mandatory injunction. Dkt. # 24, pp. 2, 7 n. 5. Specifically, on the *limited issue* whether defendants' refusal to provide unmarked transcripts was a breach of the contractual agreement between plaintiffs and the University, the Court determined plaintiffs had not met their heightened burden of proof. Dkt. # 24, pp. 7–10.

14. In the Article 78 proceeding, the petitioners have obtained a stay of the improper disciplinary action, including suspensions, on an *interim basis* pending a return date or hearing to determine whether petitioners are entitled to a preliminary stay of all adverse actions pending final resolution of the Article 78 proceeding. **Exhibit "B."** Judge McClusky also entered an Order authorizing the petitioners to proceed anonymously in the Article 78 proceeding. **Exhibit "C."**[3] After receiving petitioners' initial Order to Show Cause on August 13, 2018, and supporting submissions, **Exhibit "D,"** which would have allowed the petitioners to return to Syracuse

---

[2] Weeks after the Court issued its decision on this issue, counsel for plaintiffs began receiving information regarding the impact of the improper and premature notation on their transcripts regarding final disciplinary action that was in fact, still under appellate review. **Exhibit "A."**

[3] The state court's determination of the anonymity issue, which is currently still pending in the Federal Action, is not binding on this Court. Nevertheless, the pendency of the anonymity issue in this Court does not present an insurmountable danger of an "inconsistent" result. To wit, while it would be distressing for this Court to reach a different determination than Judge McClusky on the anonymity issue, this Court has suggested that it would entertain permitting plaintiffs to *withdraw* their claims prior to being forced to substitute their real names in the caption.

University for the fall semester, Judge McClusky stated he did not want to sign an interim order only to learn later that it should not have been issued. Thus, the court allowed the respondent University to submit opposition papers by August 16, 2018. **Exhibit "E."** The University opposed the request for injunctive relief and served a cross-motion to dismiss the Verified Petition. In addition to review of all papers submitted by the parties in connection with the competing motions, including Petitioners' reply papers, the court heard oral argument for an hour and half on Wednesday, August 22, 2018, in Watertown at the Jefferson County Supreme Court on the merits of the Verified Petition, the petitioners' claimed privacy right on the issue of anonymity and the evidence of irreparable harm. *See* **Exhibit "F"** (reply papers) **Exhibit "G"** (Transcript of August 22, 2018, oral argument on motion before Judge McClusky which the petitioners in the Article 78 proceeding have requested, but not yet received).

15.     After counsel for the respondent University argued that he had evidence that some of petitioners did not want to return because they had transferred to other institutions, Judge McClusky agreed that the petitioners had not submitted sufficient evidence of irreparable harm. Exh. G. Consequently, he denied the petitioners' request for an interim stay. Exh. C. Immediately following that decision, the petitioners *renewed* their request for an interim stay and submitted additional evidence showing that while some had enrolled in community college and two had transferred to other institutions, none could engage in the same level of engineering study they had enjoyed at Syracuse University and all would return or consider returning if a stay was entered. **Exhibit "H."** Based thereupon, Judge McClusky signed the Order directing an interim stay. *Id.*

16.     Defendants first contend erroneously that the University had "no opportunity to be heard" on the renewed request for an interim stay, Dkt. # 48-4, ¶ 14, which was premised on the identical papers submitted in connection with the initial request, but supplemented by the precise

evidence the University argued was missing. Exh. H. Secondly, defendants argue implausibly that this decision "is at odds with the prior decision of this Court finding that Plaintiffs could not satisfy the relevant standard for a preliminary injunction." Dkt. # 48-4, ¶ 15. However, this Court noted that plaintiffs' second motion for injunctive relief in the Federal Action "*relate[d] to their breach-of-contract claims*." Dkt. # 24, p. 7.

17. Under no reasonable view can this Court's decision on this motion for injunctive relief on the breach of contract claims in the Federal Action be viewed as "at odds" with Judge McClusky's decision. Indeed, the denial of plaintiffs' motion to force defendants to release unmarked transcripts because of the then pending administrative appeals *has no bearing* on whether the petitioners in the Article 78 proceeding are entitled to a stay of the disciplinary action now that petitioners are seeking state judicial review of final administrative action. Plaintiffs' failure to meet their heightened burden of proof on their breach of contract claims to support issuance of a mandatory injunction is not dispositive of whether the petitioners in the Article 78 proceeding are "likely to succeed" on their claims that the University's administrative actions were arbitrary and capricious.

18. Nevertheless, defendants make the unfounded claim that this Court has "*already*" determined the University's right to "determine what is appropriate on its campus" and "decide who may be a student here." Dkt. # 48-4, ¶ 16. These issues have never been before this Court and certainly were not decided in defendants' favor. First, this Court expressly limited its inquiry to the narrow relief sought by plaintiffs on the second motion for injunctive relief and *declined* to hear arguments on the merits of the Complaint. *See* **Exhibit "I"** (Transcript of June 21, 2018, oral argument on motion before Judge Scullin which plaintiffs have requested, but not yet received). Dkt. # 50. In fact, even on the narrow breach of contract claim presented to Judge Scullin, he

elected not to decide the issue on its merits or make factual determinations on the motion. Dkt. # 24, p. 10. Second, even if this Court did consider the merits of the Complaint in the Federal Action (which it did not), there was *no claim* in the original Complaint for *reversal and expungement* of the unlawful disciplinary determinations, nor did either subsequent amended pleading contain such a demand for relief.

19. Counsel for Syracuse University made the *identical* arguments they are making now in support of the motion before Judge McClusky to dismiss the Article 78 proceeding pursuant to C.P.L.R. § 3211(a)(4). Exhs. E, G. However, respondent Syracuse University could not distinguish New York case law holding that unless *complete relief* can be afforded to parties in a prior filed action, the two actions may not be construed as "same action" necessary to sustain a C.P.L.R. § 3211(a)(4) motion for dismissal. Exhs. E, G. The Supreme Court in Jefferson County *denied* the University's motion to dismiss because: 1) the petitioners could not obtain judicial review and reversal of the improper administrative disciplinary action in the Federal Action; 2) the proper vehicle for seeking damages arising from an alleged breach of contract is an action for breach of contract, not a proceeding pursuant to C.P.L.R. Article 78; and 3) the parties to the Federal Action and Article 78 proceeding were not the same.

20. An Article 78 proceeding is a novel and special creation of state law, designed to facilitate summary disposition of a dispute with the ease and effectiveness of a motion. Federal practice has no equivalent procedural mechanism. The procedural mechanism of an Article 78 proceeding is especially critical to the petitioners who are paying out-of-pocket the considerable costs of the litigation in this case and hope to obtain a swift and efficient reversal of the unlawful administrative action by Syracuse University. The question of what damages plaintiffs are entitled to as a result of defendants' breach of their contractual obligations and defamation of their

character is a separate matter. Plaintiffs have not engaged in impermissible claim splitting or forum shopping.

### THIS COURT CANNOT ESTOP PETITIONERS IN THE STATE COURT FROM PURSUING RELIEF THAT WAS NEVER CONSIDERED OR GRANTED TO PLAINTIFFS BY JUDGE SCULLIN

21. As noted in the accompanying Memorandum of Law, there is no factual or legal basis under either the Anti-Injunction Act and/or the All Writs Act for this Court to interfere with a validly filed special proceeding under C.P.L.R. Article 78. Further, the federal abstention doctrine expressly prohibits this Court from revisiting an issue already decided by a state court. While it is true that the courts have held that "*Colorado River*" abstention is appropriate when all requested relief is being sought and can be obtained in the state court, the defendants' actions over the last five days have illustrated their bad faith efforts to *prevent* adjudication of this dispute in one forum.

22. In response to the University's arguments that litigating these claims in two forums could lead to inconsistent results, Judge McClusky directed the parties to consolidate or join the two actions to effect judicial efficiency and avoid the possibility of arguably inconsistent determinations, Exh. F, (e.g., a finding of arbitrary action in the Article 78 proceeding, but no breach of contract in the Federal Action). In response to this order, counsel for the petitioners contacted counsel for the respondent University on August 23, 2018, and stated plaintiffs in the Federal Action would voluntarily discontinue, with a stipulation that those claims and the pending motion to dismiss, would be re-filed in Jefferson County. **Exhibit "J."** Rather than "getting back" to counsel for plaintiffs about this proposal as he stated, defense counsel filed an Answer to the Second Amended Complaint on August 27, 2018, Dkt. # 46, notwithstanding the pending motion to dismiss for failure to state a claim, Dkt. # 44. This action effectively *precludes* plaintiffs from

voluntarily discontinuing the Federal Action pursuant to Fed. R. Civ. P. 41. Thus, while Syracuse University complained to Judge McClusky that there was a danger of "inconsistent results" in having two actions adjudicated by two different courts, defendants have now thwarted plaintiffs' efforts to consolidate or join the two actions in one forum—in direct contravention of Judge McClusky's directive—by filing an unnecessary Answer to the complaint they already seek to dismiss.

### EVEN IF THIS COURT CONSIDERED THE MERITS OF DEFENDANTS' CLAIM OF IRREPARABLE HARM, IT IS ENTIRELY SELF-INFLICTED AND INSUFFICIENT TO TIP THE BALANCE OF EQUITIES IN DEFENDANTS' FAVOR

23. As in the motion before Judge McClusky, defendants contend that their right to issue disciplinary determinations will be "undermined" by the state court order authorizing a stay of suspensions, and thus re-enrollment of the petitioners in the Article 78 proceeding. Dkt. # 48-4, ¶ 17.[4] Ultimately, Respondent states, "[t]he University has a vested interest in the *finality* of its disciplinary system." *Id.* at 21. As in the state court, defendants' objections do not weight the equities in this case, but rather simply assert the right to be free of judicial review of its administrative decisions. As noted previously, the New York State Legislature saw fit to endow New York State courts with a say over the "finality" of administrative disciplinary action. Moreover, as set forth in plaintiffs' Memorandum of Law, a litigant facing an arbitrary and capricious suspension from an educational institution can seek both judicial review of the challenged disciplinary action and a stay pending final determination.

---

[4] In the motion before Judge McClusky, the respondent University argued that "the enforcement of standards of conduct on individual students is vital to the well-being of the entire University community" and, further, that "a court order allowing these students to re-enroll in classes ***effectively absolves*** the students involved and would prolong and exacerbate the harm already created as a result of Petitioners' conduct." Exh. E, Resp.'s Mem. of Law, pp. 20–21.

24. Defendants provide no specific factual support to show they will be irreparably harmed by re-enrollment of the petitioners should this Court fail to intercede in the stay issued by Judge McClusky. Specifically, defendants' General Counsel avers that "administrative and reputational chaos" will occur upon re-enrollment of the petitioners. As to the latter alleged administrative challenges of implementing re-enrollment, the obvious difficulties of making late registration and housing arrangements for the petitioners is due solely to the University's deliberate delay of the administrative appeal process. Specifically, the respondent University's failure to issue final disciplinary determinations until July 26, 2018, barely more than one month before the first day of classes, caused the petitioners to be seeking injunctive relief at this late date.[5]

25. Furthermore, allegations regarding purported "reputational chaos" and "reignited unrest" that will occur on campus if the petitioners return to Syracuse University are dubious and unsupported. However, if any chaos or unrest do erupt, it is entirely the fault of the University which has—as in the underlying disciplinary investigation and prosecution—*created* the very hysteria on campus that it then blames the plaintiffs/petitioners for instigating. To wit, there is no evidence that anyone in the public or media was even *aware* of the Article 78 proceeding until defendants filed the present motion on the electronic N.D.N.Y. docket. **Exhibit "K."**[6] Furthermore, defendants chose to send a campus-wide email to the entire University community on August 27, 2018, the same day as they filed the present motion, to "update" students, staff and

---

[5] Petitioners' administrative appeals were filed on June 8, 2018. Dkt. # 25-16, pp. 6-7. The University waived its right to submit a response. In accordance with University procedures, the appeals should have been decided in three days. Dkt. # 25-16, p. 7. Instead, the University Appeals Board took *34 business days* to issue final determinations.

[6] Indeed, the petitioners in the Article 78 proceeding deliberately filed the action in the most distant geographic location within the Fifth Judicial District, C.P.L.R. § 7804(b), C.P.L.R. § 506(b), Judiciary Law § 140, and elected *not* to file the case electronically precisely to avoid public and media attention on the case.

faculty on the following facts: "While the student conduct process is complete, ***10 Theta Tau students are pursuing legal action against the University seeking immediate return to campus***. The litigation is ongoing. Syracuse University "stands by the action we took to defend the standards of conduct on our campus." **Exhibit "L."** These actions led both the University's newspaper, *The Daily Orange,* as well as Syracuse.com to publish stories regarding the Article 78 litigation.[7] The August 27, 2018, article referenced by defendants in *The Daily Orange* that allegedly shows the campus community "still feels the effects of Plaintiffs' actions today" was *preceded* one week ago by another article, entitled "6 Storylines Every SU Freshman Should Be Watching," that fanned the Theta Tau flames and invited *incoming freshmen* students to reflect on events that occurred before they even were enrolled at the campus.[8] Thus, the alleged media and public attention that may accompany reinstatement of the students pending resolution of the Article 78 proceeding is a self-inflicted hardship.

26.  Based on the foregoing, and the additional reasons set forth in plaintiffs' Memorandum of Law, defendants' motion for injunctive relief via Order to Show Cause should be denied. Furthermore, plaintiffs should be awarded costs and attorneys' fees associated with defending the frivolous and legally insupportable claims raised in said motion.

**WHEREFORE**, Plaintiffs respectfully request an Order of this Court denying Defendants' motion, filed by Order to Show Cause, to preclude plaintiffs from pursuing a related Article 78

---

[7] Available at: http://dailyorange.com/2018/08/su-official-says-university-stands-response-theta-tau-videos/; https://www.syracuse.com/su-news/index.ssf/2018/08/syracuse_university_students_suspended_over_frat_videos_ask_jefferson_co_judge_f.html.

[8] Available at: http://dailyorange.com/2018/08/6-storylines-every-su-freshman-watching/.

proceeding in Jefferson County Supreme Court or seeking or placing into effect any judicial remedy obtained in that special proceeding.

Dated: August 28, 2018

_____
KAREN G. FELTER, ESQ.