IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

JOHN DOE #1, *et al.*,                                    Civil Action No.
                                                         5:18-CV-0496 (FJS/DEP)
                    Plaintiffs,

        v.

SYRACUSE UNIVERSITY, *et al.*,

                    Defendants.

_____

APPEARANCES:                             OF COUNSEL:

FOR PLAINTIFFS:

SMITH, SOVIK, KENDRICK &                 KEVIN E. HULSLANDER, ESQ.
SUGNET, P.C.                             KAREN G. FELTER, ESQ.
250 South Clinton Street                 DAVID M. KATZ, ESQ.
Suite 600
Syracuse, NY 13202-1252

FOR DEFENDANTS:

HANCOCK ESTABROOK, LLP                   JOHN G. POWERS, ESQ.
1500 AXA Tower I                         PAUL J. TUCK, ESQ.
100 Madison Street
Syracuse, NY 13202

JENNER & BLOCK, LLP                      DAVID W. DeBRUIN, ESQ.
1099 New York Avenue, N.W.               ISHAN K. BHABHA, ESQ.
Suite 900
Washington, D.C. 20001-4412

DAVID E. PEEBLES
CHIEF U.S. MAGISTRATE JUDGE

<u>REPORT AND RECOMMENDATION</u>

This is an action brought by nine unidentified plaintiffs all of whom, at the times relevant to their claims, were students at Syracuse University ("University") and members of the Syracuse University Chapter of Theta Tau, a professional engineering fraternity, against the University and several employees of the institution. The claims in the action arise out of disciplinary proceedings against plaintiffs based upon their participation in a "satirical skit" or "roast" of the Theta Tau brothers, which was recorded and eventually made public. Plaintiffs assert causes of action against defendants for breach of contract, violation of an implied covenant of good faith and fair dealing, breach of contract for violating plaintiffs' contractually protected First Amendment rights, and defamation. Plaintiffs seek both compensatory and punitive damages as well as injunctive relief.

Among the matters currently pending before the court is a motion brought by defendants requesting an order directing plaintiffs to identify themselves by name, as required under Rules 10(a) and 17(a) of the Federal Rules of Civil Procedure. For the reasons set forth below, I recommend that defendants' motion be denied.

I.    BACKGROUND

The nine plaintiffs in this action are all out-of-state residents who were enrolled as students at the University during the 2017-2018 academic year, and were prospective or then-current members of the Theta Tau professional engineering fraternity chapter at the school. Dkt. No. 26 at 1, 4, 6. Plaintiffs participated in a "satirical skit" or "roast" of Theta Tau brothers on March 30, 2018, at the Theta Tau house. *Id.* at 1-2, 8-9. The roast was recorded and made privately available to the University Theta Tau members by means of the fraternity's private Facebook group. *Id.* at 1-2. On April 18, 2018, an unidentified individual accessed Theta Tau's private Facebook group, recorded the video of the "roast," and provided it to officials at the University and *The Daily Orange*, the University's independent, student-run newspaper. *Id.* at 2, 8, 13. *The Daily Orange* published the first video of the "roast" on April 18, 2018, and the second video on April 21, 2018; both of those publications garnered considerable local and national attention due to their content.[1] *Id.* at 13.

On April 18, 2018, the Director of the Office of Student Rights and Responsibilities at the University emailed the Theta Tau chapter to advise that it had been suspended from the University. Dkt. No. 26 at 11. Soon

---

[1]    According to plaintiffs, the video recordings of the "roast" are also now publicly available on YouTube. Dkt. No. 26 at 8.

after that email was sent, defendant Kent Syverud, the Chancellor of the University, sent a campus-wide email referring to the conduct and words used in the video as "extremely racist, anti-Semitic, homophobic, racist, sexist, and hostile to people with disabilities." *Id.* at 12. Defendant Teresa Abi-Nader Dahlberg, the Dean of the University, College of Engineering and Computer Science, followed with an email stating, "[s]ome members of the Theta Tau professional engineering fraternity us[ed] racist, anti-Semitic, homophobic, sexist, and ableist language." *Id.*

Defendants sent eighteen students, including the nine plaintiffs herein, identical notices on or about April 21, 2018, stating that a complaint had been filed against them by the Department of Public Safety accusing them of having violated various University rules and regulations. Dkt. No. 26 at 14-15. Plaintiffs were subsequently notified, on April 22 and 23, 2018, that in addition to being charged, they were being suspended from the University. *Id.* at 15. The University Conduct Board held hearings between April 19, 2018 and April 23, 2018, and on June 5, 2018, found plaintiffs responsible for all of the Code of Conduct violation charges lodged against them.[2] *Id.* at 16-17.

---

[2]     In its decision, the Conduct Board noted that the University had withdrawn its Title IX claim "during deliberations." Dkt. No. 26 at 17. The University nonetheless continued to operate under Title IX procedures when it addressed the accusations against the plaintiffs. *Id.*

## II.   PROCEDURAL HISTORY

Plaintiffs commenced this action on April 24, 2018, asserting diversity of citizenship as a basis for the court's jurisdiction, and filed an amended complaint on July 9, 2018.[3] Dkt. Nos. 1, 26. In their amended complaint, plaintiffs have identified themselves only as John Doe #1 through John Doe #9.[4] Dkt. No. 26 at 4. In a motion filed the day after the action was commenced, plaintiffs sought a temporary restraining order and a preliminary injunction, as well as leave to proceed in the action anonymously, arguing the University would not be prejudiced by allowing them to proceed as Doe parties, and that their privacy interests "far outweigh any interest in access to court records." Dkt. No. 5-7 at 1-4. The application for injunctive relief was ultimately withdrawn and, consequently, the portion of plaintiffs' motion which requested leave to proceed as Doe plaintiffs was not acted upon by the court. *See* Dkt. Nos. 7, 8.

On June 18, 2018, defendants filed a motion requesting an order requiring plaintiffs to correct the caption of their amended complaint and to

---

[3]     Plaintiffs filed a third amended complaint in this action on August 30, 2018. Dkt. No. 60. Defendants have sought permission, pursuant to Northern District of New York Local Rule 7.1(b)(2), to file a motion to strike that amended pleading. *See* Dkt. No. 64.

[4]     When this action was commenced, there were only five plaintiffs. Dkt. No. 1. The list of plaintiffs was expanded with the filing of plaintiffs' first amended complaint on July 9, 2018. Dkt. No. 26.

publicly identify themselves by name. Dkt. No. 19. In their motion,

defendants argue that (1) plaintiffs' identities are already known or are

easily ascertainable; (2) embarrassment from one's actions is not a

sufficient reason to evade public identification in a lawsuit; and (3) the

public has a right to judicial openness and to monitor who is accessing the

courts. Dkt. No. 19-1 at 7-8. In response, plaintiffs have countered that (1)

allowing them to proceed under pseudonyms will not prejudice

defendants; (2) the case involves highly sensitive and personal information

and issues; and (3) revealing plaintiffs' names will tie them to this event for

the rest of their lives, put their safety at risk, and damage their future

academic and employment opportunities.[5] Dkt. No. 25-6 at 1-2.

III.   DISCUSSION

   A.   Legal Standard Governing Motions to Proceed Anonymously

      The Federal Rules of Civil Procedure mandate that "[a]n action must

be prosecuted in the name of the real party in interest." Fed. R. Civ. P.

17(a)(1). Rule 10(a) of the Federal Rules of Civil Procedure provides that

"[t]he title of the complaint must name all the parties." Fed. R. Civ. P.

---

[5]      I note that some of the plaintiffs in this action as well as certain other affected students have commenced a related proceeding in New York State Supreme Court, pursuant to Article 78 of the N.Y. Civil Practice Law and Rules. That proceeding is pending before Supreme Court Justice James P. McClusky, who sits in Jefferson County, New York. According to plaintiffs' counsel, Justice McClusky has entered an order permitting the petitioners in that action to proceed anonymously.

10(a). These rules are intended to further the fundamental right of public access to the courts. That right, sometimes referred to as a presumption of access, is rooted in our nation's history. *United States v. Amodeo*, 44 F.3d 141, 145 (2d Cir. 1995) ("*Amodeo I*"); *see also Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978). Access to federal courts allows the public to hold judges accountable for their decisions and preserves confidence in the administration of justice. *United States v. Amodeo*, 71 F.3d 1044, 1048 (2d Cir. 1995) ("*Amodeo II*").

Identifying parties to a lawsuit is an important aspect of the requirement of openness and presumption of access to the courts, for the simple reason that the public has a right to know who is utilizing the courts. *Sealed Plaintiff*, 537 F.3d at 189 (citing *Doe v. BlueCross & BlueShield United*, 112 F.3d 869, 872 (7th Cir. 1997)). The use of fictitious names or pseudonyms to replace the true identities of litigants "runs afoul of the public's common law right of access to judicial proceedings . . . , a right that is supported by the First Amendment." *Doe v. Del Rio*, 241 F.R.D. 154, 156 (S.D.N.Y. 2006) (citing *Does 1 thru XXIII v. Advanced Textile Corp.*, 214 F.R.D. 652, 653 (D. Mont. 1974)); *accord Doe v. Delta Airlines, Inc.*, 310 F.R.D. 222, 224 (S.D.N.Y. 2015); *see Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119-20 (2d Cir. 2006); *Westmoreland v. Columbia Broad. Sys., Inc.*, 752 F.2d 16, 23 (2d Cir.

7

1984) ("[T]he First Amendment does secure to the public and to the press a right of access to civil proceedings."). Private civil suits advance the public's interest in enforcing legal and social norms. *Del Rio*, 241 F.R.D. at 159. When a lawsuit involves issues concerning a defendant's actions or a particular incident, instead of challenging abstract public policies, open proceedings serve the judiciary's interest in a fair and accurate fact-finding adjudication. *Id.*

Courts have recognized a narrow exception to the rules requiring disclosure of party identities in cases where individual privacy concerns are implicated in a case. *Doe v. City of N.Y.*, 201 F.R.D. 100, 101 (S.D.N.Y. 2001). The decision as to whether to permit a litigant to proceed anonymously is entrusted to the sound discretion of the court. *Doe No. 2 v. Kolko*, 242 F.R.D. 193, 195 (E.D.N.Y. 2006), and requires a careful and fact-specific examination into the circumstances of the case at hand. *Del Rio*, 241 F.R.D. at 159.

The Second Circuit has established a list of ten, non-exhaustive factors that courts should consider when determining whether to permit a party to proceed anonymously. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 190 (2d Cir. 2008). Those factors include

> (1) whether the litigation involves matters that are highly sensitive and of a personal nature; (2) whether identification poses a risk of retaliatory

8

physical or mental harm to the party seeking to proceed anonymously or even more critically, to innocent non-parties; (3) whether identification presents other harms and the likely severity of those harms; (4) whether the plaintiff is particularly vulnerable to the possible harms of disclosure; (5) whether the suit is challenging the actions of the government or that of private parties; (6) whether the defendant is prejudiced by allowing the plaintiff to press his claims anonymously, whether the nature of that prejudice (if any) differs at any particular stage of the litigation, and whether any prejudice can be mitigated by the district court; (7) whether the plaintiff's identity has thus far been kept confidential; (8) whether the public's interest in the litigation is furthered by requiring the plaintiff to disclose his identity; (9) whether, because of the purely legal nature of the issues presented or otherwise, there is an atypical weak public interest in knowing the litigants' identities; and (10) whether there are any alternative mechanisms for protecting the confidentiality of the plaintiff.

*Id.* (citations and internal quotation marks omitted). Although identifying the foregoing, non-exhaustive list of factors that can inform the decision of whether to permit a party to proceed anonymously, in *Sealed Plaintiff*, the Second Circuit did not espouse the wooden application of those considerations. *Id.* Indeed, Second Circuit observed that in the end, "when determining whether a plaintiff may be allowed to maintain an action under a pseudonym, the plaintiff's interest in anonymity must be balanced against both the public interest in disclosure and any prejudice to the defendant." *Id.* at 189; *see also Delta Airlines, Inc.*, 310 F.R.D. at 224.

B.    Analysis

1.    Whether the Litigation Involves Matters That Are Highly Sensitive and of a Personal Nature

The first pertinent factor under *Sealed Plaintiff* requires the court to consider whether the case involves matters that are highly sensitive or of a personal nature. *Sealed Plaintiff*, 537 F.3d at 190. To help place this factor in context, I note that it is generally well-accepted that claims involving sexual orientation, pregnancy, or minor children are examples of matters that qualify as being highly sensitive and of a personal nature. *Michael v. Bloomberg, L.P.*, No. 14-CV-2657, 2015 WL 585592, at *3 (S.D.N.Y. Feb. 11, 2015). Courts are divided, however, over whether allegations of sexual assault or misconduct similarly involve highly sensitive and personal matters. *Compare Doe v. Colgate Univ.*, No. 15-CV-1069, 2016 WL 1448829, at *3 (N.D.N.Y. Apr. 12, 2016) (holding that a plaintiff may proceed anonymously because of the "highly personal and sensitive nature" of the case) *and Doe No. 2 v. Kolko*, 242 F.R.D. 193, 196 (E.D.N.Y. 2006) (holding that a plaintiff who alleged that a rabbi sexually abused him when he was a child was allowed to proceed anonymously), *with Doe v. Del Rio*, 241 F.R.D. 154, 160 (S.D.N.Y. 2006) ("[A]nonymous pleading has frequently been rejected in cases alleging sexual assault."), *and K.D. v. City of Norwalk*, No. 06CV406, 2006 WL 1662905 at *1 (D.

Conn. June 14, 2006) (granting defendants motion to reconsider allowing plaintiff to proceed anonymously because "plaintiff's claim concerns the *investigation* of the alleged sexual assault. It does not actually concern the details of the sexual assault but rather the police's response to hearing her report of the alleged assault.").

In this instance, defendants have labelled plaintiffs' conduct in the subject videos as racist, anti-Semitic, homophobic, sexist, and hostile to people with disabilities. Dkt. No. 26 at 16. Defendant Hradsky has also stated that the video depicted "sexual and relationship violence." Dkt. No. 5-2 at 9. Plaintiffs argue that these comments by defendants constitute a "modern day Scarlet Letter" and, therefore, the matter is of a highly sensitive and personal nature. Dkt. No. 25-16 at 14.

The subject matter of the "roast" in which plaintiffs participated, as well as defendants' comments, involve timely "hot-button" issues that are frequently discussed and debated in many different settings across the country. As evidence of this, there were campus protests at the University growing out of the incident at issue, the subject video garnered widespread local and national media attention, and there were reported threats against plaintiffs on social media in the aftermath of the release of the video. Dkt. No. 21-2 8, 9; Dkt. No. 25-3; Dkt. No. 25-4; Dkt. No. 25-5;

Dkt. No. 25-6; Dkt. No. 25-12; Dkt. No. 25-13; Dkt. No. 25-14; Dkt. No. 25-15; Dkt. No. 25-16.

I note, moreover, that while out of the five causes of action asserted in plaintiffs' amended complaint several involve defendants' disciplinary response to the videos, the University Code of Conduct, the Student Handbook, and the Student Bill of Rights, as distinct from the videos or defendants' characterization of the videos, *see* Dkt. No. 21 at 17-21, plaintiffs' claims of defamation and for punitive damages implicate the highly sensitive and personal matters of racism, sexism, anti-Semitism, homophobia, ableism, and sexual misconduct. *Id.* at 28-30. Accordingly, I find that the subject matter of this case is of a sensitive and personal nature, and that factor one from *Sealed Plaintiff* weighs in favor of plaintiffs' anonymity.

2.   <u>Whether Identification Poses a Risk of Retaliatory Physical or Mental Harm to Plaintiffs or to Innocent Non-Parties</u>

Addressing the second factor, *see Sealed Plaintiff*, 537 F.3d at 190, in support of their motion, defendants argue that plaintiffs have not experienced any acts of retaliation since the videos were released and "as time has passed, it is clear there is no legitimate risk to the safety of the [p]laintiffs." Dkt. No. 19-1 at 8. Plaintiffs counter that they, and other "members and new members" of Theta Tau who were not involved in the

"roast," have experienced physical and verbal assaults, as well as threats of physical assault, based solely upon their affiliation with the fraternity, and have suffered extreme emotional distress. Dkt. No. 5-2 at 6, 8, 17; Dkt. No 25-16 at 14-15.

"Given the ease with which the public could access court files in this case, it is reasonable that plaintiff's fears extend beyond" the University. *Kolko*, 242 F.R.D. at 197. All or a majority of plaintiffs in this action intend to transfer out of the University and continue their education elsewhere, and persons who potentially might be offended by the "roast" videos are not restricted to Syracuse, New York. Dkt. No. 26 at 23; *see Kolko*, 242 F.R.D. at 197 ("'[P]ersons potentially offended by Doe's lawsuit are certainly not restricted to Iowa.'"(citations omitted)). In addition to identification in the court files, local and national media outlets have reported concerning the relevant events and could publish plaintiffs' names in an update to their ongoing coverage, giving the public another way to access plaintiffs' identities and link their names to the videos.[6] Accordingly, requiring plaintiffs to identify themselves to proceed with this

---

[6]     Although several months have elapsed since the relevant events in this case, I take judicial notice of the keen, ongoing media attention to the case, as evidenced by the many media inquiries to the court concerning the status of the action and legal proceedings occurring in the case.

litigation could lead to physical and mental harms and threats greater than those already experienced by them.

Recent events buttress plaintiffs' fears regarding retribution, and even the potential for physical violence is a legitimate concern. The incident giving rise to plaintiffs' claims in this action has been the subject of nationwide notoriety. According to one of the plaintiffs, a member of the fraternity chapter was physically assaulted in a local restaurant based upon his membership in the fraternity. Dkt. No. 5-2 at 8. Others have been threatened with physical harm and "forced to take refuge with friends and family to avoid public harassment." *Id.* at 6. In an era where, sadly, the art of civil discourse is waning, the stigma associated with identification of plaintiffs and attribution of their actions to those of the fraternity chapter is concerning. We live in an era in which elected public officials are openly calling for harassment of persons with opposing views, and speakers on college campuses are being threatened with violence by students and others who do not share their opinions.

Based upon the court's finding that plaintiffs' concerns of retribution, including the potential for physical violence against them, are genuine, I conclude that this factor weighs heavily in favor of permitting them to proceed in this action anonymously. Forcing plaintiffs to identify

14

themselves "poses a risk that [they] would be subject to unnecessary ridicule and attention." *Colgate*, 2016 WL 1448829, at *3.

> 3.   Whether Plaintiffs will Suffer Additional Harms from Public Identification

Factor three of *Sealed Plaintiff* asks the court to consider other harms that public identification could cause the party seeking to proceed anonymously. *Sealed Plaintiff*, 537 F.3d at 190. Plaintiffs argue that requiring them to publicly identify themselves will forever tie them to the videos "as Google search result number 1," regardless of the outcome of this suit. Dkt. No. 25-16 at 2. It is undeniable that the internet has made information regarding lawsuits and the courts publicly accessible to nearly anyone with an internet connection. *See Kolko*, 242 F.R.D. at 197 ("'[I]t is now possible to determine whether a given individual is a party to a lawsuit in federal court anywhere in the country by the simplest of computer searches[.]'" (citations omitted)); *accord City of N.Y.*, 201 F.R.D. at 101.

While their permanent association with the "roast" videos online would be a consequence of requiring plaintiffs to identify themselves, it is not itself a harm directly attributable to plaintiffs' identification as a party to this action, as distinct from plaintiffs' own actions. The internet linkage between plaintiffs and the "roast" videos, however, will invariably lead to other harms that will impact them. Plaintiffs allege that denying them the

ability to remain anonymous would subject them to "unnecessary ridicule and attention" and further harm their reputations and their financial, academic, and professional futures. Dkt. No. 5-2 at 6; Dkt. No. 25-16 at 2, 3, 11 (alleging that members and new members of Theta Tau have been "1) prohibited from attending classes or other academic pursuits; 2) fired from jobs and threatened with firing from research positions; 3) physically and verbally assaulted; 4) threatened with physical harm; and 5) forced to take refuge with friends or family to avoid public harassment.").

It is true some courts have held that, standing alone, the social stigma, embarrassment, and economic harm that could result from being identified in a lawsuit are not grounds for permitting a party to proceed anonymously. *Doe v. Bausch & Lomb, Inc.*, No. 18-CV-352, 2018 WL 2248418, at *2 (D. Conn. May 16, 2018); (*accord Doe v. United Serv.'s Life Ins. Co*, 123 F.R.D. 437, 439 n.1 (S.D.N.Y. 1988)). Many courts are reluctant to allow a party to maintain anonymity merely to protect the person's economic or professional life. *Doe I v. Individuals*, 561 F. Supp. 2d 249, 257 (D. Conn. 2008) (quoting *United Serv.'s Life Ins. Co.*, 123 F.R.D. at 439)). Parties to litigation often face financial risks because litigation is "quintessentially public and public disclosure is in general an inherent collateral consequence of litigation." *Bausch & Lomb, Inc.*, 2018 WL 2248418, at *3. Therefore, any financial consequences plaintiffs may

suffer as a result of this suit, such as the loss of jobs or the inability to obtain employment, is a risk common to parties in a majority of lawsuits and does not, standing alone, support plaintiffs' request to continue this suit anonymously.

This case, however, is materially distinguishable from those in which reputational harm and similar, negative economic and other tangible affects naturally flow as consequences from litigation. Plaintiffs allege that their actions were prejudged and they were publicly proclaimed by the defendants as "racist, anti-semitic, homophobic, sexist, and hostile to people with disabilities" without a meaningful opportunity to be heard and to defend their actions. Dkt. No. 26 at 20. There is plainly a serious stigma associated with allegations of this nature and, should their identities be made public, plaintiffs could be permanently marked as possessing the character traits attributed to them by the University. Since forcing plaintiffs to divulge their identities would not advance any aspect of the litigation and would, on the other hand, pose a risk that they would be subject to unnecessary ridicule and attention, I find that this factor also weighs in plaintiffs' favor. *Colgate*, 2016 WL 1448829, at *3.

4.    Whether Plaintiffs are Particularly Vulnerable to the
      Possible Harms of Disclosure

The fourth relevant factor, which examines whether the plaintiffs are

vulnerable to the potential harms of disclosure, generally relates to their

ages. *Sealed Plaintiff*, 537 F.3d at 190; *Del Rio*, 241 F.R.D. at 158

("[C]ourts have been readier to protect the privacy of infant plaintiffs than

of adults, whether because the children are conceived as more vulnerable

or because the child whose privacy is at stake has not chosen for himself

or herself to pursue the litigation." (citations omitted)). In this case,

plaintiffs are not minors who have had no say in deciding whether or not to

proceed with this litigation. Even though they are still in their formative

years, plaintiffs are adult college students who availed themselves to the

courts by filing this suit. Accordingly, I find that factor four from *Sealed*

*Plaintiff* weighs in favor of requiring plaintiffs to identify themselves in this

suit.

5.    Whether the Suit is Challenging the Actions of the
      Government or Those of Private Parties

When a lawsuit challenges governmental actions, actors, or policies,

the plaintiff has a strong interest in proceeding anonymously. *EW v. N.Y.*

*Blood Center*, 213 F.R.D. 108, 111 (E.D.N.Y. 2003); *see also Kolko*, 242

F.R.D. at 195 ("[W]hether the defendants are governmental entities is

significant because a challenge to a governmental policy ordinarily

implicates a public interest and the government has less of a concern with protecting its reputation than a private individual."). Here, plaintiffs' suit challenges the actions of private parties. This factor therefore weighs in favor of public identification of plaintiffs. *See A.B. v. Hofstra Univ.*, No. 17-CV-5562, 2018 WL 1935986, at *3 (E.D.N.Y. Apr. 24, 2018) ("The fifth factor seems to weigh against [p]laintiff as this is a suit between private parties.").

### 6.   Whether Defendants Would be Prejudiced by Allowing Plaintiffs to Proceed Anonymously

Addressing the sixth *Sealed Plaintiff* factor, *see Sealed Plaintiff*, 537 F.3d at 190, plaintiffs argue that defendants will not suffer any prejudice by allowing them to proceed anonymously, since defendants are already privy to their identities. Dkt. No. 25-16 at 7. Defendants respond that they will be prejudiced because allowing plaintiffs to proceed anonymously will impede defendants' ability to introduce personal evidence at trial and cross-examine plaintiffs to impeach their credibility. Dkt. No. 19-1 at 15. To evaluate this factor, the court must assess the fundamental fairness of allowing plaintiffs to proceed anonymously, the damage to defendants' reputation caused by maintaining plaintiffs' anonymity, and the difficulties associated with conducting discovery in an anonymous proceeding. *EW*, 213 F.R.D. at 112.

19

It is undisputed that defendants already know the true identities of plaintiffs. Dkt. No. 19-1 at 13. This would suggest that defendants would not be prejudiced by an anonymous proceeding because defendants know specifically who filed this lawsuit. *See Colgate*, 2016 WL 1448829, at *3 ("Defendants are aware of [p]laintiff's true identity and will have an uninhibited opportunity to litigate this matter regardless of whether [p]laintiff's identity is disclosed publicly."); *Kolko*, 242 F.R.D. at 198 ("Other than the need to make redactions and take measures not to disclose plaintiff's identity, defendants will not be hampered or inconvenienced merely by plaintiff's anonymity in court papers. Indeed, defendants already know plaintiff's true identity."). Plaintiffs have also offered to mitigate any remaining prejudice by providing defendants with a confidential, sealed matrix linking their true identities with their Doe pseudonyms. Dkt. No. 25-16 at 8.

Allowing plaintiffs to proceed anonymously would not harm defendants' reputations more than the aftermath of the release of the "roast" videos already has. The Theta Tau videos have been linked with the University since the story broke, so any reputational harm to defendants has already been inflicted, and that harm, if any, was largely the result of the University's actions in publicizing the relevant events. Dkt. No. 12; Dkt. No. 13; Dkt. No. 25-3; Dkt. No. 25-4; Dkt. No. 25-5; Dkt. No.

25-6. Any additional reputational impact to defendants would be minimal compared to the harm plaintiffs have already suffered. *See EW*, 213 F.R.D. at 112 (holding that due to the substantial press regarding allegedly problematic blood screening procedures, "any additional prejudice to the defendant's reputation or ability to operate merely by the pursuit of the action under a pseudonym appears minimal."). Accordingly, I find that defendants would not suffer significant reputational harm if plaintiffs proceeded anonymously.

Defendants further argue that maintaining plaintiffs' anonymity could hamper their ability to impeach plaintiffs' credibility at trial. Dkt. No. 19-1 at 15. They also maintain that "concealing the name of a party could deprive a litigant and the court of the chance that a yet unknown witness would, upon learning that fact about the case, know to step forward with valuable information about the events or the credibility of witnesses." *Del Rio*, 241 F.R.D at 159. In this case, however, it is at best speculative to argue that any unknown witness would bring valuable information to defendants or to the court once they learn plaintiffs' names. Plaintiffs have already been identified as members or prospective members of the Theta Tau fraternity at Syracuse University who were involved in the "roast" that occurred on March 30, 2018. This information has been released through multiple news outlets and has been public since April 2018, giving any potential

witnesses enough information to determine whether they had any insight into the "roast" or any Theta Tau fraternity member who may have been involved. Therefore, defendants' argument that potential witnesses would not know to come forward without knowing the identities of plaintiffs is not particularly persuasive.

Considering the three sub-factors informing factor six of *Sealed Plaintiff*, I find that defendants would not be prejudiced by allowing plaintiffs to maintain their anonymity in this litigation.

### 7.    Whether Plaintiffs' Identities Have Been Kept Confidential Thus Far

The seventh *Sealed Plaintiff* factor examines whether the plaintiffs' anonymity has been preserved to date. *Sealed Plaintiff*, 537 F.3d at 190. In this instance, plaintiffs' identities have not been published or released by defendants or any local or national news organization. Dkt. No. 5-2 at 8-9; Dkt. No. 25-16 at 2. It is true that some students at the University who have recognized plaintiffs from the videos or knew of their involvement with the "roast," have identified certain of them using social media outlets such as Instagram, Snapchat, and Facebook. *See* Dkt. No. 25-14; Dkt. No. 25-15. Defendants argue that because plaintiffs do not allege that "their identities are not already known throughout the Syracuse community

and beyond" and because other University students have "doxed" them, plaintiffs' identities have not been kept confidential. Dkt. No. 19-1 at 13.

Outside of the Syracuse area, and more specifically the University community, however, it does not appear that plaintiffs' identities are generally known. Neither plaintiffs nor defendants argue that the public knows plaintiffs' names, residences, or places of employment. *Cf. Doe v. Shakur*, 164 F.R.D. 359, 362 (S.D.N.Y. 1996) (holding that plaintiff could not proceed anonymously in part because the press knew her name, address, and place of employment so her identity had not been kept confidential).

Even though plaintiffs have not been publicly named, the "roast" videos have been accessible on YouTube since April 2018 and the participants in the videos, including plaintiffs, are not blurred out or augmented in any way to obscure their identities. Dkt. No. 25-16 at 2. Anyone who is familiar with a plaintiff and sees the videos can readily identify the person on his own. For this reason, one could argue that the harm of being linked to the videos has already been done. This consequence, however, only extends to the people who already know or recognize plaintiffs. While plaintiffs are not completely anonymous in the videos, their identities still have not been inextricably linked with the videos. Therefore, the fact that the University and news publications have

not published plaintiffs' names, even though some University students did release their names on social media, resulting in some significant level of presentation of confidentiality thus far, weighs in favor of plaintiffs maintaining their anonymity in this suit.

      8.    <u>Whether the Public's Interest in the Litigation is Furthered by Requiring Plaintiffs to Disclose Their Identities and Whether There is an Atypical Weak Public Interest in the Litigation</u>

Addressing *Sealed Plaintiff* factors eight and nine, *see Sealed Plaintiff*, 537 F.3d at 190, I note that there is a "general presumption that parties' identities are public information." *Hofstra*, 2018 WL 1935986 at *3; *accord Does I thru XXII v. Advanced Textile Corp.*, 214 F.3d 1058, 1068 (9th Cir. 2000). Plaintiffs bear the burden of showing that their private interest in anonymity overcomes the presumption of disclosure of their identities. *Hofstra*, 2018 WL 1935986, at *3.

Since the "roast" videos were released in April of this year, there has been local and national attention focused upon fraternity culture in general, the limits of free speech on college campuses, and university environments as a whole. Dkt. No 19-1 at 14; Dkt. No. 25-3; Dkt. No. 25-4; Dkt. No. 25-5; Dkt. No. 25-6; Dkt. No. 25-12; Dkt. No. 25-13. "[L]awsuits are public events and the public has a legitimate interest in knowing the facts involved in them. Among those facts is the identity of the parties."

*Shakur*, 164 F.R.D. at 361 (citing *Doe v. Deschamps*, 64 F.R.D. 652, 653 (D. Mont. 1974)). Here, there has been widespread public interest in this story because the "roast" videos have become part of a broader debate regarding university and fraternity culture, and plaintiffs' identities are linked to this national conversation because of their participation in the "roast." Therefore, I find that factor eight from *Sealed Plaintiff* weighs somewhat in favor of requiring plaintiffs to identify themselves.

Similarly, factor nine from *Sealed Plaintiff* weighs in favor of requiring plaintiffs to identify themselves in this suit, since this matter is not of a purely legal nature. *See Hofstra*, 2018 WL 1935986, at *3 ("The ninth factor also weighs against [p]laintiff because the issues here are not purely legal in nature."). This case deals with the content of the "roast" videos, the University Conduct Board disciplinary proceedings, and statements made by defendants Syverud, Hradsky, and Dahlberg. *See* Dkt. No. 26. Additionally, the action involves questions of free speech on college campuses and fraternity and university culture, issues that extend beyond matters that are of a purely legal nature. Therefore, I find that factor nine from *Sealed Plaintiff* also weighs slightly in favor of public identification of plaintiffs in this suit.

        9.    <u>Whether There are any Alternative Mechanisms for Protecting the Confidentiality of Plaintiffs</u>

The tenth and final *Sealed Plaintiff* factor requires analysis of alternative concerns of protecting the plaintiffs' identity. *Sealed Plaintiff*, 537 F.3d at 190. Defendants argue that any academic records or other confidential materials used in this lawsuit are already protected by the Family Educational Rights and Privacy Act ("FERPA"), 20 U.S.C. § 1232g, or by other state and federal privacy laws, which serve as alternative mechanisms for protecting plaintiffs' confidentiality. Dkt. No. 19-1 at 15. Plaintiffs respond that FERPA relates only to their educational records, and is irrelevant to the question of whether plaintiffs must reveal their identities in this lawsuit. Dkt. No. 25-16 at 16.

It is true, as defendants argue, that FERPA and other privacy laws may potentially protect plaintiffs' confidentiality in connection with any applicable student records and documents submitted to the court in this suit. *See Anonymous v. Medco Health Sol. Inc.*, 588 F. App'x 34, 35 (2d Cir. 2014) ("[A]ny issues regarding the confidentiality of particular documents or the need for redaction will be handled as they arise."). Plaintiffs are also correct, however, that the confidentiality of records and documents is a separate issue from whether they should be required to reveal their identities to proceed with this litigation. There are no other mechanisms currently in place to protect plaintiffs' identities if they cannot proceed with this litigation anonymously. Accordingly, I find that this factor

weighs against requiring the plaintiffs to divulge their true identities in this lawsuit.

IV.    <u>SUMMARY AND RECOMMENDATION</u>

While recognizing the strong public policy favoring public access to judicial documents and proceedings, I conclude that the overriding concerns associated with requiring plaintiffs to divulge their identities, as discussed above, weigh against granting defendants' motion to require plaintiffs to reveal their identities and therefore trump the public's presumptive right of access. Accordingly, I recommend that the court exercise its discretion by permitting plaintiffs to proceed as Doe plaintiffs in this action. It is therefore respectfully

RECOMMENDED that defendants' motion for an order compelling plaintiffs' to disclose their true identities, (Dkt. No. 19) be DENIED in all respects.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993).

It is hereby ORDERED that the clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

David E. Peebles
U.S. Magistrate Judge

Dated:       September 10, 2018
             Syracuse, NY