**EXHIBIT A**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
-----------------------------------------------------x
JOHN DOE #1-#5,

                          Plaintiffs,

vs.                                          5:18-CV-496

SYRACUSE UNIVERSITY, et al.,

                          Defendants.
-----------------------------------------------------x

*Motion Argument* - June 21, 2018

James Hanley Federal Building, Syracuse, New York

HONORABLE FREDERICK J. SCULLIN, JR.

United States District Judge, Presiding


A P P E A R A N C E S

For Plaintiffs:        SMITH, SOVIK, KENDRICK & SUGNET, P.C.
                       Attorneys at Law
                       250 South Clinton Street
                       Syracuse, New York 13202
                         BY:  KAREN G. FELTER, ESQ.

For Defendants:        HANCOCK ESTABROOK, LLP
                       Attorneys at Law
                       1500 AXA Tower I
                       Syracuse, New York 13202
                         BY:  JOHN POWERS, ESQ.

*Eileen McDonough, RPR, CRR*
*Official United States Court Reporter*
*P.O. Box 7367*
*Syracuse, New York 13261*
*(315)234-8546*

*Motion Argument - 6/21/2018 - 18-cv-496*                    2

1      THE CLERK:  Case on for motion argument is John Doe

2   #1-#5 versus Syracuse University, et al., 18-cv-496.

3   Appearances for the record.

4      MS. FELTER:  Karen Felter on behalf of the

5   plaintiffs.

6      THE COURT:  Ms. Felter.

7      MR. POWERS:  John Powers on behalf of the

8   defendants, Your Honor.

9      THE COURT:  And Mr. Powers.  Ready to proceed?

10      MR. POWERS:  Yes, Your Honor.

11      THE COURT:  Well, as you know, and perhaps the

12   interns know as well, pending before the Court today are

13   plaintiffs' motions for a preliminary injunction and for

14   leave to file an amended complaint.  These motions are

15   brought by an order to show cause.

16      Let me address, first of all, the motion to amend

17   the complaint.  Mr. Powers, there is no real objection to

18   this, is there, other than the fact that you have your own

19   motions with respect to the plaintiff as set forth now as

20   pending before Magistrate Judge Peebles, is that right?

21      MR. POWERS:  Yes, Your Honor.  As we stated, we

22   believe there is an automatic right to amend as a right

23   because we haven't answered yet.  Our objection is that the

24   plaintiffs haven't identified themselves yet, which is a

25   requirement of Rule 10.  That's our only objection to the

*Motion Argument - 6/21/2018 - 18-cv-496*                3

1   amendment of the pleading as it is.

2          THE COURT:  And that's pending before Judge

3   Peebles, right?

4          MS. FELTER:  Yes, it is, Your Honor.  And I was

5   going to add that after we received -- it was a cautionary

6   measure to make the motion to amend and, frankly, I wasn't

7   sure whether 15(a) would allow an amendment of right after 21

8   days of service.

9          THE COURT:  In any event, the Court will grant your

10  motion to amend and the issue with respect to Mr. Powers'

11  motion will be addressed by Judge Peebles, that will be

12  resolved there.  Okay.

13         MS. FELTER:  Thank you, Your Honor.

14         THE COURT:  That leaves the motion for a

15  preliminary injunction.  I have your submissions and have

16  reviewed them.  And do you wish to be heard further at this

17  time?

18         MS. FELTER:  I do, Your Honor.

19         THE COURT:  You may proceed.

20         MS. FELTER:  Should I stay here or do you want me

21  to come up?

22         THE COURT:  I'll tell you what, what's more

23  comfortable?

24         MS. FELTER:  It doesn't matter.

25         THE COURT:  It's easier if you have the microphone

*Motion Argument - 6/21/2018 - 18-cv-496*                                    4

 1   in front of you.  Why don't you come up here and use that

 2   because the people in the back of the room want to hear what

 3   you have to say too.

 4             MS. FELTER:  Okay.  So defense counsel is correct

 5   in describing the plaintiffs' --

 6             THE COURT:  Can you hear her back there?  Okay.

 7             MS. FELTER:  -- in describing the plaintiffs'

 8   request for leave in this case as narrow.  Specifically, the

 9   plaintiffs have sought release of their transcripts without

10   the notation that was proposed by the University in a June 11

11   e-mail from Eric Nestor.  Specifically in that e-mail Nestor

12   advised students at approximately 3:01 on Monday, June 11th

13   that the Office of Student Rights and Responsibilities would

14   be submitting paperwork to the Registrar's Office to have the

15   Administrative Withdrawal - University Initiated notation

16   placed on their academic transcripts.  He advised the

17   students that this should happen this week, indicating it had

18   not yet been done.  He said that after the notation was

19   applied, the OSR office would then release the transcript

20   holds.

21             So in the evidence that's been submitted in

22   opposition to -- well, let me back up by saying, this present

23   motion that we filed was filed 48 hours, approximately, after

24   Mr. Nestor sent that e-mail, and that was in an attempt to

25   prevent the University from marking the students' transcripts

*Motion Argument − 6/21/2018 − 18-cv-496*                5

1   prematurely at the time when the OSR office was, according to

2   Nestor, in the process of requesting transcript notations.

3          So in opposition to our motion, the University has

4   submitted an affidavit from Mr. Nestor, which has an exhibit

5   from the Registrar's Office with data showing that the

6   transcript holds were already in place -- I'm sorry, that the

7   transcript notations were already in place when he sent that

8   e-mail.  So the Register's data shows that the transcript

9   holds were released between 3:02 and 3:45 p.m.  So the

10  transcript holds obviously would not have been deleted if the

11  transcripts were not already marked.

12         Consequently, Nestor's e-mail was disingenuous and

13  misleading, since it's obvious that the students were not

14  notified of the University's intention to add these notations

15  until after the notations had already been made.  So the

16  University is now arguing that a higher standard of review

17  applies to this motion.

18         THE COURT:  May I interrupt you at that point in

19  time?  I think that's important to put this in context with

20  what the real issue is here today.

21         For edification for those who are observing this,

22  at a preliminary injunction the parties seeking it must

23  establish irreparable harm, either likelihood of success on

24  the merits or serious question on the merits, and a balance

25  of hardships in favor of the moving party and the public

*Motion Argument - 6/21/2018 - 18-cv-496*                    6

```
 1   interest as well.
 2              Here there is a dispute over whether this request
 3   for an injunction is a mandatory injunction or a prohibitory
 4   injunction.  If it's mandatory, that means you wish to change
 5   the status quo.  If it's prohibitory, that means you wish to
 6   keep it the way it is.  So the issue becomes what is the
 7   status quo and when was it established.  And that's what
 8   you're arguing against it right now, I gather?
 9              MS. FELTER:  More or less.
10              THE COURT:  All right.
11              MS. FELTER:  So, I mean, the point is they're now
12   arguing that this higher standard should apply because then
13   it would require removal of this mark from their transcript.
14   But the fact of the matter is that the students were never
15   afforded an opportunity to prevent the marking of the
16   transcripts until after it had already been accomplished.  So
17   to the extent that the request that we're seeking can be
18   deemed mandatory relief, that's entirely the fault of the
19   University for not advising the students beforehand that it
20   was planning to take this improper action.  Because, as we
21   argued in the motion papers, the notations -- I should say
22   the effect of the decision is stayed pending an appeal.
23              So if the University is taking the position that
24   they want to preliminarily release the transcripts, they
25   can't do so with this notation pending the results of the
```

Case 5:18-cv-00496-FJS-DEP   Document 75   Filed 09/12/18   Page 7 of 28

*Motion Argument - 6/21/2018 - 18-cv-496*          7

1   appeal.

2           The University's counsel is also correct in stating

3   that plaintiffs did not address the likelihood of success in

4   getting this Court to reverse the Conduct Board's decisions,

5   and that is because no such claim for relief exists in this

6   case.  Contrary to the University's contentions that the

7   plaintiffs have not requested that this Court overturn the

8   Conduct Board's decisions because it has no jurisdiction to

9   do so.

10          Instead, this case is about the University's breach

11  of its contractual agreements with the students and

12  defamation.  Specifically, as referenced in the complaint,

13  the students have a right of free expression limited only by

14  the language of the student Code of Conduct which prohibits

15  fighting words.  And the conduct here was not fighting words

16  because it was not directed at anyone outside of the

17  fraternity, it was satire, and it did not cause an immediate

18  breach of the peace.  In fact, no one even knew that this

19  incident had taken place until weeks later when the videos

20  were improperly released by the Daily Orange from a private

21  website.

22          The students here in this case also pursuant to the

23  University's contract with them have a right to fundamental

24  fairness in connection with any disciplinary action.  The

25  University argues that due process was afforded the

*Motion Argument - 6/21/2018 - 18-cv-496*                    8

1    plaintiffs in the conduct proceedings, but this is frankly an

2    argument for another day in a different forum.  There is an

3    administrative record of the disciplinary proceedings, and to

4    quote the chairman of the Conduct Board, "that record will

5    speak for itself in any Article 78 proceeding."

6            The University's argument about the process that's

7    been afforded to the students fails to address the basic

8    problem at issue in this case, which is these students never

9    should have been charged with the violations outlined in the

10   charging documents to begin with.  Fundamental fairness in

11   the disciplinary process has to include a prohibition against

12   the University stretching and manipulating the Code of

13   Conduct to penalize conduct that is not contemplated by the

14   code.

15           Specifically, the plaintiffs have asserted that the

16   conduct charges bear no relationship to the facts in the

17   case, that is that they engaged in a satirical roast, which

18   the University's own investigation found was voluntary, not

19   offensive to anyone present, and did not involve violence,

20   coercion or drugs and alcohol.

21           THE COURT:  Ms. Felter, now you're really talking

22   about the merits of the action now.  Can we just focus on the

23   preliminary injunction, what the status quo may be?

24           MS. FELTER:  Sure.  Absolutely.  So -- I'll just

25   move on here.

*Motion Argument - 6/21/2018 - 18-cv-496*                    9

1          I think that it's important to understand that as

2    part of -- I mean, if the students are required to show that

3    they're likely to succeed on the merits of the case, then, of

4    course, that goes to the question before the Court which is

5    whether an injunction is proper.

6          THE COURT:  And that's if the Court finds it's a

7    prohibitory injunction, not a mandatory, because the

8    mandatory injunction has to show that it's a clear and

9    substantial likelihood of success.

10          MS. FELTER:  Well, as I referenced, I think that at

11    the time the facts that were available to the plaintiffs at

12    the time that this motion was filed suggested that we were

13    going to be preventing the University from marking

14    transcripts and releasing the hold prematurely.  As it turns

15    out, that action had already taken place.

16          So the University is now arguing that this

17    injunction has been transformed into a mandatory injunction

18    by way of the fact that the markings on the transcripts have

19    to be removed now.  But as I said, that is entirely the fault

20    of the University and not advising the students before they

21    were taking this action that they were going to do so.

22          THE COURT:  As I understand it, your position is

23    the status quo that you're trying to preserve is before the

24    markings took place.

25          MS. FELTER:  Exactly.

*Motion Argument - 6/21/2018 - 18-cv-496*          10

1          THE COURT:  So that would have been when?

2          MS. FELTER:  Well, I mean, according to the

3     University, they have the option of holding a transcript

4     under any circumstances that require suspension.  However,

5     our position is that, you know, the --

6          THE COURT:  They agreed to release the transcripts,

7     they just want the markings to stay on the transcripts.

8          MS. FELTER:  Right.  Except that at this point they

9     had no right to put the markings on the transcripts, because

10    according to their own policy, any results of the hearing is

11    stayed pending appeal.  And so they are claiming that they're

12    releasing the transcripts early as a favor to these students

13    so that they can transfer.  But, frankly, I think that's more

14    about mitigating the damages that they've caused in this case

15    by delaying improperly both the initial decisions on the

16    disciplinary action, which took weeks and weeks,

17    notwithstanding the fact that they said that it would be

18    wrapped up very quickly, and then the delay in deciding the

19    appeals, which according to their rules are supposed to be

20    decided within three days of all submissions.

21          In this case the appeals were finalized and

22    submitted completely as of June 8, and we still don't have a

23    decision from the University, and they sent an e-mail saying

24    that there was going to be a further delay.  So that delay is

25    preventing the students from getting a final resolution on

*Motion Argument - 6/21/2018 - 18-cv-496*                              11

1  this disciplinary action and authorizing them to then go and

2  start an Article 78 proceeding where the impropriety of the

3  procedures that were used would be an issue and their ability

4  to get an injunction in that case.

5          THE COURT:  I thought the appeal had already been

6  taken and it was presently being considered?

7          MS. FELTER:  Yes.  But we have no idea when that

8  appeal will be resolved and the Article 78 action cannot be

9  started.

10         THE COURT:  Until the decision?

11         MS. FELTER:  Exactly.  So there has been this

12 inordinate delay which is cutting into the time that the

13 students have to apply to other schools.

14         THE COURT:  Well, the Article 78 proceeding will

15 take some time too.

16         MS. FELTER:  Absolutely.

17         THE COURT:  So as a practical matter, if the

18 notation stays on the transcripts until after the Article 78

19 proceeding takes place, it's going to be long past the time.

20         MS. FELTER:  Well, and the point is that, first of

21 all, in the very first instance there is a possibility that

22 the University will reverse the decisions of the Conduct

23 Board in the appeal process, which, you know, the kids have

24 the obligation to try to transfer now.  Every day that goes

25 by is another day that they're limited in their ability to

*Motion Argument - 6/21/2018 - 18-cv-496*                    12

1   get their transfer applications in.

2           THE COURT:  Well, the crux, as I understand it, is

3   the notations on the transcripts, because the University has

4   agreed to release the transcripts but with the notations.

5   And your position is that the notations are additional of the

6   matters that were put on after the status quo was met and you

7   want to preserve the status quo, which is sometime before the

8   notation.  But do you have a date, time frame?

9           MS. FELTER:  Well, as far as I know, up until

10  June --

11          THE COURT:  June 21st is what the --

12          MS. FELTER:  June 21st, up until June 21st the

13  University had been holding the transcripts.  And pursuant to

14  whatever policy that they claim, frankly, I think that, you

15  know, we have argued the impropriety of that.  But that the

16  University was holding the transcripts, advised them in the

17  afternoon on the 21st that it was going to put these

18  notations on there and release the transcripts at some point

19  during the week.  But, in fact, the data from the Registrar's

20  Office shows that they actually did mark the transcripts and

21  release the holds before or at the same time that they sent

22  that notice to the students.

23          So, you know, there is a possibility that the

24  appellate board will reverse the determination of the Conduct

25  Board, but in the meantime the students, they're caught

*Motion Argument - 6/21/2018 - 18-cv-496*                              13

1    between a rock and a hard place.  Do they wait weeks longer

2    until the University issues this decision with the

3    possibility that they could get a reversal, or do they accept

4    a transcript now that's been released that has this mark on

5    it that shouldn't be there because the process has not been

6    completed?

7             THE COURT:  Let me hear from Mr. Powers now, if I

8    may.  Mr. Powers, I believe you maintain that the hold date

9    for plaintiffs' records is April 21st.  Is that the notation

10   date too?

11            MR. POWERS:  No, it wasn't, Your Honor, and I

12   believe I can explain.

13            THE COURT:  All right.

14            MR. POWERS:  Your Honor, as you mentioned, and I

15   know you want to focus in on the precise issue in front of

16   you, I want to emphasize that we're here on an equitable

17   request before the defendants have even had the opportunity

18   to answer this action.  It's an extraordinary power that the

19   Court has but it's only sparingly used.  It's a high burden

20   even if it's a prohibitory injunction.

21            What the plaintiffs are asking you to do is

22   something different.  They're asking you, and I'm going to

23   tell you exactly what their argument is, but they're asking

24   you to do two things they are not entitled to, to order two

25   things that they are not entitled to.  What they would like

*Motion Argument - 6/21/2018 - 18-cv-496*                    14

1    to do is they would like to transfer from Syracuse University

2    while this disciplinary process is pending and have a

3    transcript, a clean transcript sent to the receiving

4    university, the university that they're applying to, as if

5    nothing had occurred and there was no discipline pending.

6            The theory behind that argument is that the

7    University's not allowed to place a hold on the transcript.

8    That's not the case.  That's the factual predicate for their

9    motion.  They're talking about annotation but annotation is

10   the secondary question.  Because if their transcript is being

11   held by the University and it's not released until the end of

12   the process, in other words, after the appeal board rules and

13   vice chancellor reviews the decision, that's when the

14   transcript gets released.  That's when in the ordinary

15   circumstance the transcript is annotated.

16           THE COURT:  Is that what you're stating is

17   University policy?

18           MR. POWERS:  Yes, it is, Your Honor.  And I would

19   like to make a specific record of that.  Because it's been

20   advanced by the plaintiff, who has the burden of clear and

21   substantial evidence for a mandatory injunction, that the

22   policy is that you can only hold a transcript on a Title IX

23   charge, and there is no evidence of that.  There has been no

24   evidence presented of that.

25           What we've offered is testimony from the assistant

*Motion Argument - 6/21/2018 - 18-cv-496*                 15

1  director of the Office of Student Rights and

2  Responsibilities, that's the department responsible for

3  administering student discipline, that it's the policy of the

4  University in every student conduct case to hold the

5  transcript.  This makes good sense, Your Honor.  And it goes

6  to this public interest issue that we're going to talk about

7  in a minute.  That the students aren't allowed to apply and

8  withdraw while they have disciplinary charges against them.

9          THE COURT:  Apply and withdraw from the University?

10         MR. POWERS:  To apply to another university,

11  withdraw from Syracuse.

12         THE COURT:  Is that set forth?  They refer to

13  registry I believe in the --

14         MR. POWERS:  So the two policy statements that are

15  contained on the website that Mr. Nestor refers to in his

16  declaration, one is from the Office of Student Rights and

17  Responsibilities web page, and it indicates that, "Staff from

18  this office can place a hold preventing a student from

19  attempting to register until any outstanding judicial actions

20  are settled."  It goes on to say, "Students with this hold

21  should contact the Office of Student Rights and

22  Responsibilities."  It's not limited to Title IX charges;

23  there is a hold for every judicial action.

24         The other section which is from the transcript page

25  reads, "Transcripts are not released for students with

*Motion Argument - 6/21/2018 - 18-cv-496*                16

1   outstanding student conduct obligations."  Again, not limited

2   to a certain type of claim.  And there is no principled

3   reason to limit the hold to just one type of claim, Your

4   Honor, because the rationale is that the student is not being

5   forced to accept responsibility for their actions through the

6   student disciplinary process and they're applying to a school

7   that has no knowledge that they've committed some misconduct.

8   It's bad for the student, it's bad for Syracuse, and it's bad

9   for the receiving school.

10          Now I also want to draw your attention to Section

11   15.1 in the student code.

12          THE COURT:  Mr. Nestor's statements when he opines

13   upon the policies are based upon that code, is that correct?

14   The Student Conduct System Handbook is what he based upon?

15          MR. POWERS:  The way I would describe it, Judge, is

16   the policy is the policy.  That it's the regular practice of

17   the University to do so and that's corroborated on the

18   website.

19          THE COURT:  Is there a written policy?

20          MR. POWERS:  Well, I'm about to get to that, Your

21   Honor, I'm going to read it for you.

22          THE COURT:  What are you reading from?

23          MR. POWERS:  Section 15.1 of the student

24   disciplinary.

25          THE COURT:  I'm not clear.

*Motion Argument – 6/21/2018 – 18-cv-496*                    17

1              MR. POWERS:  It's Exhibit A, Judge, page 23.

2      Exhibit A to Mr. Nugent's declaration.  Read this for the

3      record.

4              THE COURT:  A student, University Student Handbook?

5              MR. POWERS:  Yes.

6              THE COURT:  Yeah, that's what I was asking you.

7      That's what he is referring to as a source of information

8      when he opines on the policy, right?

9              MR. POWERS:  Well, he hasn't referred to this, Your

10     Honor, but this is actually stating the policy.  He doesn't

11     reference this in his declaration but this is actually

12     stating the exact same policy.

13             THE COURT:  But that's where he draws his opinion

14     from?

15             MR. POWERS:  Yes.

16             THE COURT:  Thank you.

17             MR. POWERS:  It states, "A student who chooses to

18     withdraw from the University rather than participate in the

19     conduct process may be classified as having been withdrawn

20     for disciplinary reasons.  This status will be noted on the

21     student's transcript as Administrative Withdrawal -

22     University Initiated."  That's exactly what happened here,

23     Your Honor.

24             It goes on to state, "A student who withdraws under

25     these circumstances may not receive a transcript," dot dot

*Motion Argument - 6/21/2018 - 18-cv-496*                    18

1   dot, "until the pending matter is resolved."  It's not

2   limited to certain types of claims; it's all claims.

3         And as I said, Judge, there is very good reasons

4   why you do this.  You've got to let the process run its

5   course.  It's not preventing these students from

6   transferring.  What it's preventing them from doing is

7   transferring without accounting for their conduct at their

8   prior university.  If they're vindicated at the end of the

9   process, great, the hold is released and their transcript is

10  clean.

11        THE COURT:  All right.  But we're not talking about

12  the hold now, we're talking about the notation on

13  transcripts, right, you agreed to release them.

14        MR. POWERS:  And what happened, Your Honor, is the

15  University offered to treat these students differently.  In

16  other words, deviate from the policy and release the hold.

17  But the condition of that release was that the annotation

18  would be put on the transcript.  And that is -- that

19  annotation is exactly as is quoted in Section 15.1,

20  Administrative Withdrawal - University Initiated.

21        Now what the meaning of that is, that's up to the

22  dialogue between the transferring student and the target

23  university.  That's their issue to deal with with the school

24  that they're transferring to.

25        THE COURT:  Was there an agreement, though, here?

*Motion Argument - 6/21/2018 - 18-cv-496*                    19

1          MR. POWERS:  I beg your pardon?

2          THE COURT:  Was there an agreement?  That's where

3     you said it's based upon an agreement between the university

4     and students.  Was there an agreement here as to the

5     annotation?

6          MR. POWERS:  No.  Condition I said, Your Honor.  It

7     was not an agreement, it was a condition of the release of

8     the transcript.

9          THE COURT:  But was it agreed to, the condition

10    upon release of the transcript?

11         MR. POWERS:  Apparently not.

12         THE COURT:  That's why we're here.

13         MR. POWERS:  Well, the transcripts were not

14    released.  They were only going to be released on the

15    condition and therefore --

16         THE COURT:  Well, you withdraw the hold on them so

17    they can be released and will be released, as I understand

18    it, except they will have the notation on it?

19         MR. POWERS:  Consistent with Section 15.1.

20         THE COURT:  That's right.  And will be released,

21    can be released if requested but with the notation.

22         MR. POWERS:  Right.  And my understanding is

23    they've already been annotated as of June 11th.  That was the

24    communication from Mr. Nestor.

25         THE COURT:  I'm sorry, they've already been what?

*Motion Argument - 6/21/2018 - 18-cv-496*                    20

1           MR. POWERS:  Annotated.

2           THE COURT:  I know they were annotated, but when

3   were they annotated?

4           MR. POWERS:  June 11.  The hold was April 21st.

5           THE COURT:  Okay.  And as of June 11th it was

6   changed and annotated.  Now then wouldn't this be the request

7   for a preliminary injunction, wouldn't this be prohibitory?

8           MR. POWERS:  Absolutely, Your Honor.

9           THE COURT:  Pardon me?

10          MR. POWERS:  Absolutely.

11          THE COURT:  Prohibitory not mandatory?

12          MR. POWERS:  Mandatory.  I'm sorry, I misheard you.

13  It's a mandatory injunction.

14          THE COURT:  But it existed prior to June 11th in a

15  certain form.

16          MR. POWERS:  What they're asking you to do, Your

17  Honor, is to remove the annotation and that's commanding an

18  affirmative act.  They're asking you to order the University

19  to change something that's already done.

20          THE COURT:  Depends on when the status quo was.

21  When was the status quo status here?

22          MR. POWERS:  June 11.

23          THE COURT:  Why was June 11th the status quo?

24          MR. POWERS:  That's when the transcripts were

25  annotated.

*Motion Argument – 6/21/2018 – 18-cv-496*                    21

1        THE COURT:  I understand that.  But that wasn't

2   when the proceeding began, it wasn't when the issues became

3   in conflict.

4        MR. POWERS:  The status quo is established as of

5   the time of the request for the injunction, Your Honor, at

6   the time the plaintiff requests the injunctive relief.

7        THE COURT:  And you disagree with that?

8        MS. FELTER:  A couple of things, Your Honor.  First

9   of all, Mr. Nestor did not say that the transcripts are held

10  in every case.  He absolutely did not say that.  His

11  affidavit says that they're held in cases where suspension is

12  authorized.

13       THE COURT:  Aside from that, your position is --

14       MS. FELTER:  So the fact of the matter is, if

15  somebody is going -- the two references in the website to,

16  you know, the ability of the University to do this, there are

17  notes in the website.  If anybody wants to know what the

18  school's policy is based on conduct proceedings, they look to

19  the policy in the conduct handbook which says that the

20  transcripts will be held if there is a Title IX violation.

21  So that's the first thing.

22       The second thing is --

23       THE COURT:  Counsel, whether or not you agree as to

24  the status quo beginning the date.

25       MS. FELTER:  I don't.

*Motion Argument - 6/21/2018 - 18-cv-496*          22

1     THE COURT:  The date the preliminary injunction was

2  filed.

3     MS. FELTER:  I don't.  And the Section 15.1 that he

4  is referring to isn't even applicable here, because this says

5  a student who chooses to withdraw from the University rather

6  than participate in the conduct process may be classified as

7  having withdrawn for disciplinary reasons.  That is

8  absolutely not what happened here.  These students have all

9  gone --

10     THE COURT:  I'm trying to focus you both on one

11  thing.  Before you go any further, I got to know which

12  standard to apply; whether it's a prohibitory injunction

13  you're requesting or mandatory.  And before I can do that

14  I've got to know what the status quo is, when it attaches.

15  So I need to have that issue further briefed by both of you,

16  because you're not focusing on that.  You're going on to the

17  merits.

18     MS. FELTER:  Our position would be the status quo

19  was established when the University decided to hold the

20  transcripts, and even if you assume for the sake of argument

21  that they have the right to do that, they are changing the

22  status quo by releasing the transcripts now to them with a

23  notation on there.  And contrary to what Mr. Powers said,

24  there was no -- the e-mail that came to the students did not

25  state that there was a condition that they could get their

*Motion Argument - 6/21/2018 - 18-cv-496*                    23

1   transcripts.  It wasn't an offer for them to get the

2   transcripts if they accepted the condition, it was simply a

3   directive.

4           Because the University has found you guilty of

5   these charges, we're marking your transcripts, period.  There

6   was no opportunity for the students to engage in acceptance

7   of that.  So the fact of the matter is that the University

8   changed the status quo on June 11th by marking the

9   transcripts.

10          THE COURT:  Mr. Powers, the status quo begins when

11  the preliminary injunction motion was filed?

12          MR. POWERS:  Yes, Judge.  Under the Second Circuit

13  standard to determine whether it's prohibitory or mandatory

14  by what relief is being requested.  If you're being asked to

15  order something to happen, an affirmative act --

16          THE COURT:  I understand that.  What is your

17  position as to when the status quo attaches?

18          MR. POWERS:  It attaches as of the filing of the

19  request for preliminary relief.

20          THE COURT:  When was that filed?

21          MS. FELTER:  That was filed on the 13th.

22          THE COURT:  Of June?

23          MS. FELTER:  Of June.

24          THE COURT:  And the notations were put on the 6th

25  of June, is that correct?

*Motion Argument - 6/21/2018 - 18-cv-496*                    24

1              MR. POWERS:  The 11th, I believe.

2              THE COURT:  The 11th of June?

3              MR. POWERS:  It was certainly before the filing.

4              MS. FELTER:  But we had no way of knowing that the

5    transcripts were already marked at the time, the University

6    didn't provide that information to the students, so --

7              THE COURT:  That isn't the point.  The point is

8    when the status quo is attached before I can decide which

9    standard to apply.  And it is a heavier burden on the

10   standard for mandatory injunction, is a difficult burden, and

11   certainly is easier to make a ruling on that than it is on

12   the other one.  I need to have maybe some further briefing on

13   that.  And anything else we want to get into?  That's what I

14   got stuck on when I was going through the papers here.

15   Mandatory is a difficult burden, I don't think you're going

16   to make that.  Mandatory is close, but I need to know what is

17   the status quo that we're talking about.

18             MS. FELTER:  As I said at the beginning, to clarify

19   and just to put a point on it is that our position is that

20   the University, given what we got in opposition to this

21   motion, we realized that the fact that there is a possibility

22   that the mandatory standard would apply is only the case

23   because of the action that the University took.  They have

24   prevented us from applying for a prohibitory injunction

25   because they didn't notify the students they were taking this

*Motion Argument - 6/21/2018 - 18-cv-496*                    25

1    action before they did, so they changed the status quo.

2            THE COURT:  I understand there is a change in the

3    status quo.  But the filing of the injunction for preliminary

4    injunction, it depends upon what the status quo is you're

5    trying to preserve, that's what I'm trying to figure out

6    first.

7            MS. FELTER:  I guess my point is I don't know why

8    the University would get the benefit of changing the status

9    quo without advising anybody and then be able to turn around

10   and argue, well, the status quo is changed so you have to

11   meet this higher standard.

12           THE COURT:  All right.  Anything further?

13           MR. POWERS:  Judge, I'm prepared -- I know you want

14   briefing on which standard applies.  I don't think the lesser

15   standard applies, I'm prepared to argue that as well.  But

16   there is no entitlement to relief here.  What they're

17   requesting, to be able to transfer as if nothing had

18   happened, they haven't demonstrated that they have that right

19   to begin with.  It's certainly not consistent with the

20   evidence in front of you.

21           Not just Mr. Nestor's testimony, but also these

22   corroborating references in other places in the policy.  The

23   University's policy's not just set forth in the disciplinary

24   code, it exists in all published documents by the University

25   that are provided to students so that they know what rules

*Motion Argument - 6/21/2018 - 18-cv-496*                    26

1  they're being held to.  This academic hold on the transcripts

2  is something that routinely occurs, there is no evidence to

3  the contrary.  There is no bad faith here either, by the way.

4          THE COURT:  All right.  By the way, we haven't

5  addressed public interest.  Is there any need for either side

6  to argue that point, you think, either of you?

7          MS. FELTER:  I think it goes back to what I just

8  said about Section 15.1.  I mean, the University claims that

9  the policy of holding transcripts and all of this has to do

10 with preventing students from absconding from the

11 disciplinary process.  And the fact of the matter is, that

12 they went through the disciplinary process.  You know, they

13 submitted themselves to it and the University is delaying the

14 finality of that process and preventing them from applying to

15 a state court for Article 78 relief and injunctive relief.

16          So they're caught between a rock and a hard place

17 here.  So as far as the University's public policy, public

18 interest, I suppose, in making sure that the students go

19 through the disciplinary process, that's happened.

20          THE COURT:  Well, it's a relatively new

21 requirement, as you know, of preliminary injunction.  But

22 whether or not the interest is in the interest of the public,

23 we need to probably add that into your additional briefing by

24 both sides.  But I need to hear more about the status quo,

25 whatever you have on that.

*Motion Argument - 6/21/2018 - 18-cv-496*                     27

1          I will give you something by Monday, and if I need

2   further argument, then I'll take it, but I think we'll

3   probably have enough to make a decision the following day.

4   Monday enough time?  Can you get it in on Monday?

5          MS. FELTER:  Yes.

6          THE COURT:  Get it in on Monday and we'll get it to

7   you.  Anything further you want to put on the record?

8          THE CLERK:  Court is adjourned.

9                *              *              *

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

C E R T I F I C A T I O N


I, EILEEN MCDONOUGH, RPR, CRR, Federal Official

Realtime Court Reporter, in and for the United States

District Court for the Northern District of New York,

do hereby certify that pursuant to Section 753, Title 28,

United States Code, that the foregoing is a true and correct

transcript of the stenographically reported proceedings held

in the above-entitled matter and that the transcript page

format is in conformance with the regulations of the

Judicial Conference of the United States.


EILEEN MCDONOUGH, RPR, CRR
Federal Official Court Reporter